**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS ROSENBURG, et al.,

    Plaintiffs,

    v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,

    Defendant.
_____/

No. C 06-0430 PJH

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE**

Defendant International Business Machines' ("IBM") motion to dismiss two of plaintiffs' fourteen claims in their first amended complaint ("1AC") pursuant Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and to strike certain allegations in the 1AC pursuant to Rule 12(f) came on for hearing before this court on May 10, 2006. Having read the parties' papers and carefully considered their arguments and the relevant legal authorities, the court DENIES IBM's motion to dismiss, and GRANTS in part and DENIES in part IBM's motion to strike pursuant to Rule 12(f).

**BACKGROUND**

This case involves claims by current and former IBM employees for overtime pay and other relief related to defendant IBM's alleged misclassification of plaintiffs as exempt, rather than non-exempt, employees from overtime requirements. There are seven named plaintiffs in the case, including Thomas Rosenburg, John Shelly, James R. Baxter, Sherry Mattson, Steve Park, Fnu Kennedy, and Exaldo Topacio. Plaintiffs raise a total of

fourteen claims. All named plaintiffs bring claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on "behalf of themselves and all persons who were, are, or will be employed by IBM nationwide as technical support workers with primary duties of installing, maintaining, and/or supporting computer software and/or hardware," and who have been "misclassified by IBM as exempt from overtime pay rules." Four named plaintiffs, Rosenburg, Baxter, Mattson, and Kennedy, also bring claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e)(1) (or "Section 501(e)(1)"), on behalf of the same group of plaintiffs described above who "were, are, or will be improperly classified as exempt from overtime pay under applicable state and federal laws, and who were, are, or will be covered by the IBM Tax-Deferred Savings Plan/401(k) ("the Savings Plan") and/or the IBM Personal Pension Plan ("the Pension Plan")." Thus, there are two prospective plaintiff classes with respect to the federal claims, which will be referred to as "the FLSA class," and "the ERISA class."

Additionally, many of the named plaintiffs purport to bring claims on behalf of various subclasses alleging violations of state wage laws, including those of California, Colorado, Illinois, Minnesota, New Jersey, and New York. Rosenburg and Shelly are the California Named Plaintiffs; Baxter, the Colorado Named Plaintiff; Matson, the Illinois Named Plaintiff; Park, the Minnesota Named Plaintiff; Kennedy, the New Jersey Named Plaintiff; and Topacio, the New York Named Plaintiff.

However, the instant motion concerns only seven of the claims, including both ERISA claims, and five state law claims. IBM moves to dismiss the ERISA claims under Rule 12(b)(6); and moves to strike certain allegations of plaintiffs' Illinois, Minnesota, New Jersey, and New York state law claims that seek injunctive and declaratory relief under Rule 12(f). IBM also seeks to strike related paragraphs in plaintiffs' prayer for relief.

////
////
////
////

**DISCUSSION**

I.  Legal Standards

    a.  Rule 12(b)(6)

A court should dismiss a claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *See, e.g., Broam v. Brogan*, 320 F.3d 1023, 1033 (9th Cir. 2003) (citations omitted). In evaluating a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *See, e.g., Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000) (citations omitted).

    b.  Rule 12(f)

A motion to strike is brought under Fed. R. Civ. P. 12(f), and may be used to remove insufficient defenses as well as "redundant, immaterial, impertinent, or scandalous matter" that might otherwise prejudice a party. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). Like motions for a more definite statement, motions to strike are disfavored in light of the liberal pleading standards of Rule 8 and since they are usually filed solely for delaying tactics. *See Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). However, a motion to strike may be granted if the party can show that the statements at issue would prejudice the moving party, or that striking the statements would streamline the case for subsequent litigation and trial. *Fogerty*, 984 F.2d at 1528.

A motion to dismiss portions of a prayer for relief is also properly brought under Rule 12(f). *See, e.g., Rosales v. Citibank*, 133 F.Supp. 2d 1177, 1180 (N.D. Cal. 2001) (citation omitted). Like a motion to dismiss, in evaluating whether a motion to strike the prayer is appropriate, the court determines as a matter of law whether the relief sought is recoverable. *Rosales*, 133 F.Supp. 2d at 1180.

////

////

II.     Defendant's Motion

    A.     ERISA Claims

Plaintiffs bring claims under ERISA § 502(a)(3) based on IBM's alleged failure to maintain records, and to remedy its failure to credit certain services. Plaintiffs explain in their opposition that their first ERISA claim concerns IBM's alleged failure to keep records sufficient to determine the benefits due or which may become due. They contend that ERISA requires IBM to track plaintiffs' overtime hours because the compensation due as a result of those hours is necessary to determine what benefits they are owed under the Pension and Savings Plans. *See* Roin Decl., Exh. A, Pension Plan; Exh. D, Savings Plan. They argue that IBM's records "are legally insufficient to determine benefits because § 2.14 of the Pension Plan requires that 'Compensation' include overtime compensation, if worked; and § 11.3 of the Pension Plan provides that 'Compensation' is used to determine the benefits due to participants." Plaintiffs also assert that § 1.15 of the Savings Plan similarly defines "Compensation" as "the cash remuneration paid to an Employee for services rendered to the Employer, including overtime," and that Savings Plan § 4.01(a) provides that employees may have up to 80% of their compensation contributed to the Plan by IBM as "Deferred Cash Contributions."

As for plaintiffs' second ERISA claim, plaintiffs allege that IBM, in its capacity as a fiduciary for the Plans, violated ERISA's fiduciary requirements by failing to credit or even investigate crediting plaintiffs' withheld overtime pay as compensation used to determine plaintiffs' benefits.

In its motion, IBM concedes that the named Pension and Savings Plans are employee benefit plans within the meaning of § 3(3) of ERISA. IBM, however, argues that the claims fail to state a claim, are not ripe, and have not been properly exhausted. IBM makes essentially four arguments in favor of dismissal of the ERISA claims: (1) that plaintiffs' second ERISA claim fails to allege a breach of any ERISA fiduciary duty; (2) that both ERISA claims are improperly brought under the wrong enforcement provision, 29 U.S.C. § 1132(a)(3); (3) that with respect to both claims, plaintiffs have failed to exhaust

available remedies as required by ERISA; and (4) that neither of plaintiffs' ERISA claims are ripe for adjudication.

            1.      Whether Plaintiffs' Second ERISA Claim Fails to Allege a Breach of any ERISA Fiduciary Duty

IBM argues that ERISA does not govern its decisions about how to classify an employee for payroll and FLSA purposes. It contends that ERISA's fiduciary duties apply only to a company's actions with respect to its employee benefit plan, and not to its actions in its role as an employer. It contends that for this court to find otherwise would allow any employee with a wage claim to also raise an ERISA claim because wages, by their nature, indirectly impact ERISA plans. In support, IBM relies on one district court decision and several out of circuit authorities. *See Hall v. Hill Refrigeration, Inc.*, 36 F.Supp.2d 1185, 1188 (C.D. Cal. 1999). It argues, based on the out of circuit cases, that ERISA's fiduciary duties do not extend to a business judgment or a business decision concerning the operation of the business, including payroll decisions. *See Ecklecamp v. Beste*, 201 F.Supp.2d 1012, 1023 (E.D. Mo. 2002); *Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir. 1988). IBM further notes decisions by district courts that have held that ERISA's fiduciary duties do not extend to payroll classification decisions. *See Veliz v. Cintas Corp.*, 2003 WL 23857822 (N.D. Cal. 2003) (Armstrong, J.)*; see also Ballaris v. Wacker Siltonic Corp.*, 2002 WL 926272 (D. Or. 2002).

IBM contends that even if there was a fiduciary duty, plaintiffs cannot establish a breach of such duty because its Pension and Savings Plans require only that plaintiffs be credited for compensation *actually* paid; they do not require that plaintiffs be credited for compensation they *should have been paid*. *See* Pension Plan § 11.3(a) (Roin Decl., Exh. A at 33); Savings Plan § 1.15 (Roin Decl., Exh. D at 9-10). It argues that, therefore, the very terms of the Plans defeat plaintiffs' claim that it had a duty to investigate potential claims to additional compensation. IBM contends that because plaintiffs' claim is not based on a violation of the Plans' requirements, but rather on the erroneous premise that IBM, as their employer, should have paid them more, the claim is not cognizable under the

1 benefit plans or under ERISA.

2      Finally, IBM asserts that a breach of fiduciary duty claim based on its alleged
3 improper crediting of compensation also fails under Department of Labor ("DOL")
4 regulations, which provide that crediting a plan is a "ministerial function" as opposed to an
5 ERISA fiduciary function. *See* 29 C.F.R. § 2509.75-8.

6      Plaintiffs, on the other hand, agree that an employer's business decisions, or what
7 they term "sponsor" functions, do not generally implicate an employer's fiduciary
8 responsibilities. Plaintiffs argue, though, that IBM misapprehends its claim in this case.
9 Plaintiffs assert that they "do not allege a breach of fiduciary duty for IBM's decision, as an
10 employer or plan sponsor, not to pay [plaintiffs] overtime, but instead, claim that IBM's
11 decision not to credit, or to investigate crediting, unpaid overtime hours as compensation
12 under the terms of the Plans constitutes an act of plan administration giving rise to breach
13 of fiduciary duty." In support, plaintiffs rely on a recent decision from the District of Oregon.
14 *See In re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation*
15 *("Farmers")*, 2005 WL 1972565 (D.Or. 2005) Plaintiffs argue that, here, IBM acted both as
16 the named and functional fiduciary for both Plans.

17      Plaintiffs further contend that under ERISA, IBM wears two hats – that of an
18 employer and that of a fiduciary – and that those hats cannot be worn simultaneously.
19 Plaintiffs assert that when IBM is wearing its fiduciary hat, ERISA applies and that IBM
20 must adhere to the highest known duties under the law and act solely in the interest of the
21 Plans' participants when deciding whether or not participants should be credited with
22 illegally withheld wages, including overtime pay. Plaintiffs cite again to *Farmers*, and also
23 to a decision from this district, in which the district court denied a similar motion to dismiss.
24 *Gerlach v. Wells Fargo. See* C 05-0585 CW, Exh. A, Pl. Req. for Jud. Notice ("RJN").

25      Plaintiffs distinguish the cases relied on by IBM, including the court's decision in
26 *Veliz*, and the Oregon district court's decision in *Ballaris.* They assert that IBM cannot
27 avoid its fiduciary obligations under ERISA simply by illegally withholding payments to its
28 employees. *See Gerlach,* Pl. RJN, at Exh. A.

1    Additionally, plaintiffs contend that whether there has been a breach of a fiduciary
2 duty is a fact-intensive inquiry, which cannot be resolved through a Rule 12(b)(6) motion.
3 They assert that it is more appropriately resolved at trial or through a motion for summary
4 judgment.  They further note that IBM's argument is flawed, and according to its logic, "if
5 IBM as the employer did not pay employees *at all*, IBM as the fiduciary of the Plans, could
6 simply not provide any benefits."  They assert that this logic "displays precisely why IBM, as
7 a fiduciary, has a duty to determine whether compensation under the Plans is being
8 properly credited to include amounts that are illegally withheld."

9    Finally, plaintiffs respond that the regulation cited by IBM is inapplicable to the
10 circumstances of this case.  Moreover, they note that the regulation relied on by IBM
11 "draws a clear distinction between fiduciaries who exercise their discretion to determine, for
12 example, whether a certain type of compensation will be credited to participants, and non-
13 fiduciaries who hold and exercise no discretionary authority or control under the Plan but
14 instead perform the ministerial task of tabulating employees' total compensation for the
15 year according to the policies established by the plan fiduciaries."  In this case, they
16 contend that it is clear that IBM had more than ministerial duties.

17    There are at least four district courts that have addressed this issue - two in Oregon
18 and two in the Northern District of California.  One Oregon and one Northern District of
19 California decision favor plaintiffs' position.  *See Farmers*, 2005 WL 1972565 (D.Or. 2005)
20 (Jones, J.); *Gerlach*, Pl. RJN, at Exh. A (Wilken, J.).  The other two are favorable to
21 defendant.  *Veliz,* 2003 WL 23857822 (N.D. Cal. 2003)  (Armstrong, J.); *Ballaris,* 2002 WL
22 926272 (D. Or. 2002) (King, J.).  The facts and arguments in all four cases are very similar
23 to those here.

24    While this is a close call, the court is not entirely persuaded that either of the two
25 approaches is correct for this case at this juncture of the proceedings.  Whether IBM
26 assumed fiduciary status, including when and the extent to which it was functioning in the
27 capacity of a plan administrator, will require a searching inquiry into the facts and is
28 therefore inappropriate for resolution on a motion to dismiss.  Because the court is of the

7

1  view that whether IBM was wearing its employer or its plan administrator "hat" is at least in
2  part a factual issue, it cannot be decided as a matter of law at this stage of the litigation and
3  plaintiffs are entitled to discovery on the issue. Accordingly, defendant's motion to dismiss
4  this claim is DENIED.

        2.      Whether Plaintiffs have Improperly Brought the ERISA Claims under the Wrong Enforcement Provision, 29 U.S.C. § 1132(a)(3)

7         Plaintiffs assert their claims under ERISA's "catchall" civil enforcement provision, 29
8  U.S.C. § 1132(a)(3), which provides:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (b) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

12        IBM argues that plaintiffs should have instead brought the claims under §
13 1132(a)(1)(B), which permits a civil action by a participant or beneficiary "to recover
14 benefits due to him under the terms of his plan, to enforce his rights under the terms of the
15 plan, or to clarify his rights to future benefits under the terms of the plan." It therefore
16 asserts that the court should dismiss the claims with prejudice, and that to do so would not
17 prejudice plaintiffs' ability to assert the claims under the proper statutory subsection.
18        IBM contends that because plaintiffs' ERISA claims here "clearly seek benefits, in
19 the form of compensation credits, and clarification of future benefits," section 1132(a)(1)(B)
20 is the appropriate provision; and as a result, plaintiffs may not utilize the catchall provision
21 since relief is available elsewhere. *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996);
22 *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997).
23        In opposition, plaintiffs assert that their claims are not for benefits which may be
24 brought pursuant to § 1132(a)(1)(B). Instead, plaintiffs argue that because their claims
25 seek injunctive and declaratory relief, they are properly asserted under the catchall
26 provision. *See Matthews v. Chevron Corp.*, 362 F.3d 1172, 1186 (9th Cir. 2004); *Gerlach*,
27 Pl. RJN, at Exh. A; *Farmers*, 2005 WL 1972565 (D. Or. 2005). They argue that IBM is
28 mistaken that section 1132(a)(1)(B) provides an adequate remedy in this case.

8

1 | As for the first claim, plaintiffs note that it cannot be considered a claim for benefits
2 | because it is only after IBM has compiled adequate records that plaintiffs will be able to
3 | seek any clarification regarding the benefits owed.  Instead, plaintiffs assert that the basis
4 | of this claim is that IBM has failed to maintain the proper records, and that by this current
5 | action they seek to enjoin this failure and to require IBM to compile the appropriate wage
6 | and hour records so that overtime pay that should be credited under the Plans may be
7 | determined.  Plaintiffs assert that this current claim is essentially a precursor to a future
8 | claim for benefits. As for the second claim, plaintiffs assert that they also seek to remedy a
9 | failure by IBM to determine whether overtime should be considered for the purpose of
10 | crediting compensation under the terms of the Plans.

11 | In the *Gerlach* and *Farmers* cases, both of which involved the same two ERISA
12 | claims as those here, the district courts addressed and rejected the very arguments raised
13 | by IBM.[1]  In *Farmers,* defendants moved to dismiss only the first claim – the alleged
14 | recordkeeping violation under ERISA -- because they claimed, as IBM does here, that the
15 | claim could not be brought under ERISA's catchall provision.  2005 WL 1972565 at *3.
16 | However, the *Farmers* defendants did not move for dismissal on that basis as to claim two
17 | – the breach of fiduciary duty ERISA claim.  The converse was true in *Gerlach.*  Pl. RJN, at
18 | Exh. A.   In *Gerlach,* defendants moved for dismissal of the second ERISA violation on this
19 | basis – the breach of fiduciary duty claim, but not the first.  *Id.*

20 | In both *Gerlach* and *Farmers*, the courts denied defendant's 12(b)(6) motion on this
21 | ground.  As for the breach of fiduciary duty claim (the second claim here), the *Gerlach* court
22 | distinguished the Ninth Circuit's decision in *Forsyth*, also relied on by IBM here.  *See*
23 | *Forsyth*, 114 F.3d at 1475 (rejecting the plaintiffs' attempt to bring a section 502(a)(3)
24 | [catchall] claim because they had already won a judgment for damages on a section
25 | 502(a)(1) benefits claim arising out of the same conduct).  The *Gerlach* court held that the
26 | claim in that case was distinguishable from *Forsyth* because the *Gerlach* plaintiff did "not
27 | seek relief under [the catchall] arising out of conduct for which she ha[d] already recovered
28 |

---

[1] In *Veliz* and *Ballaris*, the district courts did not address this issue, presumably because the defendants did not raise it.

9

under a different provision, nor [did] she seek direct payment of pension benefits." Pl. RJN, at Exh. A. at 7. Instead, as the court noted, the *Gerlach* plaintiff sought equitable relief under 502(a)(3). *Id.*

In holding that the *Gerlach* plaintiff could bring her ERISA breach of fiduciary duty claim under the catchall provision, the court relied on the Ninth Circuit's decision in *Matthews v. Chevron Corp.*, 362 F.3d 1172 (9th Cir. 2004). In *Matthews*, the plaintiffs sued their employer for breach of ERISA's fiduciary duties under the catchall provision. *Id.* at 1176. They contended that they should have been classified differently upon their termination, such that they were eligible for special enhancement benefits. The Ninth Circuit rejected the defendant's argument that plaintiffs' claims were really ones for benefits or damages. The court held that "an order to modify plan records is not an award of monetary damages. More importantly the relief granted by the district court [] is also equitable in substance." *Id.* at 1186. The Ninth Circuit affirmed the district court's order that pursuant to the catchall provision, plaintiffs could seek an order requiring defendants to modify their plan records. *Id.*

In *Gerlach*, the court ruled that *Matthews* applied to the breach of fiduciary duty claim. Even though success by the *Gerlach* plaintiffs would obligate the employer to pay higher pension benefits, the court reasoned, relying on *Matthews*, that "the mere payment of money does not necessarily render the award compensatory 'monetary damages' that are not permissible under section 502(a)(3)." Pl. RJN, at Exh. A.b

Likewise, in *Farmers*, the district court held that an identical recordkeeping claim under ERISA (the first claim here) could properly be brought under ERISA's catchall provision. 2005 WL 1972565 at *3. The *Farmers* court noted the Supreme Court's decision in *Varity*, in which the Court described § 502(a)(3) as a "kind of a catchall" "providing appropriate equitable relief from any statutory violation for injuries caused by violations that § 1132 does not elsewhere adequately remedy." 516 U.S. at 511. The Court held that the catchall authorized lawsuits for individualized equitable relief for breach of fiduciary obligations. *Id.* at 514.

The *Farmers* court rejected the defendant employer's argument that alternative remedies were available in the form of civil penalties to the Secretary of Labor for its alleged failure to maintain records and also in the form of damages for plan benefits the plaintiffs allegedly lost. 2005 WL 1972565 at *3. The court concluded that plaintiffs should be able to maintain their recordkeeping claim at least at that stage of the proceedings. It reasoned that: "[w]hile other remedies ultimately may exist and be appropriate, the pleading stage is not the proper stage at which to make that determination." *Id.* It noted that "if [the employer] has in fact violated ERISA with respect to the present plaintiffs by failing to keep proper records, then an injunction requiring [the employer's] compliance with ERISA may be an appropriate remedy." *Id.* (citing *Varity*, 516 U.S. at 515).

As plaintiffs in this case have noted, they are seeking equitable relief on both claims. The court finds the courts' reasoning in both *Farmers* and *Gerlach* persuasive as to why plaintiffs should be entitled to pursue both ERISA claims under the catchall provision. Moreover, this court's prior decision in *Delucchi v. Life Ins. Co.*, 2005 WL 146902 (N.D. Cal. 2005) (Hamilton, J.), and cited by IBM, is not to the contrary. In *Delucchi,* the plaintiff alleged both a claim for benefits under § 1132(a)(1)(B), and a claim for breach of fiduciary duty under the catchall (§ 502(a)(3) or § 1132(a)(3)). This court concluded that because Delucchi had properly stated a claim for benefits, she "already had a remedy under § 1132(a)(1)(B) for her claim for benefits, [and did] not also have a claim under § 1132(a)(3)." *Id.* at *1. The court therefore granted the defendant's motion to dismiss the claim brought under the catchall provision. *Delucchi* is distinguishable because plaintiffs in this case have NOT asserted a claim for benefits under § 1132(a)(1)(B) in addition to their claims brought under ERISA's catchall.

For these reasons, the court DENIES IBM's motion to dismiss on this ground.

        3.        Whether Plaintiffs have Failed to Exhaust Available Remedies

In conjunction with the above argument, IBM contends that under § 1132(a)(1)(B), plaintiffs were required to exhaust their remedies under the Plan before filing the instant lawsuit, which they did not do. *See Amato v. Bernard*, 618 F.2d 559, 566-68 (9th Cir.

11

1980).  However, because this court concludes that plaintiffs appropriately brought their claims under ERISA's catchall provision, this issue is moot.  Exhaustion is not required under § 1132(a)(3).  *Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412, 1416 n.1 (9th Cir. 1991).  Accordingly, defendant's motion to dismiss is DENIED on this basis as well.

       4.  Whether Plaintiffs' ERISA Claims are Ripe for Adjudication

IBM also argues that plaintiffs' ERISA claims are not ripe until after adjudication of their FLSA and state law wage claims.  It argues that the ERISA claims are impermissibly contingent upon the following future events: (1) success on the merits of plaintiffs' claims under federal and state wage laws; and (2) upon properly exhausting the claims, a refusal by the Plan Administrator to provide overtime credits after reviewing the claims through the Plans' review procedures.   In support of its argument that plaintiffs' ERISA claims are not ripe, IBM cites to the Ninth Circuit's decision in *In re Lowenschuss*, 170 F.3d 923, 932 (9th Cir. 1999), discussed below.

Plaintiffs respond that the issues are ripe for decision because the harm to plaintiffs already occurred when IBM failed to maintain accurate records and failed to credit plaintiffs with overtime under the Plans.  They argue that there will be hardship to plaintiffs in the form of further delay in obtaining their entitled benefits, but no hardship to IBM will result if the claims are adjudicated.

Plaintiffs are correct that there are generally two prongs to the ripeness inquiry, including the fitness of the issue for judicial decision, and the hardship to the parties.  *See Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967)*; see also Clinton v. Acequia*, 94 F.3d 568, 572 (9th Cir. 1996).  Here, IBM seems to focus only on the fitness issue.

The "basic rationale" of the Article III ripeness doctrine "is to prevent the courts through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbot Labs*, 387 U.S. at 148.  "Ripeness is peculiarly a question of timing, and a federal court normally ought not resolve issues involving contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Clinton*, 94 F.3d at 572 (citations omitted).

The case at hand is different than *Lowenschuss*, relied on by IBM. 170 F.3d 923, 932 (9th Cir. 1999). In that case, the Ninth Circuit affirmed the bankruptcy court's determination that the debtor's ex-wife's property interest in his pension plan had not been discharged through the bankruptcy proceedings, and that the ex-wife retained an interest in the pension plan. However, during the bankruptcy court proceedings, another one of the debtor's creditors, Sun International, obtained a judgment from the bankruptcy court against the debtor's assets, including his pension plan. *Id.* That judgment was reversed by the district court on appeal, and the district court's reversal was simultaneously before the Ninth Circuit on a separate appeal.

The creditor, Sun, asked the Ninth Circuit to determine whether the ex-wife's property interest in the pension plan was subject to Sun's judgment against the plan. The Ninth Circuit held, though, that Sun's claim was premature until the other appeal regarding the judgment in favor of Sun was decided. *Id.* Specifically, the Ninth Circuit held that "[b]ecause Sun's claim against the Pension Plan is contingent on the outcome of this undecided appeal, we decline to reach this issue as it is not yet ripe for review." *Id.*

Here, unlike *Lowenschuss,* there are no simultaneous proceedings taking place with respect to plaintiffs' ERISA claims. Moreover, IBM appears to mischaracterize plaintiffs' claims. Plaintiffs' ERISA claims are for equitable relief. They are not seeking damages for wrongs that have not yet occurred. Instead, they are seeking an accounting or recordkeeping regarding overtime wages to which they claim they are entitled. As plaintiffs note, the harm for many of them has already occurred.

The court agrees with IBM that plaintiffs will need to establish a violation of the FLSA. However, the fact that plaintiffs will need to establish the merits of their FLSA claims does not necessarily render their ERISA claims unripe. Similar to claims for punitive damages, the ERISA claims may be *dependent* on FLSA claims, but they are not unripe. Accordingly, the court finds that the ERISA claims cannot be dismissed on ripeness grounds at this stage.

B.     State Law Claims

1.     Plaintiffs' Request for Injunctive and Declaratory Relief

IBM seeks to strike under Rule 12(f) all of the state law claims *with the exception of the California claims* to the extent that those claims seek injunctive and declaratory relief. This includes claims 10, 11, 12, 13, and 14. It argues that plaintiffs lack standing to seek prospective relief on those claims because named plaintiffs Mattson, Park, Kennedy, and Topacio are no longer IBM employees, and are therefore incapable of establishing a necessary threat of ongoing harm to themselves.

IBM asserts that plaintiffs must demonstrate standing separately for each form of relief sought. *Friends of Earth v. Laidlaw*, 528 U.S. 167, 185 (2000). It argues that in order to have standing for injunctive relief, plaintiffs must be able to demonstrate "a likelihood of substantial and immediate irreparable injury." *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Likewise, for declaratory relief, plaintiffs are required to show "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). Accordingly, IBM argues that because plaintiffs themselves lack standing to seek injunctive relief, that they may not represent a class seeking such relief. *See Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

Plaintiffs respond that they have standing to seek declaratory and injunctive relief despite the fact that they are no longer employed by IBM. They rely on two Northern District of California cases for the proposition that "[c]ourts have long understood and acknowledged the reality that current employees often fear retaliation and therefore may be unlikely to bring suit at all, effectively shielding employers from liability and the obligation to remedy violations of law on a class-wide basis." *See Wofford v. Safeway Stores*, 78 F.R.D. 460, 490 (N.D. Cal. 1978); *Church v. Consol. Freightways, Inc.*, 1991 WL 284083 at *15 (N.D. Cal. 1991). Plaintiffs argue that none of the cases cited by IBM arose in the context of an employment relationship, evoking similar fears of retaliation. Additionally, plaintiffs note that IBM's cases were decided following a full evidentiary

1  hearing as opposed to a motion to strike.

2  In *Flanagan v. Inland Empire Elect. Workers*, a Ninth Circuit case that was not cited
3  by either party, the court held that the plaintiffs, former employees, who sought both
4  monetary and *equitable* relief under ERISA, had standing to assert their claims where they
5  had accrued benefits prior to their termination. 3 F.3d 1246, 1250 (9th Cir. 1993). This is
6  the same result reached by Judge Jensen in *Church v. Consol. Freightways, Inc.* 1991 WL
7  284083 at *15 (N.D. Cal. 1991), the case cited by plaintiffs.

8  In *Church*, where plaintiffs were former employees who asserted ERISA claims for
9  injunctive relief on behalf of current and former employees, the court rejected the
10 defendant's challenge to plaintiffs' standing. It was persuaded by "several cases [that] hold
11 that not only are former employees adequate representatives of current employees in class
12 actions seeking at least in part declaratory and/or injunctive relief, but . . . that former
13 employees provide superior representation in bringing claims against the employer." *Id.*
14 (citing *Wofford*, 78 F.R.D. at 489-90 n.6) (N.D. Cal. 1978) (for purposes of class certification
15 motion, concluding that former employee who brought employment discrimination suit
16 against employer had sufficient typicality to represent class).

17 This court, therefore, DENIES defendant's motion to strike based on the Ninth
18 Circuit's decision in *Flanagan.*

19              2.      New Jersey Recordkeeping Claim

20 At par. 180 of the 1AC, plaintiffs allege that "IBM has failed to keep true and
21 accurate records of the hours worked by the New Jersey Named Plaintiff and the New
22 Jersey Class members in violation of [the New Jersey State Wage and Hour Law
23 (NJWHL)], N.J.S. § 34:11-56a1(h)." IBM cites to a very recent case from the District Court
24 of New Jersey for the proposition that "private litigants cannot pursue a private civil action
25 for recordkeeping violations under New Jersey law." *See Genarie v. PRD Management,*
26 *Inc.*, 2006 WL 436733 at *18 (D.N.J. 2006). They argue that this allegation should be
27 stricken from plaintiff's 1AC.

28 Plaintiffs respond they have not brought a separate claim for recordkeeping

15

violations under New Jersey law. Based on this representation, IBM noted at the hearing that it withdraws its motion to strike on this basis. Accordingly, the court need not address the issue.

### 3. Punitive Damages in Conjunction with Illinois Claims

IBM also argues that as a matter of Illinois law, punitive damages may only be recovered by the Director of Labor. *See* 820 Ill. Comp. Stat. § 105/12a; *see also Gelb v. Air Con*, 356 Ill.App.3d 686 (Ill. Ct. App. 2005); *Palmer v. Great Dane Trailers*, 2005 WL 1528255 (N.D. Ill. June 28, 2005).

Plaintiffs argue that IBM has misrepresented the Illinois statute at issue. Further, they concede that the Illinois Supreme Court has not decided the issue, but characterize the Illinois appellate court's decision on the issue as "dicta," which they argue that this court should disregard. Likewise, plaintiffs also argue that this court should disregard the Illinois district court's decision because it was based on the same "dicta." Plaintiffs then argue for a contrary interpretation based on other decisions by the very courts whose decisions they contend this court should disregard.

Where, as in this case, the state supreme court has not decided the issue, "[i]n the absence of convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate courts." *Easyriders v. Hannigan*, 92 F.3d 1486, 1494 n.4 (9th Cir. 1996) (citing *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990)). Because there is no convincing evidence in this case that the Illinois appellate court was wrong (in addition to the district court for the Northern District of Illinois), the court GRANTS defendant's motion and STRIKES paragraphs 167 and prayer for relief YY to the extent they seek punitive damages under Illinois law. Should the Illinois Supreme Court decide the issue differently during the pendency of this case, plaintiffs may seek leave to amend their complaint.

## CONCLUSION

For the reasons set forth above, regarding plaintiffs' ERISA claims, the court DENIES defendant's motion to dismiss claims one (recordkeeping) and two (breach of

fiduciary duty). With respect to IBM's motions to strike, the court DENIES defendant's motion to strike plaintiffs' request for equitable relief as to the state law claims for lack of standing. The court, however, GRANTS IBM's motion to strike plaintiffs' request for punitive damages with respect to their Illinois claim.

**IT IS SO ORDERED.**

Dated: June 12, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge