1  Steven G. Zieff (SBN 084222)
   David A. Lowe (SBN 178811)
2  Kenneth J. Sugarman (SBN: 195059)
   RUDY, EXELROD & ZIEFF, LLP
3  351 California Street, Suite 700
   San Francisco, CA 94104
4  Telephone: (415) 434-9800
   Facsimile: (415) 434-0513
5  Email: sgz@reztlaw.com
   Email: dal@reztlaw.com
6  Email: kjs@reztlaw.com

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11

12 THOMAS ROSENBURG et al., on behalf of        Case No.  CV 06-00430 PJH
   themselves and classes of those similarly situated,
13                                               **DECLARATION OF STEVEN G.**
              Plaintiffs,                        **ZIEFF IN SUPPORT OF MOTION**
14                                               **FOR ORDER (1)**
       v.                                        **CONDITIONALLY CERTIFYING**
15                                               **SETTLEMENT CLASSES AND**
   INTERNATIONAL BUSINESS MACHINES               **COLLECTIVE ACTION, (2)**
16 CORPORATION,                                  **GRANTING PRELIMINARY**
                                                 **APPROVAL TO PROPOSED**
17            Defendant.                         **CLASS ACTION SETTLEMENT**
                                                 **AND PLAN OF ALLOCATION, (3)**
18                                               **DIRECTING DISSEMINATION OF**
                                                 **NOTICE AND CLAIM FORM TO**
19                                               **THE CLASS, (4) APPROVING**
                                                 **RELEASES, AND (5) SETTING**
20                                               **DATE FOR FAIRNESS HEARING**
                                                 **AND RELATED DATES.**
21

22

23     I, Steven G. Zieff, declare:

24     1.     I am a partner at Rudy, Exelrod & Zieff, attorneys for the plaintiffs in the above-

25 captioned proposed class action.  I make these statements based on personal knowledge and

26 would so testify if called as a witness at trial.

27     2.     I am licensed to practice before all courts of the State of California, as well as in

28 federal courts.

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

3.     This Declaration is submitted in support of Plaintiffs' Notice of Motion and Motion For Order: (1) conditionally certifying settlement classes and collective action, (2) granting preliminary approval to proposed class action settlement and plan of allocation, (3) directing dissemination of notice and claim form to the class, (4) approving releases, and (5) setting date for fairness hearing and related dates.

### Background and Experience of Co-Lead Counsel

4.     I graduated with Honors from Brown University in 1974, where I majored in public policy making. After spending a year as a VISTA volunteer with the Legal Aid Society of Metropolitan Denver (where I worked on a variety of legal matters involving the civil and legal rights of low income and disabled persons), I entered law school at the University of California at Berkeley (Boalt Hall). I graduated from Boalt Hall in 1978, and have specialized in class actions and other complex civil litigation, principally employment and civil rights matters.

5.     For the first seven years after I graduated from law school, I worked principally as a legal services attorney representing indigents in civil matters. From August 1979 through May 1981, I was a Reginald Heber Smith Fellow and staff attorney with the Solano County Legal Assistance in Vallejo, California. From May 1981 through February 1984, I was a staff attorney with the Senior Advocates Unit of the Legal Aid Society of San Mateo County, where I represented low income senior citizens living in San Mateo County. From February 1984 until November 1986, I was the supervising attorney for the Senior Advocates Unit of the Legal Aid Society of Alameda County.

6.     Since November 1986, I have practiced with Rudy, Exelrod & Zieff, L.L.P. (formerly Rudy & Zieff and Rudy, Exelrod, Zieff & True, L.L.P.), where I became a name partner in May 1989. My practice consists primarily of representing individuals and class members in employment litigation, including wage and hour, wrongful termination, employment discrimination, and other employment-related disputes. Attached hereto as Exhibit 1 is a true and correct copy of my resume which accurately depicts my experience and background.

7.     I was the lead trial counsel in *Pierce v. SPX Corporation*, Case No. H194779-3, in Alameda County Superior Court. In that action, plaintiff Richard Pierce alleged that SPX had

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1   violated California Labor Code § 2802 and California Business and Professions Code § 17200 by

2   failing and refusing to reimburse its sales employees for their necessary employment expenses.

3   Prior to class certification, the parties agreed to a settlement of the action on behalf of

4   approximately 275 current and former employees of SPX. Defendants agreed to the payment of

5   $1,500,000 in settlement of the action. The Court approved both class certification and the

6   settlement in the action.

7       8.      I was the lead trial counsel in *Breaux v. Agency Rent-A-Car*, Case No. C92 2717

8   WHO (N.D. Cal. 1996), a class action overtime lawsuit brought under California's Labor Code

9   seeking unpaid overtime, unlawfully compelled reimbursements, waiting-time penalties, and

10  attorneys' fees and costs on behalf of office managers and assistant office managers working for

11  Agency Rent-A-Car in California. This case was removed from the San Mateo County Superior

12  Court to the Federal District Court in San Francisco. In litigating this case, plaintiffs successfully

13  moved for class certification and partial summary judgment. Following these pre-trial

14  proceedings, we prevailed on the liability phase before Judge Orrick. After extensive Stage II

15  discovery, we eventually settled the case. Under the terms of the Settlement Agreement, over

16  $5,000,000 was disbursed to approximately 375 class claimants. In addition, Agency had to pay

17  employer tax contributions on the settlement and pay for the costs of administration.

18      9.      I was lead counsel in *Kerr v. Snap-on, Inc.*, American Arbitration Association No.

19  74-160-1032-97, also known as *Kerr v. Snap-on Tools Company*, Case No. CV758116 in the

20  Santa Clara Superior Court. In that class arbitration, plaintiffs certified a class of employees

21  seeking unreimbursed expenses under Labor Code § 2802 and wages owed as a result of

22  defendant's "use-it-or-lose-it" vacation policy. The case settled for a total of approximately

23  $8,400,000.

24      10.     I was lead counsel in *Addvensky v. Corporate Express Delivery Systems - West

25  Coast, Inc., et al.*, Case No. 720794 (San Diego County Superior Court). *Addvensky* was

26  certified by the San Diego Superior Court as a class action with respect to the minimum wage,

27  overtime, and Labor Code § 2802 claims brought by a class of commissioned drivers for

28  Corporate Express. In 2000, the case settled for $9,750,000.00.

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

11. I was lead counsel for plaintiffs in *Kung v. Food 4 Less Holdings, Inc., et al.*, Case No. BC 188014, *Hines v. Food 4 Less, et al.*, Case No. BC 202728 (Los Angeles Superior Court), and *Metzler v. Food 4 Less, et al.*, Case No. BC 206244 (Los Angeles Superior Court). These actions were brought on behalf of Produce Managers, Meat Managers, and Assistant Grocery Managers working in Food 4 Less stores in Southern California. The Court approved class certification in all three of these actions. In 2000, the first two cases settled for $3,200,000 (*Kung*) and $3,500,000 (*Hines*). *Metzler* settled in 2003 for $4,450,000. These settlements were approved by the Los Angeles Superior Court.

12. I was lead counsel for plaintiffs in *Walker v. OfficeMax*, Case No. 00CC04470 (Orange County Superior Court). This action was a wage and hour overtime misclassification case brought on behalf of a class of OfficeMax store Assistant Managers. A settlement class was certified and the matter settled for $4,450,000. The settlement was approved by the Superior Court.

13. I was co-lead counsel for plaintiffs in *Miskell v. Automobile Club of Southern California*, Case No. 01CC09035 (Orange County Superior Court), a wage and hour overtime misclassification case brought on behalf of a class of Material Damages Claims Representatives. A settlement class was certified and the matter settled for $2,500,000. The settlement was approved by the Superior Court.

14. I was co-lead counsel for plaintiffs in *Zuckman, et al. v. Allied Group, Inc., et al.*, Case No. 02-5800 SI (United States District Court, Northern District of California), a wage and hour overtime misclassification case brought on behalf of a class of insurance claims representatives. A settlement class was certified and the matter settled for $8,000,000. The settlement was approved by the Court.

15. I am lead counsel for plaintiffs in *Bell v. Farmers Insurance Exchange*, Case No. 774013-0 (Alameda Superior Court). This action was brought on behalf of a class of approximately 2,400 personal lines insurance claims adjusters misclassified as exempt from California's overtime pay requirements. The Superior Court approved class certification in *Bell*, denied two motions for decertification, granted summary adjudication on plaintiffs' behalf,

1    denied defendant's summary judgment motion, and denied defendant's motion for new trial and

2    for judgment notwithstanding the verdict. The damages case in *Bell* was tried before a jury in a

3    six-day trial. The jury awarded the class $90,009,208.12 in overtime backpay damages, and the

4    Superior Court awarded maximum prejudgment interest of up to $34,515,608 and issued an

5    injunction requiring that defendant to pay overtime to personal lines claims representatives in the

6    future. *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715, 9 Cal.Rptr.3d 544, 556-557 (Cal.

7    Ct. App. Feb. 9, 2004) ("*Bell III*"). Subsequently, as class counsel in the *Bell* case, we oversaw

8    the claims distribution of the Net Settlement Fund provided by the judgment affirmed in *Bell III*.

9    In addition, my office also served as class counsel with respect to the court-approved settlement

10   of $40,000,000 with Farmers to resolve the post-trial claims of personal lines claims

11   representatives in California for the period from June 26, 2001 through August 31, 2004.

12       16.    I am lead counsel in *In re Farmers Insurance Exchange Claims Representatives'*

13   *Overtime Pay Litigation*, Civil No. MDL Docket 1439A (U.S.D.C., District of Oregon)

14   (hereinafter, "Farmers MDL 1439A"). The Farmers MDL case involves class claims on behalf of

15   employees who were misclassified as exempt from overtime pay requirements under the FLSA

16   and the laws of seven other states (not California) and, thus, deprived of the benefits of the

17   overtime pay protections mandated by certain state and/or federal laws. The MDL 1439A

18   proceedings were presided over by the Honorable Robert E. Jones, United States District Judge,

19   after the MDL Panel sent several cases to him for consolidated pretrial proceedings. In that

20   matter, there were FLSA opt-ins who filed consents to sue after plaintiffs' motion for Hoffman

21   notice was ordered by Judge Jones and there were class members in seven state law classes as the

22   court certified classes of claims representatives under the laws of seven states. The liability phase

23   of the matter was tried in September, 2003 regarding the claims of approximately 2,700 insurance

24   claims adjustors. On November 6, 2003, U.S. District Court Judge Robert E. Jones ruled in favor

25   of the auto and certain property claims representatives. The Court found that Farmers had acted

26   willfully in violating the FLSA, and that the auto and low-level property adjustors were entitled

27   to liquidated damages as well as actual damages. *In re Farmers Ins. Exchange Claims*

28   *Representatives' Overtime Litig.*, 300 F. Supp. 2d 1020 (D. Or. 2003). During 2004 and 2005, I

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

DECLARATION OF STEVEN G. ZIEFF IN SUPPORT OF MOTION FOR ORDER CONDITIONALLY CERTIFYING SETTLEMENT
CLASSES; PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT, CV 06-00430 PJH

- 5 -

1   acted as lead counsel when the damages phase of the case was being litigated culminating in

2   judgments in that matter totaling approximately $52.5 million.  Those judgments were the subject

3   of cross appeals before the Ninth Circuit.  On October 27, 2006, a three-judge panel of the Ninth

4   Circuit affirmed in part, reversed in part and remanded the case to the District Court.  *In re*

5   *Farmers Ins. Exchange Claims Representatives' Overtime Litig.*, ___ F.3d ____, 2006 U.S. App.

6   LEXIS 26671 (9th Cir. 2006).

7          17.     I was co-lead counsel in *Giannetto v. Computer Sciences Corporation*, Case No.

8   CV 03-8201 (C.D. Cal.).  This case was filed on behalf of a class of technical support workers

9   with the primary duties of installing and/or maintaining computer software and hardware for CSC

10  and contends that they were improperly classified as exempt from the payment of overtime

11  compensation in violation of the FLSA and/or the state laws of California, Connecticut,

12  Delaware, Maine, Massachusetts, Michigan, North Carolina, and Washington.  A settlement class

13  was certified and the matter settled for $24,000,000.  The Court approved the settlement.

14         18.     I was also co-lead counsel in a number of overtime class action lawsuits brought

15  under California and federal law, including *Gerlach v. Wells Fargo & Co.*, Civil No. 05-CV-

16  00585-CW (U.S.D.C., Northern District of California), a case involving class claims on behalf of

17  employees who were misclassified as exempt from overtime pay requirements under the FLSA

18  and the laws of California and, thus, deprived of the benefits of the overtime pay protections

19  mandated by certain state and/or federal laws.  In that case, the court has preliminarily approved a

20  class action settlement under which the class will settle for a total settlement fund of

21  $12,800,000.

22         19.     I have also successfully litigated a wide variety of complex federal and state civil

23  litigation matters during my professional career, including several class actions raising statutory

24  and constitutional issues.  Class action cases I have successfully prosecuted to judgment or

25  settlement, in addition to the foregoing, include:  *Pendergast v. The Lesley Foundation*, No. C-

26  81-3373 (N.D. Cal.), *Jones v. The Lesley Foundation*, No. C-82-0473 MHP (N.D. Cal.), and

27  *McGlothlin v. San Mateo County Sheriff's Dept.*, No 003750 (Solano County Superior Court,

28  Stipulation for Entry of Judgment, Dec. 15, 1980) (class action on behalf of all inmates of the

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1   Solano County Detention Facility challenging disciplinary practices of the Solano County Jail).

2          20.     In addition to being an active litigator, I have long been involved in many

3   educational and legal groups, including the National Employment Lawyers Association, the San

4   Francisco Trial Lawyers Association, the American Trial Lawyers Association, and California

5   Employment Lawyers Association.  I have frequently assisted the San Francisco Bar Association

6   in its Early Settlement Program on employment cases.  I have written articles for a variety of

7   legal publications and have had articles printed and distributed in several publications, including

8   *California Litigation* (the journal of the Litigation Section of the California State Bar), the

9   *California Labor and Employment Law Quarterly* (the official publication of the State Bar of

10  California Labor and Employment Law Section) and Matthew Bender's *Employment Law*

11  *Reporter*.  I have also prepared materials for several American Bar Association and California

12  Continuing Education of the Bar (CEB) programs.  In addition to authoring articles on a variety

13  of employment and litigation-related subjects, I have lectured on employment law matters at

14  meetings, conferences, and MCLE programs sponsored by the Rutter Group/the California

15  Judge's Association, San Francisco Trial Lawyers Association, the National Employment

16  Lawyers Association, the American Trial Lawyers Association, the American Bar Association,

17  the California State Bar's Section on Labor and Employment, and CEB.  In October 2006, I

18  served as the co-chair of the American Conference Institute's Third National Forum on Wage and

19  Hour Claims and Class Actions.

20          21.     I received the California Lawyer Attorney of the Year ("CLAY") Award for my

21  accomplishments in the *Bell v. Farmers Insurance Exchange* case in 2001.  The March 2002

22  edition of California Lawyer magazine awarded CLAY awards to 26 California lawyers "whose

23  achievements in 2001 shaped the law, the profession, and the way the law effects industry as a

24  public."  The lawyers who were selected for CLAY awards "not only won important cases in

25  2001 but also left a lasting impact on the way those who follow them will practice."

26          22.     I was named as one of the "Top 100" Most Influential Lawyers in California by

27  the Daily Journal in 2002.  I am also a Fellow of the College of Labor and Employment Law, an

28  honorary society.  I have been listed in the Best Lawyers since 2005 in America and adjudged a

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1    "Super Lawyer" by my peers for 2004, 2005, and 2006.

2        23.    In addition to my own experience as a class-action litigator in employment

3    disputes, my partners and my associates in my firm also have extensive experience in class-action

4    litigation. David A. Lowe, one of my partners, received his Bachelor of Arts degree from Emory

5    University in 1992, graduating Phi Beta Kappa, and his Juris Doctor degree from the University

6    of California at Berkeley (Boalt Hall) in 1995. He has practiced with Rudy, Exelrod & Zieff,

7    LLP since 1996. He has litigated class action matters involving a variety of employment law

8    issues, including, but not limited to, violations of wage and hour laws, ERISA, FMLA, and the

9    WARN Act. He is currently lead counsel in another overtime class action, *Rodriguez et al. v.*

10   *HomeGain.com, Inc.*, Case No. RG05246985 (Alameda County Superior Court) and is co-lead

11   counsel in *Gan et al. v. Schoenmann*, Adversary Proceeding No. 01-3107 TC (U.S. Bankruptcy

12   Court for the Northern District of California), a WARN Act class action. He has also been

13   named a Northern California "Super Lawyer" and has lectured extensively on class action and

14   employment law matters at seminars and conferences, including those sponsored by the State Bar

15   of California, the American Bar Association, the Bar Association of San Francisco, the Contra

16   Costa County Bar Association, the Bar Association of San Mateo (Labor and Employment Law

17   Section), the International Bar Association, the California Employment Lawyers Association,

18   Practicing Law Institute, the Association of Defense Counsel, Continuing Education of the Bar,

19   Lorman Educational Services, and Bridgeport Continuing Legal Education, on topics such as

20   class action issues and litigation strategy. He has also authored a number of employment law-

21   related articles, including, "You Know How to Whistle, Don't You?  Sarbanes-Oxley

22   Whistleblower Protections and Some State Law Alternatives," Bender's California Labor and

23   Employment Bulletin, Vol. 2004, No. 6, 2004; and "Taking Stock:  When Employers Fire

24   Employees to Recapture Stock Options," California Litigation:  The Journal of the Litigation

25   Section, State Bar of California, Vol. 14, No. 2, 2001.

26       24.    In this litigation, eight law firms worked together to represent the Plaintiff Class:

27   (1) Lieff, Cabraser, Heiman & Bernstein, LLP; (2) Rudy, Exelrod & Zieff, LLP; (3) Goldstein,

28   Demchak, Baller, Borgen & Dardarian; (4) Lewis, Feinberg, Renaker & Jackson, P.C.; (5) Spiro

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1  Moss Barness Harrison & Barge LLP; (6) Outten & Golden LLP; (7) Bruckner Burch, PLLC;

2  and (8) Lee & Braziel, LLP. Such a coalition provided the skills, background, and resources

3  necessary to represent Plaintiffs and the Class members effectively in a case of this magnitude.

4  Indeed, Class Counsel has already paid in excess of $190,000 in expenses in the investigation and

5  prosecution of this matter, and additional costs have been incurred but for which we have not

6  received bills. Class Counsel estimates the total expenses to be approximately $250,000. This

7  team of lawyers has substantial knowledge of FLSA and ERISA claims, and the state wage laws

8  of many states. (*See* Resumes of Class Counsel, attached as Exhibit 2.)

## The Work And Negotiations Leading To This Settlement

10      25.     **Pre-Complaint Work**. Prior to filing the instant action against IBM, there were

11  numerous meetings and discussions among Plaintiffs' counsel regarding the nature of the case to

12  be prosecuted, the claims to be pleaded, and case management and strategic issues. As part of

13  these discussions, Plaintiffs' counsel decided that it would benefit the Plaintiffs and proposed

14  classes to assemble a group of law firms to represent the Plaintiffs in this litigation, comprised of

15  law firms which each have substantial experience in class actions generally, in wage and hour

16  class actions and employment law class actions in particular, and, even more specifically, in

17  wage and hour class actions prosecuting a combination of federal overtime law claims, numerous

18  state overtime law claims, and ERISA claims. Given that Plaintiffs and class counsel would be

19  representing a class comprised of tens of thousands of former and current IBM employees, and

20  that IBM would defend the matter vigorously, the consensus was that Plaintiffs needed a team of

21  top-flight plaintiffs' class action law firms so that Plaintiffs would have the collective experience,

22  expertise and resources of the various Plaintiffs' firms working on this case.

23      26.     Before the lawsuit was filed, in order to coordinate the work required to litigate

24  this case, the firms representing plaintiffs had periodic conference calls and other meetings in

25  which we considered and developed strategies and tactics to most effectively prosecute the case

26  and divided up assignments among the firms to ensure that work was done on an expedited basis,

27  efficiently, and without unnecessary duplication. Plaintiffs' attorneys also engaged in pre-

28  complaint communications with the prospective named Plaintiffs relating to their employment,

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

their potential claims, the nature of the action being contemplated, their role and responsibilities as named Plaintiffs, the scope, nature and terms of Plaintiffs' counsel's representation, and the named Plaintiff retainer agreements and FLSA consent to sue forms.

27. **Key Pleadings.** This action was filed on January 24, 2006 by the original named Plaintiffs Thomas Rosenburg, John Shelly, and Exaldo Topacio, on behalf of themselves and similarly situated IBM technical support workers who were misclassified as exempt from the payment of overtime compensation under the FLSA and the wage and hour laws of the states of California and New York. There are approximately 2,450 and 4,650 putative class members in the California and New York classes respectively. The complaint included ERISA claims alleging that Plaintiffs and the putative class members were unlawfully deprived of profit sharing and pension benefits due to their misclassification. The complaint was amended on March 13, 2006 to add claims under the wage and hour laws of Colorado, Illinois, Minnesota and New Jersey. Plaintiffs anticipate filing a second amended complaint on November 22, 2006 that will add claims under the wage and hour laws of Connecticut, Maryland, Massachusetts, North Carolina, Ohio, Pennsylvania, Wisconsin, Kentucky and Washington. The Kentucky Class, one of the proposed Rule 23 settlement classes, is represented by Frank Vasterling, and contains approximately 720 putative class members. The Plaintiffs and the settlement class and subclasses that they seek to represent consist of current and former IBM employees who hold, or who held during specified time periods, positions that the Company described with position codes 498Q (bands 6-8), 498R (bands 6-8), 498S (bands 6-8), 498T (bands 6-8), 498U (bands 6-8), 499A (bands 6-8), 4325, 5343, 5338, or 594J (bands 6-8).

28. On March 30, 2006, IBM filed a motion to dismiss in part and strike in part certain of Plaintiffs' claims. Plaintiffs' attorneys' intensively researched and briefed the issues raised by IBM's motion, and appeared at oral argument to oppose IBM's motion. The Court denied IBM's motion to dismiss the ERISA claims and certain claims for injunctive relief, but granted the motion to strike the claim for punitive damages under Illinois law.

29. As discussed below, on May 18, 2006, the parties filed the Stipulation and Order Regarding Case Schedule, and Potential Collective Action Member Contact Information. Also as

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1     discussed below, on October 5, 2006 the parties filed the Modified Stipulation and Order

2     Extending Tolling of FLSA Statute of Limitations, Tolling Statutes of Limitations for Certain

3     State Law Claims, and Extending Schedule for Filing Certain Motions.

4           30.     Since the parties agreed in principle to certain broad terms of the settlement on

5     October 19, 2006, Plaintiffs' counsel has spent many hours negotiating and drafting the proposed

6     settlement pleadings that will be filed with the Court, including a motion for preliminary

7     approval including plan of allocation, a proposed class notice, a proposed claim form, and a

8     proposed form of order for the requested preliminary settlement approval, as well as this

9     supporting Declaration.

10          31.     **Initial Informal Discovery**. Plaintiffs' counsel spent thousands of hours

11     litigating this case prior to the mediation, including a substantial amount of time spent conducting

12     formal and informal discovery. Before formal discovery even began, Plaintiffs' counsel

13     intensively reviewed all available documents relating to IBM, interviewed the named Plaintiffs

14     and hundreds of potential class members and witnesses relating to the putative classes'

15     employment and work at IBM, and spent many hours organizing, reviewing and analyzing the

16     information gained from documents, plaintiffs and witnesses. Plaintiffs' attorneys and paralegals

17     prepared fully developed "intake" interview forms, which collected extensive information

18     regarding the individuals' IBM employment, including job duties, job classification, work hours,

19     supervision, and job responsibility and authority. Plaintiffs' counsel spent many hours compiling

20     and analyzing the information gained from interviews, in conjunction with documents relating to

21     IBM's position classification and exemption classification scheme, to define an ascertainable and

22     otherwise certifiable class of technical computer support workers (*i.e.*, to determine the IBM job

23     families, job positions, job position codes, and job bands that could be used to refine Plaintiffs'

24     functional class description, if necessary, into a more specific job classification-based

25     description). On an ongoing basis as part of this discovery and data analysis, Plaintiffs' counsel

26     were identifying, reviewing and discussing various legal and factual issues and types of job

27     duties or assignments which might relate to class certification or which might affect the specific

28     class(es) Plaintiffs would move to have certified. As part of the informal discovery process,

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

Plaintiffs' counsel also provided the "intakes" and potential witnesses with information about the lawsuit, answered questions about the lawsuit, and tracked individuals' interest and willingness in participating in the case, including acting as witnesses (*e.g.*, by serving as declarants and potential deponents).

32. **Written discovery and document review**. After reviewing available documents and having extensive discussions with the named Plaintiffs, potential class members and potential witnesses about what information might be relevant to the prosecution of the claims in the case, and following the April 19, 2006 conference pursuant to Rule 26 of the Federal Rules of Civil Procedure, Plaintiffs' counsel served a set of document requests on IBM. This was followed by numerous discussions and ongoing negotiations between Plaintiffs' counsel and IBM regarding the entry of a protective order, the nature and types of the responsive documents which IBM possessed, the types of documents IBM would produce on an expedited basis to facilitate mediation, and a timetable for IBM to produce different categories of documents. These efforts were followed by a rolling production of documents by IBM (responding to Plaintiffs' 67 requests for production of documents), which was accompanied by numerous and ongoing telephonic and email meet and confer discussions between the parties relating to the sufficiency of IBM's productions, additional documents and related information Plaintiffs required, and document production scope, timing and format issues. This work also included informal discovery conducted through telephone and email conversations between Plaintiffs' counsel and IBM in which Plaintiffs discovered information necessary to interpret and understand the documents IBM was producing, and to identify additional required information and documents. In addition, Plaintiffs' counsel prepared Plaintiffs' initial disclosures under Rule 26, and filed Plaintiffs' Initial Disclosure Statement Pursuant to Fed. R. Civ. P. 26(a) on May 3, 2006.

33. To manage the document production and ensure comprehensive, high-quality document review, Plaintiffs' counsel worked extensively with a document management vendor to set up an efficient and powerful electronic document storage system and database which would allow plaintiffs to store all defendant- and plaintiff-produced documents (as well as depositions and pleadings) in electronic and searchable and sortable format, code the documents for subject

DECLARATION OF STEVEN G. ZIEFF IN SUPPORT OF MOTION FOR ORDER CONDITIONALLY CERTIFYING SETTLEMENT CLASSES; PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT, CV 06-00430 PJH

- 12 -

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

matter, relevance and particular issues, and share all documents and coding information in the database among all of the Plaintiffs' firms. Attorneys and paralegals from several of the Plaintiffs' law firms participated in training with the document management vendor relating to the database's available tools, functionalities, and basic operational instructions. Several attorneys collaborated together to work with the vendor to set up the specific database functionalities and document categories so that documents could be organized, reviewed and coded in as efficient and useful manner as possible. Several of Plaintiffs' attorneys also collaborated to develop a document organizational and coding system (and coding form) carefully tailored to the issues and facts in the case. Plaintiffs' counsel also worked with paralegals to create an extensive document index before the electronic document database was fully operational.

34. Ultimately, Plaintiffs' counsel received and reviewed tens of thousands of pages of documents produced by IBM, as well as a substantial amount of documents in the named Plaintiffs' possession. These documents include, but are not limited to, documents relating to Plaintiffs' and proposed class members' job duties, assignments, specific job activities and responsibilities, job descriptions, Plaintiff and proposed class member work emails and other work correspondence, IBM job classification manuals and related documents, documents relating to IBM's exempt/non-exempt classification reviews, decisions and processes (including memos, emails, reports and other presentations), IBM corporate organizational documents, ERISA plan summaries and master documents, and named Plaintiff and FLSA opt-in personnel file documents. In addition, Plaintiffs' counsel even more intensively reviewed hundreds of documents to prepare for the named Plaintiffs' depositions, to produce named Plaintiff documents requested by IBM, to prepare for the Rule 30(b)(6) depositions in the case, and to identify specific documents to be used as exhibits at the Rule 30(b)(6) depositions.

35. Plaintiffs' counsel also spent many hours preparing and coordinating responses and reviewing, organizing and producing documents in response to IBM's request for the production of documents by each of the named Plaintiffs, Rosenburg, Baxter, Kennedy, Mattson, Park, and Topacio. Plaintiffs' counsel spent additional, substantial hours coordinating and

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1    preparing objections and answers to IBM's interrogatories, which were propounded to each of the

2    named Plaintiffs individually.  As in the case of Plaintiffs' written discovery requests, Plaintiffs'

3    attorneys engaged in meet and confer discussions with IBM's counsel relating to IBM's written

4    discovery.

5            36.    **Rule 30(b)(6) Depositions**.  Plaintiffs served a Rule 30(b)(6) deposition notice on

6    IBM on or about June 13, 2006 identifying a broad range of the class certification, liability,

7    affirmative defense, and damage issues in the case.  Once it was determined that the parties

8    would participate in a mediation, Plaintiffs' counsel engaged in numerous written and oral meet

9    and confer discussions with IBM about Rule 30(b)(6) topics to be prioritized for the mediation,

10   deposition witnesses and scheduling, and coordinating IBM's rolling document production

11   discussed above to correlate with the timing of the Rule 30(b)(6) depositions.  Between August

12   18, 2006 and September 1, 2006, Plaintiffs deposed five IBM designee witnesses on several of

13   Plaintiffs' noticed Rule 30(b)(6) topics.  In particular, Plaintiff deposed IBM Rule 30(b)(6)

14   witnesses on the employment and job duties of Technical Service Professionals (and jobs with

15   predecessor position titles) in job bands 6-8, IT Specialists in IBM job bands 6-8, and Staff

16   Software Engineers in job bands 6-8.  Plaintiffs also deposed an IBM Rule 30(b)(6) witness on

17   IBM's job/position/band classification structure and process, IBM job descriptions, and IBM's

18   exempt/non-exempt classification review and decision processes, including processes, reviews

19   and decisions specifically relating to the potential class job positions and job bands, as well as

20   related IBM job positions that had been reviewed and reclassified from exempt to non-exempt.

21   Several of the Plaintiffs' firms collaborated and cooperated efficiently and very productively in

22   preparing for and taking the Rule 30(b)(6) depositions, in order to ensure that necessary

23   documents were received from IBM, reviewed by Plaintiffs' attorneys, and analyzed by and for

24   the attorneys taking the depositions, and utilized during the depositions.  Plaintiffs' attorneys

25   subsequently spent many hours summarizing key deposition testimony for inclusion in Plaintiffs'

26   mediation brief, and also prepared more extensive deposition summaries for general use in the

27   litigation.

28           37.    **Plaintiff depositions**.  Between July 10, 2006 and July 18, 2006, IBM took the

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA  94104
(415) 434-9800

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1    depositions of named Plaintiffs Rosenburg, Baxter, Kennedy, Mattson, Park and Topacio.

2    Plaintiffs' counsel defended these depositions, and spent many hours with each of the deposed

3    Plaintiffs on the telephone and in person preparing for them for their depositions.  Plaintiffs'

4    attorneys subsequently prepared deposition highlight summaries for analysis of issues relating to

5    class certification and potential affirmative defense issues, and also prepared more extensive

6    deposition summaries for general use in the litigation.

7         38.    **Preparation for the Mediation and Additional Related Discovery**.  The parties

8    agreed to mediate their dispute before a neutral mediator; the San Francisco firm of Gregorio,

9    Haldeman, Piazza, Rotman & Matityahu.  In connection with this agreement, the parties

10   negotiated, drafted and agreed to the Stipulation and Order Regarding Case Schedule, Tolling of

11   FLSA Statute of Limitations, and Potential Collective Action Member Contact Information, filed

12   May 18, 2006.  By this agreement, Plaintiffs' counsel secured IBM's agreement to toll the FLSA

13   statute of limitations pending the parties' mediation, and the parties reached agreement regarding

14   the timing of potential motions for summary judgment, for preliminary notice of the proposed

15   FLSA collective action, and for certification of Rule 23 state law classes.  After the first

16   mediation session ended without agreement, Plaintiffs' counsel negotiated and coordinated with

17   IBM's counsel to prepare and file the Modified Stipulation and Order Extending Tolling of FLSA

18   Statute of Limitations, Tolling Statutes of Limitations for Certain State Law Claims, and

19   Extending Schedule for Filing Certain Motions.

20        39.    In preparation for the mediation, Plaintiffs received from IBM a list of more than

21   48,000 former and current IBM employees who held one or more of the IBM job position/band

22   combinations which were identified in the parties' statute of limitations tolling agreement.

23   Plaintiffs' counsel sent a letter to these 48,000-plus individuals informing them generally about

24   the lawsuit and inviting them to contact Plaintiffs' counsel if they had information relating to the

25   lawsuit.  Plaintiffs' counsel had numerous discussions and meetings to develop a plan for

26   responding to the individuals who responded to the letter (the "intakes"), interviewing the

27   intakes, answering questions, and compiling, evaluating and reporting the information learned

28   from the interviews.  Plaintiffs used the information being gathered from all intakes to assess the

1    relative strengths of different types of employees' claims.  As before, Plaintiffs' counsel

2    continued to communicate with individuals on a follow-up basis to answer questions.  At all

3    times, the process of interviewing potential class members was carefully coordinated among the

4    firms and their attorneys and paralegals – *e.g.*, assignments, protocols, roles and responsibilities –

5    to ensure the work was done efficiently and without duplicated efforts.

6         40.    As part of the preparation for mediation, anticipated class/collective action

7    certification motions, and the ongoing evaluation of the strengths and weaknesses of the claims

8    and affirmative defenses in the action, Plaintiffs' counsel undertook an intensive campaign to

9    prepare potential class member declarations to support their litigation and mediation positions.

10   The declaration project was a very substantial undertaking, with attorneys and paralegals at most

11   if not all of the Plaintiffs' firms contributing work to identify potential declarants, assist

12   declarants in the drafting of their declarations, coordinate, administer and track the work flow of

13   the declaration project, and review and discuss draft declarations to ensure accuracy and quality.

14   Ultimately, Plaintiffs' counsel obtained more than seventy (70) signed declarations by the time of

15   the second mediation session on October 19, 2006, and additional draft declarations were

16   pending for numerous other potential class members.  The declaration project was coordinated

17   carefully in terms of assignments and roles among the Plaintiff firms and attorneys and

18   paralegals, thus ensuring the greatest possible degree of productivity and efficiency, and the least

19   possible amount of work duplication.

20        41.    In preparation for the mediation, IBM produced electronic employment and

21   payroll data for all 48,000-plus individuals on the list of potential class members discussed

22   above.  Plaintiffs' counsel's task was to calculate IBM's potential damages exposure using this

23   data, including the preparation of different versions of IBM's damages exposure using different

24   assumptions regarding which types of employees would be in any certified class, for what time

25   periods, subject to which wage and hour law penalties and overtime pay rate calculations, etc.

26   Plaintiffs' performed this task, utilizing the extensive assistance of a consulting expert statistical

27   firm.  Plaintiffs' counsel engaged in extensive consultations with the statistical firm, supplying

28   the instructions and background information necessary for the firm to do its work, obtaining all

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1   necessary information about the employment and payroll data from IBM and communicating it to

2   the statisticians, reviewing the statisticians' work, and coordinating and supervising the

3   presentation of what would be plaintiffs' damages analysis.  During this process, Plaintiffs'

4   counsel were required to engaged in numerous communications with IBM's attorneys relating to

5   the sufficiency and interpretation of the data, the need for additional data, and the reconciliation

6   of certain of Plaintiffs' predicate calculations with those of IBM (to ensure a productive

7   mediation).  Plaintiffs' coordinated and streamlined this work to make it efficient and avoid

8   duplication of efforts, with one firm serving as the principal contact with the statisticians in their

9   day-to-work, and other firms directing their questions and input through that firm.

10          42.      Plaintiffs' counsel researched and drafted a comprehensive mediation brief.  The

11  brief addressed all of the core legal and factual issues in the case; carefully analyzed IBM's

12  damages exposure; appended tables explicating the state wage and hour laws in several regards;

13  and appended the quantitative damages assessment prepared by plaintiffs' counsel in conjunction

14  with their statisticians.  Plaintiffs' attorneys' written presentation at the first mediation session

15  also included dozens of potential class member declarations relating to job duties and hours-

16  worked issues.  The parties exchanged mediation briefs, and their respective reviews of the

17  mediation briefs precipitated additional research, informal discovery, and discussions relating to

18  payroll data interpretation and overtime back pay calculation methodologies.

19          43.      After the first mediation session was concluded, Plaintiffs' attorneys engaged in

20  extensive discussions and informational exchanges with IBM's attorneys relating to issues

21  pertaining to the ongoing mediation – *e.g.*, continuing payroll data interpretation issues, state-law

22  back pay computation standards, Illinois punitive damages issues, and issues relating to the

23  damages exposure and settlement issues in this action relative to other major computer worker

24  overtime pay class action litigation.  In preparation for the second mediation, Plaintiffs' counsel

25  continued to identify potential class members who would be willing to prepare declarations and

26  to assist these individuals with their declarations, to the point that Plaintiffs were able to present

27  several dozen additional declarations at the second mediation session.  Also in the interim

28  between the two mediation sessions, Plaintiffs' attorneys negotiated with IBM and helped

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1   prepare the October 5, 2006 Modified Stipulation and Order Extending Tolling of FLSA Statute

2   of Limitations, Tolling Statutes of Limitations for Certain State Law Claims, and Extending

3   Schedule for Filing Certain Motions.

4         44.   **Legal Research**. From before the original complaint was filed to the present

5   time, this lawsuit has required Plaintiffs' attorneys to expend substantial amounts of time

6   conducting intensive legal research on a wide range of issues: the claims originally pleaded;

7   procedural issues relating to the nature of the class claims as including FLSA collective action,

8   ERISA and Rule 23 state law claims; federal wage and hour law; state wage and hour law

9   (including the details of the different states' remedial schemes and the substantive similarities

10   and differences between federal law and state overtime exemptions); and the issues raised by

11   IBM's motion to dismiss; issues raised by IBM's affirmative defenses (*e.g.*, federal and state-law

12   overtime exemption standards, and the effect of releases and waivers signed by some named

13   Plaintiffs and potential class members – which was extensively researched by Plaintiffs' counsel

14   under the laws of numerous states).

15         45.   Paragraphs 25 through 44 above summarize and describe the major components of

16   the work performed on behalf of the Plaintiffs in this case to date. I am familiar with this work as

17   it has been performed by all of the Plaintiffs' firms because I have participated in regular

18   telephone calls and email exchanges among the Plaintiffs' firms in which work projects and

19   assignments were developed, assigned, reviewed, and reported on. I have also reviewed or

20   otherwise observed the work product and work efforts by various attorneys working for the

21   different firms, and I have had extensive discussions with the other attorneys at my firm working

22   on the case about the work that was being performed by the different Plaintiffs' firms. Based on

23   my observations, I can state that paragraphs 25 through 43 fairly describe not only the work my

24   own firm has performed, but also the work that the other Plaintiffs' firms have performed. In

25   very summary form, the legal work performed by the various Plaintiffs' firms has included:

26   working to develop the strategy and tactics for prosecuting the claims in this case; assisting with

27   the preparation of the initial class action complaint (including consulting with co-counsel and

28   editing the complaint); preparing the opposition to IBM's motion to strike/dismiss plaintiffs'

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1   ERISA and injunctive relief claims; participating in the Rule 26(f) conference; preparing and

2   filing the stipulations between the parties; locating and contacting witnesses; interviewing more

3   than a thousand potential witnesses and class members; analyzing witness interview data;

4   reviewing and analyzing thousands of documents; compiling and analyzing data to identify the

5   scope of the class in terms of job positions and job bands; coordinating with the document

6   management vendor regarding the design and utilization of plaintiffs' document database;

7   developing a document coding form; preparing consent-to-sue forms and related documents;

8   discussing consent-to-sue forms with potentially eligible individuals; drafting declarations and

9   reviewing the declarations; preparing and conducting Rule 30(b)(6) witness depositions;

10  preparing for and defending the named plaintiff depositions; summarizing depositions; meeting

11  and conferring with IBM's attorneys regarding discovery, mediation, pleading and settlement

12  issues; attending status conferences with the Court; drafting discovery requests and responses;

13  participating in numerous Plaintiffs' counsel calls and meetings to discuss discovery, litigation

14  strategy, work coordination and assignments, and settlement and related issues; conducting

15  extensive legal research and drafting research memos; drafting correspondence; identifying

16  potential class representatives for Rule 23 state law classes; analyzing damages calculations;

17  identifying additional payroll data required from IBM; working with expert statisticians to

18  analyze IBM's payroll and employment data; drafting the amended complaints; researching and

19  drafting the mediation brief and assembling the record for the mediator; preparing for and

20  participating in two mediation sessions; reviewing settlement documents; researching federal and

21  state-law issues relating to the relevant wage and hour laws, waiver issues, and procedural issues;

22  drafting the application for preliminary approval of the settlement and related settlement

23  documents documents.  Throughout the course of the litigation, Plaintiffs' counsel have

24  coordinated the work to be done so that the necessary work would be handled as efficiently,

25  carefully and completely as possible.

26        46.   **The Mediated Settlement**.  The parties agreed in principle to certain broad terms

27  of a settlement of this matter after two days of mediation, conducted on September 13, 2006 and

28  October19, 2006 by experienced mediators David Rotman and Antonio Piazza.  Our firm, along

1    with our co-counsel, have expended many hours on the settlement negotiations, before and after

2    the mediations, including working out the terms and language of a memorandum of

3    understanding, the terms and language of the settlement agreement, the various issues relating to

4    the terms of and procedural aspects of the settlement, the terms of the release, the plan of

5    distribution under the settlement agreement, the mechanics of the settlement administration, and

6    the implementation of the settlement.  This required conferring between counsel, working with

7    experts who analyzed the payroll databases relating to the identity of putative class members and

8    their tenure, and evaluation of the various claims of proposed Settlement Class Members under

9    the federal Fair Labor Standards Act and the laws of the various states at issue in this case.  Many

10   of the Settlement Class Members are current IBM employees.

11           47.     The proposed settlement was negotiated in good faith and at arms' length and

12   achieved only after a lengthy period of time filled with multiple communications regarding every

13   term of the settlement.  These communications finally resulted in the signing of a Joint

14   Stipulation of Settlement and Release of All Claims on November 22, 2006.  A copy of that Joint

15   Stipulation of Settlement and Release of All Claims ("Settlement Agreement"), including the

16   exhibits thereto, is attached as Exhibit 1 to the proposed Preliminary Approval Order.  This

17   Settlement Agreement was reached only after extensive, arms-length negotiations by and among

18   the parties.

19           48.     As a result of the efforts that our office has undertaken, along with the efforts of

20   my associated counsel, extensive investigation and research into the claims of the settlement class

21   members has been completed.  Based on the discovery that we have performed and the

22   investigation we have undertaken and other work and research we have done, I feel confident that

23   the arms' length settlement agreement is fair, reasonable and adequate for the class members

24   based on my knowledge of recoveries in other comparable cases.  I believe this settlement to be a

25   good one for the Settlement Class Members, especially in light of fact that by settling the case,

26   the Settlement Class Members will avoid the risks and expenses of further litigation and in light

27   of the various defenses, factual contentions, and legal defenses raised by IBM.  Settlement Class

28   Members will also avoid the risk of additional expenses, such as further expert discovery,

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1    summary judgment briefing, and the costs of appeal. The sophisticated plan of allocation in

2    particular reflects the experience of plaintiffs' counsel in fashioning fair and reasonable

3    settlements. Each Class Member who does not opt out and who timely and properly completes a

4    Verification and Release Form will receive a proportionate share of the net settlement payment.

5    Plaintiffs' counsel worked very hard to negotiate a plan of distribution that fairly compensated

6    Settlement Class Members based on a variety of factors, including: the length of employment in

7    Covered Positions, the relative strength of claims brought by employees in different position

8    codes, and the fact that employees in California had a stronger argument to recover additional

9    damages under California law than would be available to employees under the FLSA or the laws

10   of other states. The use of these factors to weigh the recoveries of Settlement Class Members

11   according to relevant criteria was carefully considered and extensively negotiated. To calculate

12   the employee's share, the Claims Administrator will start with a Class Member's Base Earnings

13   ("BE"). The BE is calculated by multiplying a Class Member's weekly salary by the number of

14   weeks worked in a Class Position. The BE is then multiplied by two numeric factors: (1) a factor

15   for the Class Member's position code and job band, and (2) a factor for whether or not the Class

16   Member was employed in California. The first factor is based on Class Counsel's assessment of

17   how likely it is that different types of employees would have prevailed on their claims in court.

18   This factor takes into account that the employees with the strongest legal arguments are the

19   lowest banded employees in the Technical Services Professional position codes. Employees in

20   higher job bands and in the IT Specialist job position codes have arguably weaker claims. That

21   is, whether or not an employee satisfies the requirements of the administrative exemption to

22   overtime laws will turn on whether the employee's primary duty includes the exercise of

23   "discretion and independent judgment" with respect to "matters of significance." Whether an

24   employee satisfies the requirements of the FLSA's computer exemption will turn on whether the

25   employee in question is performing highly-specialized work on the planning, design,

26   development, and testing side of computer work. The relative strength of the lower job levels is

27   due to the evidence that individuals in the job positions and bands assigned high multipliers are

28   subject to greater oversight and procedural requirements in carrying out their core job duties than

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

DECLARATION OF STEVEN G. ZIEFF IN SUPPORT OF MOTION FOR ORDER CONDITIONALLY CERTIFYING SETTLEMENT CLASSES; PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT, CV 06-00430 PJH

- 21 -

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1   those in the job positions and bands assigned lower multipliers. Based on a thorough analysis of

2   the legal and factual record, the Job Position/Job Code Factors above represent a fair and

3   equitable apportionment of the Net Settlement Fund. The second multiplier, a multiplier of three

4   given to employees who worked in California is a mechanism whereby California employees,

5   who had stronger arguments to recover higher overtime premium payments and other damages,

6   receive a larger share of the Net Settlement Fund than their out-of-state counterparts. To begin

7   with, California's wage and hour laws are more likely to result in a finding of liability against

8   IBM. That is, California's "administrative" exemption is even narrower than the FLSA's (Cal.

9   Lab. Code § 515; Cal. Code Regs., tit. 8, §§ 11010-11040), and IBM has a high burden to show

10   that plaintiffs plainly qualify for California's "computer software field employee" exemption.

11   *See* Cal. Lab. Code § 515.5 (employee must be in the "computer software field" and must be

12   "highly skilled and . . . proficient in the theoretical and practical application of highly specialized

13   information to computer systems analysis, programming, and software engineering"). Also, the

14   California exemption imposes high salary and effective hourly rate requirements that are difficult

15   to satisfy (at least when overtime hours are factored in, which markedly lower the effective

16   hourly rates Plaintiffs have been receiving). *Id.* Moreover, the damages available to wrongly

17   classified California workers are substantially greater than those available under the FLSA or the

18   laws of most other states. For example, in California an employer is liable for waiting time

19   penalties when an employee is severed from employment and wages that have been earned,

20   including overtime wages, are not timely paid. Cal. Labor Code §§ 201-203. Penalty wages

21   accrue based on the employee's daily wage for each day that they are due for a maximum of 30

22   working days. Cal. Labor Code § 203. The California Labor Code also requires written itemized

23   wage statements showing gross wages earned, all deductions, and net wages earned. Cal. Labor

24   Code § 226(a): 8 Cal. Code Regs. § 11010. An employer that knowingly and intentionally

25   violates Section 226(a) is liable to an employee for the greater of actual damages or $50 for the

26   initial pay period in which the violation occurred and then $100 per employee for a violation in

27   each subsequent pay period, not to exceed an aggregate penalty of $4,000. Employers violating

28   California's meal-break requirements are further liable for an additional hour of wages at the

1   regular rate for each day in which meal periods were not provided. Cal. Labor Code § 226.7. All

2   of the above-described factors relating to liability under California wage and hour law and the

3   damages available upon a finding of liability are reflected in this Multiplier.

4        49.    Due to the accuracy of IBM's records and the obligations imposed on the Claims

5   Administrator by the Settlement Stipulation, the parties do not envision the need for local

6   newspaper advertisements or regional or national publications. However, under the terms of the

7   proposed settlement, there is substantial work remaining to be done by Plaintiffs' counsel to carry

8   out and implement the terms of the agreement. In addition to drafting all final approval pleadings

9   and filings, and appearing at the final approval hearing, Plaintiffs' counsel will have to

10  supervise the Claims Administrator to make certain that the administration of the agreement is

11  proper. Plaintiffs' counsel will be involved in fielding telephone calls from Class Members and

12  answering questions concerning Class Members. In addition, Plaintiffs' counsel will spend time

13  reviewing the Claims Administrator's calculations concerning the specific distributions to Class

14  Members and ensuring that the agreement is properly implemented and administered consistent

15  with the underlying purposes of the settlement agreement in this case.

16      I declare, under penalty of perjury, under the laws of the State of California that the

17  foregoing is true and correct. Executed this 22 day of November, 2006 at San Francisco,

18  California.

19

20  *Steven G. Zieff*

    STEVEN G. ZIEFF

21

22  **ATTORNEYS FOR PLAINTIFFS**

23  Steven G. Zieff (SBN: 84222)
    Kenneth J. Sugarman (SBN: 195059)

24  RUDY, EXELROD & ZIEFF, LLP
    351 California Street, Suite 700

25  San Francisco, CA 94104
    Telephone: (415) 434-9800

26  Facsimile: (415) 434-0513
    Email: sgz@reztlaw.com

27  Email: kjs@reztlaw.com

28

James M. Finberg (SBN 114850)
Eve H. Cervantez (SBN 164709)
Jahan C. Sagafi (SBN 224887)
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: jfinberg@lchb.com
Email: ecervantez@lchb.com
Email: jsagafi@lchb.com

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

Todd F. Jackson (SBN 202598)
Claire Kennedy-Wilkins (SBN 231897)
Lindsay E. Nako (SBN 239090)
LEWIS FEINBERG RENAKER &
  JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA 94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
Email: tjackson@lewisfeinberg.com
Email: ckwilkins@lewisfeinberg.com
Email: lnako@lewisfeinberg.com

David Borgen (SBN 99354)
Roberta L. Steele (SBN 188198)
Jeanna C. Steele (SBN 237390)
GOLDSTEIN, DEMCHAK, BALLER,
BORGEN & DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Telephone: (510) 763-9800
Facsimile: (510) 835-1417
Email: borgen@gdblegal.com
Email: rsteele@gdblegal.com
Email: jsteele@gdblegal.com

J. Derek Braziel (00793380 [TX])
LEE & BRAZIEL, LLP
208 N. Market Street
Dallas, TX 75202
Telephone: (214) 749-1400
Facsimile: (214) 749-1010
Email: jdbraziel@l-b-law.com

Richard Burch (24001807 [TX])
BRUCKNER BURCH, PLLC
5847 San Felipe, Suite 3900
Houston, TX 77057
Telephone: (713) 877-8788
Facsimile: (713) 877-8065
Email: rburch@brucknerburch.com

Rachel Geman (RG 0998 [NY])
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
Email: rgeman@lchb.com

Ira Spiro (SBN 67641)
Gregory N. Karasik (SBN 115834)
SPIRO MOSS BARNESS HARRISON
&
  BARGE, LLP
11377 W. Olympic Blvd., Fl. 5
Los Angeles, CA 90064-1625
Telephone: (310) 235-2468
Facsimile: (310) 235-2456
Email: ispiro@smbhblaw.com
Email: gkarasik@smbhblaw.com

Adam T. Klein (AK 3293 [NY])
Justin M. Swartz (JS 7989 [NY])
Piper Hoffman (PH 4990 [NY])
OUTTEN & GOLDEN, LLP
3 Park Ave., 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005
Email: atk@outtengolden.com
Email: jms@outtengolden.com
Email: ph@outtengolden.com

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 1

## STEVEN G. ZIEFF

RUDY, EXELROD & ZIEFF, L.L.P.
351 California St., Suite 700
San Francisco, CA 94104
(415) 434-9800

**EMPLOYMENT**

### RUDY, EXELROD & ZIEFF, L.L.P.
351 California St., Suite 700
San Francisco, CA 94104; Telephone: (415) 434-9800

Partner in law firm with a general civil practice emphasizing
Plaintiffs' employment matters.  Handles full array of civil
litigation including trials, arbitrations, negotiations, mediations,
class actions and other legal proceedings in state and federal
courts.  Specializes in class actions, wage and hour law matters,
wrongful discharge, and employment discrimination.

### RUDY & ZIEFF
San Francisco, California
1989-1995

Partner in law firm with general civil practice emphasizing
Plaintiff's employment litigation.  Successful representation of
individuals and groups in state and federal litigation, trials,
arbitrations and other legal proceedings.

### LAW OFFICES OF MARK S. RUDY
San Francisco, California
1986-1989

Associate in civil law practice emphasizing Plaintiffs' employment
litigation.

### SENIOR ADVOCATES/LEGAL AID SOCIETY OF SAN MATEO COUNTY
Redwood City, California
1981-1986

Supervised attorneys in Senior Advocates Unit.  Lead counsel in
federal and state court cases, including class actions, involving
prisoners' rights, federal housing claims, unfair business practices,
civil rights and constitutional law.  Representation of litigants in
consumer fraud cases, contract disputes, quiet title actions,

conservatorships and real property matters.  Obtained Order from the Honorable Spencer Williams requiring H.U.D. to promulgate lawful regulations pertaining to federal housing for the elderly. Co-counsel in successful trial and appeal of <u>Keyhea v. Rushen</u>, in which California Court of Appeal upheld prisoners' right to refuse forced medication, absent judicial protections.

REGINALD HEBER SMITH FELLOW

August 1979 - August 1981

Staff attorney at Solano County Legal Assistance, Vallejo, California, involved in representation of community organizations and individuals in federal and state court civil litigation, with emphasis on law reform matters.

PRIVATE PRACTICE

Oakland and Richmond, California
1978 - 1979

Civil and criminal litigation on a contract and court-appointed basis.

LEGAL AID SOCIETY OF ALAMEDA COUNTY

Oakland, California
February 1976 - May 1978
Student Law Clerk

VISTA VOLUNTEER

Legal Aid Society of Metropolitan Denver
Denver, Colorado
October 1974 - July 1975
Paralegal involved in legislative and administrative advocacy.

**BAR ADMISSIONS**    1978 California and United States District Court, Northern District of California;
1982 United States District Court, Eastern District of California;
1984 United States District Court of Appeals for Ninth Circuit;
1990 United States District Court for Central District of California.

| | |
|---|---|
| **EDUCATION** | BOALT HALL SCHOOL OF LAW<br>University of California at Berkeley<br>J.D., 1978 |

One of three Interns at the International Commission of Jurists in Geneva, Switzerland, August - December 1977.

Authored commentary: United Nations Sub-Commission on Discrimination and Minorities, 19 The Review 23 (1977).

BROWN UNIVERSITY
Providence, Rhode Island
A.B., with Honors, Public Policy making, 1974

National Merit Commended Scholar, 1970.
Brown Club of Boston Scholar, 1970.

**PROFESSIONAL ACTIVITIES**

Extensive lecturing and writing on employment law matters. Presented numerous talks on employment law matters at seminars and conferences including those sponsored by: The American Bar Association, National Employment Lawyers Association, California Employment Lawyers Association, Plaintiff's Employment Lawyers Association, The Rutter Group/California Judge's Association, San Francisco Trial Lawyers Association, American Trial Lawyers Association, San Francisco Bar Association, the California State Bar's Section on Labor and Employment, and Continuing Education of the Bar (CEB). Fellow of the College of Labor and Employment Law

**CLAY AWARD**

California Lawyer Attorneys of the Year Award for 2001 - One of 26 California Lawyers chosen whose "achievements in 2001 shaped the law, the profession, or the way the law affects industry or the public."

3

## SUMMARY OF SIGNIFICANT CASES

**ADDVENSKY V. CORPORATE EXPRESS DELIVERY SYSTEMS, INC**.
(Case No. 720794, San Diego County Superior Court)  $9.75 million settlement on behalf of same-day delivery drivers raising claims for failure to pay minimum wage, failure to pay overtime and failure to reimburse necessary business expenses.

**BELL V. FARMERS INSURANCE EXCHANGE**, (Case No. 774013-0, Alameda County Superior Court)  Jury verdict on July 10, 2001 for over $90 million in damages phase of overtime class action against Farmers Insurance Exchange brought on behalf of personal lines claims adjusters.  Obtained judgment in excess of $124 million including maximum prejudgment interest.

**KERR v. SNAP-ON, INC.**, (Case No. CV-758116, Santa Clara County Superior Court)  I was lead counsel in this class arbitration challenging Snap-on's failure to reimburse over 300 class members for their necessarily incurred employment expenses.  The trial court certified the case for class arbitration before the American Arbitration Association.  Subsequently, after rulings holding that Snap-on's policies violated Labor Code § 2802, the case settled for $8,400,000.00.

**PIERCE v. SPX CORPORATION**, (Case No. H194779-3, Alameda County Superior Court)
I was lead counsel in this class action brought under Labor Code § 2802 and Business and Professions Code § 17200 seeking reimbursement for employment expenses of about 275 class members resulting in settlement of $1,500,000.00.

**BREAUX v. AGENCY RENT-A-CAR, INC.** (No. C-92-2717 WHO N.D. Cal.)
I was lead trial counsel in a wage and hour class action seeking to challenge Agency Rent-A-Car's wage and hour practices, including their failure to pay overtime to employees in its field offices.  In this case, we successfully moved for class certification, and summary judgment.  Thereafter, we successfully tried the case and obtained an order determining liability against Defendant.  Following extensive Stage II proceedings, the case settled for over $8,000,000.00.

**STEPHENS v. COLDWELL BANK COMMERCIAL GROUP** (1988)
(199 Cal.App.3d 1394)
Obtained opinion from the Court of Appeal affirming jury verdict for compensatory and punitive damages in age discrimination case brought under the California Fair Employment and Housing Act.

**BIRKLAND v. ROTARY PLAZA**, (No. C-84-2026-SW N.D. Cal.)
I was lead counsel successfully challenging HUD's mandatory meal policy pertaining to federally subsidized housing for the elderly.  In this case, I obtained summary judgment declaring HUD's mandatory meal policy void as violative of

4

the Freedom of Information Act and the Administrative Procedure Act, and requiring HUD to promulgate new regulations. I also obtained a substantial award of attorney's fees pursuant to the Freedom of Information Act and the Equal Access to Justice Act.

**KEYHEA v. RUSHEN**, (1986) 178 Cal.App.3d 526.

I was co-counsel in this prison litigation where the Superior Court of Solano County held that the California Department of Corrections' forced drugging practices violated Penal Code §2600. The trial court enjoined the Department from subjecting prisoners to long-term forced medication unless and until inmates were accorded a judicial hearing regarding competency and other rights set forth in the Lanterman-Petris-Short Act. I handled this case through extensive discovery, trial, and the successful appellate proceedings.

**BERRY v. SOLANO COUNTY SHERIFF'S DEPARTMENT**, (No. CIV S-81-116-PCW E.D.Cal.)

I was lead counsel in this class action which challenged the denial of Solano County jail inmates' constitutional right of access to the courts. After successfully moving for class certification and summary judgment, I secured a judgment requiring the Sheriff's Department to establish and maintain a law library for jail inmates and providing for the payment of the plaintiffs' attorney's fees pursuant to 42 U.S.C. §1988.

**PORTER v. HOUSING AUTHORITY OF SAN MATEO COUNTY**, (No. C-81-3726-THE N.D. Cal.)

I represented tenants raising claims under federal housing statutes and the U.S. Constitution in this class action against the San Mateo Housing Authority and property owners participating in the federally subsidized housing program for low income persons, known as the Section 8 Housing Assistance Program. The Court issued a preliminary injunction which provided federally subsidized tenants with substantive and procedural protections against evictions and awarded attorneys' fees under the U.S.C. §1988.

Exhibit 2

## LEWIS, FEINBERG, RENAKER & JACKSON, P.C.
## LITIGATION

The firm and its predecessors have specialized in employment law litigation since 1975. The firm's legal work involves a broad spectrum of employment law issues, including a focus on wage and hour litigation and ERISA litigation. **Lewis, Feinberg, Renaker & Jackson, P.C.** represents or has represented classes of workers and individual clients in California, Oregon, Washington, Pennsylvania, Utah, Hawaii, Texas, Georgia, Connecticut, Colorado, the District of Columbia, Kentucky, West Virginia, New York, Delaware, North Carolina, South Carolina, Michigan, Illinois, New Mexico, Colorado, and Maryland. The firm has argued or participated in numerous significant wage and hour and Employment Retirement Income Security Act ("ERISA") cases before courts throughout the United States, including the U.S. Supreme Court and several Circuit Courts of Appeal.

The following list includes a sampling of wage and hour cases litigated by Lewis, Feinberg, Renaker & Jackson, P.C.:

*Giannetto v. Computer Sciences Corporation*, 03-CV-8201 GPS (C.D. Cal.). Served as co-lead counsel for a putative class of technology workers claiming that they had been improperly classified as exempt under the Fair Labor Standards Act ("FLSA") and state overtime laws of 13 states. On July 15, 2005, the Court granted final approval for a settlement for a class of technology workers for $24,000,000.

*In Re: Farmers Insurance Exchange Claims Representatives Overtime Pay Litigation*, MDL Docket No. 1439 (D. Or.). Served as co-trial counsel during liability trial in 2003, after which the Court ruled on behalf of plaintiffs. In 2004 and 2005, tried the damages phase along with co-counsel. On January 27, 2005, a judgment was entered on behalf of the Minnesota class in the amount of $3,933,068.66. On May 2, 2005, a judgment was entered on behalf of the FLSA collective action members, and the Illinois, New Mexico, Colorado, Washington, Oregon, and Michigan classes in the amount of $48,565,320.54. On October 27, 2006, a three-judge panel of the Ninth Circuit affirmed in part, reversed in part, and remanded to the District Court. In re Farmers Ins. Group Claims Reps. Overtime Litigation, ___ F.3d ____, 2006 U.S. App. LEXIS 26671 (9th Cir. 2006).

*Trotter v. Perdue Farms Inc.*, Case No. 99-893 (D.DE). Served as co-counsel for a class of chicken production workers claiming that they had not been paid for the time it took to don and doff safety equipment. Settled for $10,000,000 in 2002.

*Shoars v. Providian Bancorp Services, et al.*, Case No. C 02-3631 (N.D. Cal.). Served as co-lead counsel for a class of bank workers who claimed that they were wrongfully deprived of vested vacation pay. Settled for $5,700,000 in 2004.

*Sequeira, et al., v. CKE Restaurants, Inc.*, Case No. 03-3970 (C.D. Cal.). Served as co-lead counsel for a putative class of fast food chain workers who alleged that they were wrongfully deprived of vested vacation pay. Settled for $1,500,000 in 2005.

*Senior v. Adecco*, Case No. CGC 04-431031 (San Francisco Sup. Ct.) and *Hyatt v. Adecco*, Case No. RG05198979 (Alameda Sup. Ct.). Served as co-lead counsel for a putative class of workers employed by temp company who alleged that they were wrongfully deprived of vested vacation pay. Settled for $3,800,000 in 2005.

*Cevallos v. Sodexho*, Case No. R606268867 (Alameda Sup. Ct) Served as co-lead counsel for a putative class of workers who alleged that they were wrongfully deprived of vested vacation pay.

Settled for $1,900,000 in 2006.

*Airoldi v. Gottschalks, Inc.*, Case No. 154421 (Santa Cruz Sup. Ct.). Served as co-lead counsel for a putative class of department store employees who alleged they were wrongfully deprived of vested vacation pay. Settled for 1,800,000 in 2006.

The following list includes a sampling of ERISA cases successfully litigated by Lewis, Feinberg, Renaker & Jackson, P.C.:

*Horn v. McQueen*, 215 F. Supp. 867 (W.D. Ky. 2002). Served as trial counsel for a group of pensioners who had wrongfully overpaid for employer stock as part of an Employee Stock Ownership Plan. After finding the defendants liable after a multi-week liability trial in 2001 and 2002, the Court entered judgment on behalf of plaintiffs in excess of $20 million in 2004, subsequent to extensive briefing and expert testimony regarding the scope of the loss the plaintiffs.

*In re Worldcom, Inc. ERISA Litigation* (U.S. District Court, S.D.N.Y., Master File No. 02 Civ. 4816 (DLC)). Jeffrey Lewis served as one of the two Steering Committee members for this litigation, and was appointed specifically to advise Lead Counsel on ERISA issues. In 2004, the United States District Court for the Southern District of New York approved a partial settlement of a nationwide class action lawsuit on behalf of participants in WorldCom's 401(k) plan. Under the terms of the settlement, more than $47 million was paid by the settling defendants. The Court also approved settlements with the remaining defendants. In March 2002, even before the bankruptcy of WorldCom, LFRJ, along with co-counsel, filed the first ERISA class action lawsuit against fiduciaries of the plan, and then obtained a significant decision from the United States District Court for the Northern District of California rejecting a motion to dismiss the case. *See* 2002 WL 316440557, 29 Employee Benefits Cases (BNA) 1368 (N.D.Cal. 2002).

*In re Masters, Mates & Pilots Pension Plan and IRAP Litigation* (U.S. District Court, S.D.N.Y., Lead File No. 85 Civ. 9545 VLB). Plaintiffs' counsel in two certified class actions arising out of two employee benefit plans' losses of tens of millions of dollars in investments. Settlements of clients' fiduciary breach claims against plan trustees and former investment manager, and of malpractice claims against former plan counsel, together with settlements of consolidated cases (involving former trustee for plans and former plan auditor) resulted in the restoration of over $20 million to the plans. One portion of case reported *sub nom Beck v. Levering*, 947 F.2d 639 (2d Cir. 1991), *cert. denied*, 112 S. Ct. 1037 (1992).

*Mertens v. Hewitt Associates*, 113 S. Ct. 2063 (1993). Counsel for class of former plan participants in action arising out of underfunding of retirement plan upon termination. Case clarified the remedies available against non-fiduciaries under ERISA, and has been influential in delineating scope of ERISA remedies more generally. Following the Supreme Court decision, alternative state law claims against the defendant actuarial consulting firm settled successfully in U.S. District Court, along with companion case against plan fiduciaries. See *Mertens v. Kaiser Steel Retirement Plan*, 829 F. Supp. 1158 (N.D.Cal. 1992) (state law claims not preempted by ERISA); *Mertens v. Black*, 948 F.2d 1105 (9th Cir. 1991) (claims against fiduciaries not precluded by res judicata or collateral estoppel).

*Kayes et al. v. Pacific Lumber Co., et al.*, 51 F.3d 1449 (9th Cir. 1995). Counsel for class of retirees and employees of Pacific Lumber Company. Complaint alleged that defendants' selection of Executive Life Insurance Company to provide annuities to pension plan participants (upon termination of the plan) violated ERISA's fiduciary standards. Ninth Circuit U.S. Court of Appeals decision upheld

plaintiffs' standing to pursue the claims, affirmed lower court finding that defendant corporate officers were fiduciaries, broadly defined term "plan asset" for purposes of ERISA's prohibited transaction provisions, and affirmed rights to proceed on class action basis and to seek interim attorneys' fees in ERISA cases. On remand, case settled for $7 million.

*Patelski v. The Boeing Corp.*, Lead File No. 01 Civ. 7159 GBD (S.D.N.Y.). The firm served as one of plaintiff's counsel in a certified class action seeking to force defendants to fully or partially terminate a VEBA Trust established to pay retiree medical premiums and to distribute funds to retirees and their surviving spouses. Pursuant to a settlement in 2003, the Trust was terminated and tens of millions of dollars were paid out to the class.

*Turpin v. Consolidated Coal Co.*, No. 99-1886 (W.D. Pa.): On January 10, 2005, the court certified the firm as co-counsel for the class an ERISA class action in which plaintiffs are challenging the use of standardized "Explanation of Benefits" forms by a major insurer and administrator of ERISA-covered health insurance plans. The court previously ruled that the defendant's use of such computerized forms sent to plaintiffs violated ERISA regulations. The Court recently preliminarily approved a settlement of the case pursuant to which defendant Highmark, Inc. (d/b/a as Blue Shield of Pennsylvania) will make major revisions to its claims processing systems.

*In re: Capital Consultants, LLC Litigation* (U.S. District Court, D Ore., No.CV 00-1290-KI). Lead counsel in four related class actions arising out of the largest pension investment fraud in U.S. history. Settlements with plan trustees and service providers resulted in the restoration of over $12 million to the plans.

*Bell v. Exec. Comm. of the UFCW Pension Plan for Employees*, 191 F.Supp.2d 10 (D.D.C. 2002). Lead counsel in class action arising out of pension fund hedge program. Settlements with plan trustees, investment manager and investment advisor resulted in the restoration of $10 million to the plan.

*Lee v. California Butchers' Pension Trust Fund*, 154 F.3d 1075 (9th Cir. 1998). Counsel for retiree in suit for increased pension benefits. Summary judgment for plaintiff upheld by Ninth Circuit, which held that Age Discrimination in Employment Act applied to pension trust fund, pensioner was not required to exhaust administrative remedies where plan violated its own rules and ERISA requirements, and pensioner was entitled to higher benefits and to attorneys' fees.

*Burrey v. Pacific Gas & Electric Co.*, 159 F.3d 388, 22 EBC 1887 (9th Cir. 1998). Counsel for group of employees excluded from benefit plans as "leased employees." Ninth Circuit reversed summary judgment for employer and remanded to district court for consideration of evidence that plaintiffs were common-law employees.

*Mongeluzo v. Baxter Travenol Long Term Disability Plan*, 46 F.3d. 938 (9th Cir. 1995). Ninth Circuit decision clarified scope of evidence admissible in ERISA benefit claim cases. Summary judgment against client reversed.

*Felts v. Masonry Welfare Trust Fund, et al.* (U.S. District Court, Oregon, No. 80-746). Complaint alleged that trustees of a pension plan and a health and welfare plan breached their fiduciary duties by engaging in self-dealing and other prohibited transactions and mismanaging plan assets in violation of ERISA's fiduciary standards. Settlement required that defendants reimburse trusts, amend

-3-

governing plan instruments to provide future safeguards, and pay attorneys' fees and costs.  (Case discussed at 3 EBC (BNA Employee Benefits Cases) 2490.)

> *Dodson, et al. v. Lone Star Technologies, Inc., et al.* (U.S. District Court, N.D. Tex., No. 3-91 CV 2574 T).  Counsel for class of retirees and employees of Lone Star Technologies.  Complaint alleged that defendants' selection of Executive Life Insurance Company to provide annuities to pension plan participants (upon termination of the plan) violated ERISA's fiduciary standards.  Case settled for approximately $1.5 million.

> *Thirtyacre v. James River Corporation of Nevada, et al.* (U.S. District Court, N.D. Cal., No. C-91-0217 CAL).  Counsel for certified class of former employees of James River Corporation in action for increased benefits under a retirement plan.  Settlement provided for cash payments to former employees.

> *Rummel, et al. v. Consolidated Freightways, Inc., et al.* (U.S. District Court, N.D. Cal., No. C-91-4168 DLJ).  Counsel for plaintiff class in class action alleging wrongful diversion of assets of Emery Air Freight Corporation Employee Stock Ownership Plan after purchase of Emery Air Freight by Consolidated Freightways.  Class members received cash payments through settlement.

**Other Recent Significant Reported Decisions include the following:**

*Dobson v. Hartford Financial Services Group, Inc.*, 389 F. 3d 386 (2d Cir. 2004)
*Tatum v. RJR*, 392 F.3d 636 (4th Cir. 2004)
*Abatie v. Alta Health & Life Ins. Co.*, 458 F. 3d 955 (9th Cir. 2006) (en banc)
*McMunn, et al. v. Pirelli Tire, LLC, et al.*, 161 F. Supp. 2d 97 (D. Conn. 2001).

# DAVID BORGEN
## GOLDSTEIN, DEMCHAK, BALLER, BORGEN & DARDARIAN
### 300 Lakeside Drive, Suite 1000
### Oakland, CA  94612
### (510)  763-9800
### (510)  835-1417
### borgen@gdblegal.com
### www.gdblegal.com

David Borgen is a partner with Goldstein, Demchak, Baller, Borgen & Dardarian, an eleven attorney law firm located in Oakland, California, which represents plaintiffs and employees in complex and class action litigation, including employment discrimination, wage and hour, environmental, consumer and other public interest class actions and attorneys' fees litigation.  The law firm, formerly Saperstein, Goldstein, Demchak & Baller, was founded in 1972 and has a national practice.  Goldstein, Demchak has litigated class action lawsuits in Texas, New York, Florida, Georgia, Missouri, Washington, Michigan, Maryland, and Minnesota, as well as California, including the class action on behalf of women who were denied or deterred from positions as State Farm insurance sales agents, Kraszewski v. State Farm General Ins. Co., 30 FEP 197 (N.D.Cal. 1985), and the retail store gender discrimination class action, Butler, et al. v. Home Depot, Inc., 70 FEP 51 (N.D.Cal. 1996) (class action on behalf of women employees in and applicants to Home Depot Stores in its Western Division).  He was lead counsel in Harrison v. Enterprise Rent-A-Car, 1998 WL 422169 (M.D. Fla. 1998) (certified as a nationwide FLSA collective action) and numerous state wage and hour class actions brought under California law.  He is a Fellow of the College of Labor and Employment Lawyers, a national honorary society.  He is the Associate Editor of the Cumulative Supplement to the BNA Fair Labor Standards Act treatise and Co-Chair of the ABA's Federal Labor Standards Legislation Committee.  He is also a Senior Editor of the BNA treatise Wage and Hour Laws:  A State by State Survey (2005).  He is a graduate of University of California – Hastings College of the Law (1981) (Order of the Coif).  Prior to joining the Goldstein firm, he was counsel for the Communications Workers of American, AFL-CIO.

## BAR MEMBERSHIP

State Bar of California (Since December 1981)
United States District Courts for Northern, Central, and Eastern Districts of California
United States Court of Appeal for the Ninth and Eleventh Circuits

## LITIGATION EXPERIENCE
(partial listing)

Rosenberg v. IBM, No. 06-00430 PJH (N.D. Cal.) (Co-Counsel for putative nationwide FLSA and multi-state class of technical services workers), filed January 24, 2006.

Levy v. Verizon Information Services, Inc., No. 06-CV-1583 (NG) (SMG) (E.D.N.Y. (Co-Counsel for putative multi-state class of "yellow book" sales personnel), filed April 6, 2006.

Pearman v. California State Automobile Association (CSAA), No. R05227458 (Superior Court, Alameda County) (Co-lead counsel for multistate class and collective action for overtime pay for insurance sales agents; final approval granted on January 24, 2006, for $11,230,000 million settlement).

Grazier v. Walgreens Co., No. RG05-0228473 (Superior Court, Alameda County) (Co-lead counsel for "MGT Assistant Managers" seeking relief for missed meal periods under state law; final approval granted on November 14, 2005, for $3,800,000 class settlement).

Nitzberg v. Citicorp, No. 604423-06 (Supreme Court, New York) (Co-Counsel for putative class of investment brokers).

Zheng v. Siebel Systems, Inc., No. CIV 435601 (Superior Court, San Mateo County) (Counsel with Dickson-Ross LLP for software engineers seeking overtime pay; class certified on October 12, 2005).

Dunwiddie, et al. v. Central Locating Services, No. 5:04-CV-315-OC-106 (M.D. Fla.) (Co-counsel in certified nation-wide collective action under FLSA and in related actions in New York and Washington; global settlement in excess of $8 million in 2006).

Bullock v. Automobile Club of Southern California, No. SACV01-731GLT, 2002 WL 432003 (C.D. Cal.) (Lead counsel in FLSA collective action certified for over 500 opt-in Sales Agent plaintiffs and settled in conjunction with Rule 23 class for a total of 1,300 claims in the amount of $19.5 million; final approval granted December 6, 2004).

Angione v. PSS World Medical, Inc., No. 3:02-CV-854-J-25TJC (M.D. Fla.) (Co-lead counsel; nationwide FLSA collective action notice ordered February 21, 2003; final approval of $3 million settlement ordered on November 5, 2004).

Ramirez v. Labor Ready, Inc., No. 836186-2, 2002 WL 1997037 (Superior Court, Alameda County) (Lead counsel for class of 300,000 temporary day laborers seeking unpaid wages and reimbursement of expenses; certified on July 12, 2002; final approval of $1.9 million class settlement granted on August 2, 2004).

Cowan v. GEICO, No. GIC 810166 (Superior Court, San Diego County) (Co-lead counsel for proposed class of over 3,000 telephone center workers seeking overtime pay; filed May 5, 2003; final approval of $3.3 million settlement granted on July 9, 2004).

Marroquin v. Bed Bath & Beyond of California, No. RG04145918 (Superior Court, Alameda County) (Lead counsel for statewide class of salaried department managers; final approval of $2,980,000 settlement granted on June 22, 2004).

Mitchell v. Metropolitan Life Ins. Co., No. 01-CIV-2112 (WHP) (S.D.N.Y.) (Co-lead counsel for nationwide class of 3,600 female insurance sales agents and managers; final approval of $13.4 million class settlement granted on November 6, 2003).

Miskell v. Automobile Club of Southern California, No. 01CC09035 (Superior Court, Orange County) (Co-lead counsel in class action stating overtime claims for insurance claims adjusters; final approval granted in May 2003 for $2.5 million settlement).

Thomas v. CSAA, No. CH217752-0 (Superior Court, Alameda County) (Class counsel for class of 1200 insurance claims adjusters; final approval of $8 million settlement for overtime claims, granted in May 2002).

Weddle v. Frito-Lay, Inc., No. C 99-05272 PJH (N.D. Cal.) (Co-lead counsel in litigation seeking class relief statewide for overtime claims; final approval of $11.9 million class settlement granted February 2001).

D'Imperio v. Nation's Foodservice, Inc., No. C-00309 PJH (N.D. Cal.) (Lead counsel in overtime class action for 90 restaurant managers; final approval granted in 2001 to $950,000 settlement).

Davis v. The Money Store, No. 99A501716 (Superior Court, Sacramento) (Lead counsel in litigation seeking class relief statewide for overtime claims; $6 million class settlement approved December 2000).

Otero v. Rent-A-Center, No. BC 217038 (Superior Court, Los Angeles) (Lead counsel in litigation seeking class relief statewide for overtime claims resulting in $3 million settlement in 2000).

Babbitt v. Alberson's, Inc., No. C-92-1883-SBA (N.D. Cal.) (Statewide Title VII class action resulting in injunctive relief and $29 million monetary settlement).

Butler v. Home Depot, 70 FEP Cases 51 (N.D. Cal.) (Gender discrimination class action that resulted in monetary relief of $87 million and injunctive relief covering the western region of Home Depot).

Byrd v. Sprint Corp., No. CV 92-18979 (Sup. Ct. Missouri) (Common law tort and contract class action on behalf of persons who sold long-distance service that resulted in a recovery of $62.5 million).

DeSoto v. Sears Roebuck & Co., No. RG 03096692 (Superior Court, Alameda County) (Co-lead counsel for statewide class of 2,700 home repair technicians certified on September 21, 2004).

Elmer v. Enterprise Rent-A-Car, No. C-98-01571 VRW (N.D. Cal.) (Lead counsel in statewide class action overtime compensation case; the two Enterprise cases resulted in $6 million in monetary relief).

Hogan v. Allstate Ins. Co., 210 F. Supp. 2d 1312 (M.D. Fla.) (Lead counsel in FLSA action; nationwide collective action notice ordered to 8,500 sales agents in May 2001).

Harrison v. Enterprise Rent-A-Car, 1998 WL 422169 (M.D. Fla. 1998) (Lead counsel in nationwide collective action under Fair Labor Standards Act).

Herring v. SaveMart, No. C-90-3571 BAC (N.D. Cal.) (Title VII class resulting in injunctive relief and $6.3 million monetary settlement).

Kraszewski v. State Farm General Ins. Co., 38 FEP Cases 197 (N.D. Cal.) (Statewide Title VII class action sex discrimination case resulting in $250 million settlement).

## CONFERENCE PRESENTATIONS AND PUBLICATIONS

Practicing Law Institute (PLI), 35th Annual Institute on Employment Law, San Francisco, California and Live Webcast, October 31, 2006, Panelist: "Compensation and State Law Wage Claims."

The Labor and Employment Law Section of the State Bar of California, Annual Meeting, General Session re "Top Ten Wage and Hour Developments," San Jose, California, October 27, 2006.

American Conference Institute, National Forum on Wage & Hour Claims and Class Actions, Panelist: "Wage and Hour Class Certification: Strategies and Winning Arguments," San Francisco, California, October 26, 2006.

California Labor & Employment Law Review, State Bar of California and Employment Law Section, Volume 20, No. 2 (Spring 2006), "Book Review: Getting Even: Why Women Don't Get Paid Like Men – And What To Do About It."

Colorado Bar Association, National CLE Conference: Labor & Employment Law, Aspen, Colorado, January 4, 2006, "Major Areas of Liability in Wage and Hour Law."

American Bar Association, Section of Labor and Employment Law and ABA Center for CLE Teleconference and Live Audio Webcast, "The Supreme Court Speaks: Compensable Time as a Result of IBP, Inc. v. Alvarez" (December 14, 2005).

National Employment Lawyers Association (NELA), Impact Litigation Seminar (Program Committee), Cambridge, MA (October 14-15, 2005); Panelist: "Advanced Issues in Collective Actions."

American Bar Association, Section of Labor and Employment Law, Mid-Winter Meeting of the Equal Employment Opportunity Committee, April 7, 2005 (Naples, Florida): "The FLSA Trajectory: Challenges on the Horizon," Panelist regarding FLSA representative actions.

American Bar Association, Labor and Employment Law Teleconference, "The Wave Continues … 1500 New FLSA Class Actions Filed in 2004...More Expected in 2005," (March 2, 2005), Panelist on national MCLE teleconference program.

American Bar Association, Federal Labor Standards Legislation Mid-Winter Meeting, Cancun, Mexico, February 17, 2005, FLSA Panel: Discussion of Current Issues.

Law Education Institute, National CLE Conference (Colorado State Bar Association), Aspen, Colorado (January 5, 2005), "How Long Can You Go? Current Issues in Wage and Hour Law."

American Bar Association, Section of Labor and Employment Law, and Bar Association of San Francisco, "Fair Labor Standards Act/Family Medical Leave Act Basic Law and Procedures," Program Chair and Moderator (December 9, 2004).

American Bar Association Annual Convention, Atlanta, GA, August 10, 2004, Moderator, "Wage and Hour Update: The New FLSA Regulations and Litigation Issues."

American Bar Association Annual Convention, Atlanta, GA, August 9, 2004, Panelist "In-House v. Outside Counsel – What We Want From Each Other."

National Employment Lawyers Association (NELA), Annual Convention Speaker, "Advanced FLSA Collective Actions Panel," San Antonio, TX (June 24, 2004).

Minnesota State Bar Association, Labor and Employment Section, Annual Upper Midwest Employment Law Institute, St. Paul, MN (May 26, 2004), Plenary Speaker, "The New FLSA Wage and Hour Regulations."

Placer County Bar Association, Continuing Education Conference, Lake Tahoe, California (April 24, 2004), "Wage/Hour Litigation."

American Bar Association, Section of Labor and Employment Law, Mid-Winter Meeting of the Federal Labor Standards Legislation Committee, February 19-20, 2004 (St. Thomas, USVI): Annual Report on FLSA Developments.

Law Education Institute, National CLE Conference, Aspen, Colorado (January 6, 2004), "Class Certification and Decertification: Advocacy, Strategy, and Tactics."

Employee Rights and Employment Policy Journal (Chicago-Kent College of Law), "Litigation of Wage and Hour Collective Action Under the Fair Labor Standards Act," with Laura L. Ho, Vol. 7, No. 1 (2003).

National Employment Law Project, et al. Representing Workers and Low-Income Plaintiffs: Tax Consequences in Administration of Settlements and Resolving I.R.S. Controversies, Oakland, CA, October 24, 2003.

State Bar of California, Labor and Employment Law Section Annual Meeting, San Diego, CA, October 10, 2003, "Wage and Hour Law – Reloaded."

California State Bar Law and Employment Law Section, California Labor & Employment Law Review, Vol. 17, No. 5 (September 2003), "Can We Talk?" (regarding communications in state class actions).

National Employment Lawyers Association (NELA), Program Committee and Panelist, "Protecting Employee Rights Under the FLSA, FMLA and Equal Pay Act," San Francisco, CA (March 7-8, 2003).

American Bar Association, Section of Labor and Employment Law, Mid-Winter Meeting of the Federal Labor Standards Legislation Committee, February 19-21, 2003 (Puerto Vallarta, Mexico):  Annual Report on FLSA Developments.

Contra Costa County Bar Association, MCLE Spectacular, Panelist, New Developments in Wage & Hour Law and Use of California's Unfair Competition Law, Walnut Creek, CA (November 22, 2002).

State Bar of California, Labor and Employment Section, Annual Meeting, Wage & Hour Update: Where Are We Two Years After AB60? (San Jose, CA), November 15, 2002.

Practicing Law Institute, Annual Institutes on Employment Law (New York, NY and/or San Francisco, CA) November 1, 2005; November 2, 2004; November 4, 2003; October 2002; October 2001; October 2000; October 1999; October 1998: Major Developments in Employment Law: Plaintiffs' Perspective; Wage/Hour Developments.

BNA Wage Hour & Leave Report, "Production Dichotomy Test for FLSA's Administrative Exemption Still Useful," Vol. 1, No. 18, September 13, 2002, pp. 465-466.

American Bar Association Annual Convention, Washington, D.C., August 12, 2002, Moderator, "Litigation of FLSA Collective Actions: Strategies for Plaintiffs' and Defendant's Counsel."

California State Bar Labor and Employment Section, California Labor and Employment Law Quarterly, Vol. 16, No. 3 (May 2002), "Yarbrough v. Labor Ready: Class Action to Enforce California Wage Laws."

Pacific Coast Labor & Employment Law Conference (Seattle, WA), May 2, 2002, Wage & Hour Litigation – The New Wave of Class Actions: Substantive Developments and Litigation Strategies.

BNA Wage Hour & Leave Report, "Questions Arise Over Rules for Collective Actions Under FLSA," Vol. 1, No. 3, February 1, 2002, pp. 77-79.

ABA Section of Labor and Employment Law Mid-Winter Meeting of the Federal Labor Standards Legislation Committee, February 2002 (Miami Beach, FL): Annual Report on FLSA Developments.

Associate Editor, The Fair Labor Standards Act, 2001 and 2002 Cumulative Supplements, Bureau of National Affairs, Inc.

California Employment Law Council, Guest Speaker, Annual Meeting, November 8, 2001, "A Plaintiff's Perspective on Wage/Hour Issues."

American Bar Association Annual Convention, Chicago, August 5, 2001, "The Basics: Fair Labor Standards Act."

National Employment Lawyers Association Annual Convention, Seattle, June 28, 2001, "Selected Issues Under the FLSA and Equal Pay Act".

American Bar Association, Section of Labor and Employment Law and Golden Gate University School of Law, Institute on the Fair Labor Standards Act and the Family Medical Leave Act, Moderator, San Francisco, California (June 6, 2001).

Organization Resources Counselor, Inc., Employment Law and Litigation Group, Guest Speaker, Employment Law From Plaintiffs' Perspective, New York, New York (May 31, 2001).

The Recorder Roundtable:  Employment Law Developments, May 8, 2001 (San Francisco).

ABA Section of Labor and Employment Law Mid-Winter Meeting of the EEO Committee, February
2001 (Sanibel Harbor, FL):  An Introduction to Litigating FLSA Collective Actions for the
EEO Lawyer.

ABA Section of Labor and Employment Law Mid-Winter Meeting of the Federal Labor Standards
Legislation Committee, February 2001 (La Romana, Dominican Republic):  Annual Report on
FLSA Developments.

California State Bar Labor and Employment Section, <u>California Labor & Employment Law Quarterly</u>
(Winter 2000), "Overtime Pay – Who's Eligible, Who's Not?" (with Aaron Kaufmann).

National Employment Law Institute July 2000 (San Francisco):  Recent Developments in Equal
Employment Law from the Perspective of Plaintiffs' Attorneys.

ABA Labor and Employment Law Section Annual Meeting July 8-11, 2000 New York:  Federal Labor
Standards Legislation Committee Program.  Unique aspects of litigation and settling opt-in
class actions under the Fair Labor Standards Act, The Age Discrimination in Employment Law
Act and the Equal Pay Act.

Lawcast:  Employment and Labor, Vol. VI, No. 7 (April 24, 2000), audiocassette re wage/hour
developments.

National Public Radio (KALW) April 12, 2000:  "Know Your Legal Rights," on wage and hour issues.

ABA Section of Labor and Employment Law
Mid-Winter Meeting of the Federal Labor Standards Legislation Committee February 2000
(Key West, FL):  Panel Discussion:  Unique Aspects of Litigating and Settling FLSA Cases.

Organization Resources Counselors, Inc. Workforce Opportunity Network
February 2000 (Los Angeles, CA):  What's Hot in 2000:  A Plaintiffs' Attorney's View of
Discrimination.

National Lawyers Guild, Annual Convention
October 1999 (San Francisco):  The Future of Employment Law Practice (Workshop
Moderator).

ABA Labor and Employment Law Section
August 1999 Annual Meeting (Atlanta, GA):  Class Actions in Employment Law.

National Employment Lawyers Association, Annual Convention, June 1999 (New Orleans):
Collective and Class Action Strategies in Overtime Litigation.

National Employment Lawyers Association, Annual Convention 1997 (Toronto):  Maximizing
Recoveries Under the Damages Caps of the Civil Rights Act of 1991; Attorneys Fees:  The
Basics.

Los Angeles County Bar Association Labor and Employment Law Section Symposium 1998 (Los Angeles): Affirmative Reactions: The Future of Race-Conscious Remedies for Employment Discrimination.

State Bar of California Labor and Employment Law Section (San Francisco 1997): Legal Ethics for Employment Lawyers.

National Lawyers Guild (San Francisco 1992): How to Use Experts to Prove Damages – Employment, Tort and Discrimination Cases.

ABA Labor and Employment Law Section
1992 Mock Trial Program (San Francisco, CA and Washington, D.C.): Presenting and Defending an Americans with Disabilities Act Lawsuit.

## PROFESSIONAL ASSOCIATIONS

College of Labor and Employment Lawyers, Fellow (2004- )

Labor and Employment Section, Co-chair, Committee on Federal Labor Standards Legislation – American Bar Association (ABA) (2003 – ); Co-chair, Fair Labor Standards Act Sub-Committee (2000 – 2004).

Labor and Employment Section – State Bar of California.

National Employment Lawyers Association (NELA) – Wage and Hour Committee Co-Chair.

Bureau of National Affairs (BNA), <u>Wage Hour & Leave Report</u> Advisory Board (2001-2003).

National Lawyers Guild (NLG).

## PRESS

Featured as one of the San Francisco Bay Area's "top attorneys" in employment law, in <u>The Recorder</u> Special Report (March 15, 2004).

Listed in <u>Oakland</u> magazine (March-April 2006) article on "The Best Lawyers in the East Bay."

Listed in <u>The Best Lawyers in America</u> (Wood/Whyte), 2006.

Selected as "SuperLawyers" in the Northern California <u>Super Lawyers Magazine</u> August 2006.

# OUTTEN & GOLDEN LLP

3 Park Avenue, 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005
www.outtengolden.com

Outten & Golden LLP ("O&G") is a 25-attorney firm based in New York City
that focuses on representing employees in a wide variety of matters, including class
action and individual wage and hour and discrimination cases. O&G lawyers also advise
individuals on partnership matters, employment agreements, compensation arrangements,
and severance plans, and benefits issues, including bonuses, commissions, stock
grants/options, and family/medical leaves.

### The O&G Class Action Practice Group

The attorneys in O&G's Class Action Practice Group prosecute employment-
based class and collective actions primarily involving unpaid overtime claims and
systemic discrimination claims. O&G attorneys are currently lead counsel or co-lead
counsel in a variety of class-based employment-related litigations, including nationwide,
gender-based discrimination class actions against Smith Barney (*Amochaev v. Citigroup
Global Markets, Inc. d/b/a Smith Barney*, N.D.Cal., No. C-05-1298), Morgan Stanley
(*Jaffe v. Morgan Stanley*, N.D.Cal., No. C-06-3903), and the now-settled *Mitchell v.
MetLife*, S.D.N.Y., 01 Civ. 2112. The *MetLife* settlement provides for significant
monetary and ongoing injunctive relief to a class of female insurance brokers working in
offices throughout the country. O&G attorneys also represented the plaintiff-intervenor
and actively participated in prosecuting *EEOC v. Morgan Stanley*, S.D.N.Y., No. 01 Civ.
8421, a nationwide gender discrimination action that resulted in a $54 million settlement.

On the wage-and-hour side, O&G attorneys are currently lead or co-lead counsel
in large-scale and multi-state class and collective action wage and hour cases against

Wal-Mart (*Gamble v. Wal-Mart*, Sup. Ct., Albany County, No. 7121-01); Verizon (*Levy v. Verizon Info. Servs.*, E.D.N.Y., 06 Civ. 1583); Washington Mutual Bank (*Westerfield v. Washington Mutual*, E.D.N.Y., 06 Civ. 2817); J.P. Morgan Chase (*Clarke v. J.P. Morgan Chase & Co.*, Sup. Ct. N.Y. County, No. 04601519); UPS (*Dorfman v. UPS*, E.D.N.Y., No. 06 Civ. 703); Tyson Foods (*Garcia v. Tyson Foods, Inc.*, D. Kan., No. 06-2198); Food Emporium (*Foster v. Food Emporium*, S.D.N.Y., No. 99 Civ. 3860); Home Depot (*Hernandez v. The Home Depot, Inc.*, E.D.N.Y., No. 05 Civ. 3433); A&P (*LaMarca v. A&P*, Sup. Ct., N.Y. County, No. 04601973); Target Stores (*Lamons et al. v. Target*, E.D.N.Y., No. 04 Civ. 0260); Donna Karan (*Liu v. Donna Karan*, S.D.N.Y., No. 00 Civ. 4221); and GEICO (*Tillman v. GEICO*, Sup. Ct., Nassau County, No. 011538). This list is not exhaustive.

O&G attorneys also represent low-wage New York City workers in overtime cases against Gristede's (*Torres v. Gristede's Oper. Corp.*, S.D.N.Y., No. 04 Civ. 3316), Duane Reade (*Damassia v Duane Reade*, S.D.N.Y., No. 04 Civ. 8819), and other local companies. Along with the National Employment Law Project, O&G attorneys represented a class of low-wage grocery store delivery workers in *Ansoumana v. Gristede's Operating Corp.*, S.D.N.Y., No. 00 Civ. 0253 that resulted in both a favorable class settlement and several notable decisions on issues that are often cited to and relied upon by advocates and courts in employment-based class actions.

### The O&G Class Action Practice Group Members

Adam T. Klein, a partner at O&G and founder and current Co-Chair of its Class Action Practice Group, limits his practice to the prosecution of class action and impact litigation of employment discrimination and wage and hour claims. He is a member of the National Employment Lawyers Association (NELA), served on the Executive Board of its New York Affiliate (NELA/NY) from 2000 to 2006, and currently serves as a co-chair of the Class Action Committee of NELA. He served on the Executive Board of the Employee Rights Section of the American Trial Lawyers Association. Mr. Klein is a

member of the American Bar Association, where he served as the Plaintiffs' Co-Chair of the Committee on Technology and Federal Law Clerks Training Program, and is a member of the Committees on Equal Employment Opportunity and Employee Rights and Responsibilities of the Section of Labor and Employment Law and the Class Action and Derivative Suits Committee of the Section of Litigation. Mr. Klein recently took over as the plaintiffs' co-chair of the largest Committee within the Labor and Employment Section – the Equal Employment Opportunity Committee. Mr. Klein is also a member of the Federal Bar Council and a member of the Advisory Board of the Labor and Employment Law Program of Cornell University's ILR School.  He received his undergraduate degree from the School of Industrial and Labor Relations at Cornell University in 1987 and his law degree from Hofstra University in 1990. He was admitted to the New York bar in 1991.

     Justin M. Swartz, a partner at O&G and Co-Chair of its Class Action Practice Group, primarily represents employees in class action wage-and-hour and discrimination cases, and also in individual discrimination cases and other employment matters.  Mr. Swartz is also a member of the firm's LGBT Practice Group.  He serves on the Committee on Civil Rights of the New York City Bar Association and is a former member of its Committee on Labor and Employment Law (2002-2005). He also serves on the Executive Board of the National Employment Lawyers Association New York Chapter and is a member of the NELA Fair Labor Standards Act Committee. In the ABA Section on Labor and Employment Law, he is Co-Chair of the Ethics and Professional Responsibility Committee and an active member of the Equal Employment Opportunity Committee (Newsletter Co-Editor and Taskforce on Diversity).  Mr. Swartz speaks frequently on employment law and ethics and has co-authored several papers.  He graduated from DePaul University School of Law with honors in 1998 and is a member of the bars of New York and Illinois.

Tarik Fouad Ajami, a partner at Outten & Golden LLP, represents employees and classes of employees in all areas of employment law.  Mr. Ajami has counseled and represented individuals, employee groups, certified classes, and labor unions in federal and state trial and appellate courts, arbitration tribunals, negotiations and mediations. He has co-written numerous papers and articles on wage-and-hour law, class litigation, retaliation, discovery, federal practice, and other issues.  He is an active member of the American Bar Association, the National Employment Lawyers Association (NELA) and its New York affiliate, and the National Lawyers Guild.  Mr. Ajami received his B.A. from the University of Michigan in 1991 and his J.D. from the City University of New York School of Law in 1995. From 1995-1997, he served as a pro se law clerk in the United States Court of Appeals for the Second Circuit. From 1997-1998, he was law clerk to United States Magistrate Judge Ronald L. Ellis in the United States District Court for the Southern District of New York.  He is admitted to the bar of New York.

Piper Hoffman, a partner at O&G, represents employees in litigation in discrimination and wage-and-hour class actions. Ms. Hoffman has litigated class, multi-plaintiff, and individual cases. She has represented employees with discrimination and other claims against virtually every major Wall Street firm, including representing Allison Schieffelin in her gender discrimination case against Morgan Stanley.  She is Co-Chair of the National Employment Lawyers Association Class Action Committee, and a member of the American Bar Association and the New York City Bar Association. Ms. Hoffman taught legal writing and argument as a student at Harvard Law School. She has delivered talks and authored or co-authored articles on a variety of employment law topics.  She served as a judicial clerk for Judge Gladys Kessler on the United States District Court for the District of Columbia. Ms. Hoffman received her B.A., magna cum laude and with honors in political science, from Brown University in 1994 and her J.D., cum laude, from Harvard Law School in 1999, and is admitted to the New York, Massachusetts and District of Columbia bars.

4

Jack A. Raisner is of counsel to O&G.  He is a tenured Professor of Law, Tobin College of Business, St. John's University. He has represented both employers and employees in matters involving wage and hour laws, executive employment and severance contracts, discrimination, pensions, union democracy, and other matters before courts and agencies. He has provided advice on these and a wide range of other employment-related matters to employees for more than 10 years.  Mr. Raisner is the author of numerous articles and legal texts encompassing an extensive range of issues. He is a contributing author of chapters in leading legal treatises, including Employee Rights Litigation, Disability Discrimination in the Workplace, New York Employment Law, Employment Litigation in New York, West's General Practice in New York, and International Labor and Employment Laws. His articles for practicing lawyers and managers have appeared in law journals, including the New York Law Journal and HR Magazine, and he has spoken at SHRM national conferences and other management and academic seminars around the country.  Mr. Raisner received his B.S. degree from Boston University in 1978 and his J.D. from Benjamin N. Cardozo School of Law in 1983.  He is admitted to the New York bar.

Lewis M. Steel is of Counsel to O&G.  For many years, he has focused primarily on class action employment discrimination cases.  Mr. Steel's precedent-setting employment discrimination decisions include Sumitomo Shoji America, Inc. v. Avagliano, 457 U.S. 176, which established that American subsidiaries of foreign corporations must obey American civil rights laws. In the Sumitomo case and other employment discrimination class actions, he has negotiated far-reaching settlements and monitored the companies' performance. Mr. Steel is presently representing a class of African-American and Hispanic employees who are suing the New York City Department of Parks and Recreation for racial and national origin discrimination in

promotions, pay, and assignments.  Before joining Outten & Golden, Mr. Steel also

handled a wide range of civil rights cases involving housing and zoning discrimination,

as well as police brutality and criminal cases. He served as co-lead counsel in the Rubin

Carter/John Artis case for which he was honored by the New York Criminal Bar

Association in 2000. Mr. Steel, who began his career in 1964 on the legal staff of the

NAACP, is a past president of the New York City chapter of the National Lawyers Guild

and has served on the Board of Directors of the New York County Lawyers Association.

He has lectured, appeared on television, and written on a wide variety of employment

discrimination and civil rights topics.  Mr. Steel graduated from Harvard College in 1958

and from New York Law School in 1963, where he was the Editor in Chief of the Law

Review. New York Law School has awarded him an honorary Doctor of Laws degree for

his civil rights work and he is an adjunct professor of law there.

Linda A. Neilan, an associate at O&G, represents employees in litigation and

negotiation in all areas of employment law, including individual discrimination cases and

wage and hour class actions.  Before law school, Ms. Neilan worked as a legal advocate

for Latin American immigrants in San Francisco as a member of the Jesuit Volunteer

Corps and taught high school Spanish for three years.  Ms. Neilan received her B.S.

magna cum laude from the University of Scranton in 1994, her M.A. in education from

San Francisco State University in 1999, and her J.D. with honors from Rutgers Law

School in 2001. She was a law clerk to United States Magistrate Judge Ronald L. Ellis in

the Southern District of New York from 2001 - 2002. Ms. Neilan is admitted to the bars

of New York and New Jersey.

Nantiya Ruan, an associate at O&G, represents employees in employment discrimination and wage and hour class actions, and individuals in other employment matters. Ms. Ruan works from her office in Denver, Colorado, where she is a Legal Writing Professor at the University of Denver College of Law. Prior to joining O&G in 2000, Ms. Ruan was a judicial clerk for Magistrate Judge Ronald L. Ellis in the United States District Court for the Southern District of New York. She has also clerked in the state appellate courts. Ms. Ruan received her B.A. from Villanova University in 1993, and her M.S.W. and J.D. from the University of Denver in 1999. She is admitted to practice in the states of Colorado, New York, and California.

Cara E. Greene is an associate at Outten & Golden LLP, where she represents employees in litigation and negotiation in all areas of employment law, including individual discrimination cases, wage and hour class actions, and executive contracts and compensation. Ms. Greene received her B.A. in 2000 in political studies from Gordon College, where she was an A.J. Gordon Scholar. She received her J.D. from Fordham University School of Law in 2005, where she served on Fordham's Moot Court Board and was a member of the moot court team that reached the semi-finals in the national J. Braxton Craven Moot Court Competition in Constitutional Law, hosted by the University of North Carolina. She is admitted to practice law in New York.

Tara Lai Quinlan, an associate at O&G, represents employees in all aspects of employment law, including discrimination, retaliation, and wage and hour cases. Ms. Quinlan was a Law Clerk in the Staff Attorneys' Office for the United States Court of Appeals for the Second Circuit. She received her J.D. from Northeastern University School of Law and her B.A. from the University of California, Berkeley. Before law

7

school, Tara served as a Housing Discrimination Investigator/Test Coordinator for Sentinel Fair Housing in Oakland, California, where she investigated housing discrimination complaints, coordinated fair housing testing, and conducted training seminars on fair housing law.  She continues to write on issues of post-9/11 racial profiling and community policing with Professor Deborah Ramirez of Northeastern University School of Law.  She is admitted to the bar of New York.

# J. DEREK BRAZIEL
LEE & BRAZIEL, L.L.P.
1801 N. Lamar Street, Suite 325
Dallas, TX 75202
(214) 749-1400
(214) 749-1010
jdbraziel@l-b-law.com
www.overtimelawyer.com

J. Derek Braziel is a partner with Lee & Braziel, L.L.P. located in Dallas Texas. Lee & Braziel represents plaintiffs in collective action and class action litigation concerning rights asserted under the Fair Labor Standards Act and commensurate state laws governing wages. Lee & Braziel has a national practice and has represented employees from across the nation in several different lawsuits. These include employees in Alabama, California, North Carolina, South Carolina, Georgia, Florida, Minnesota, Ohio, Indiana, Illinois, Wisconsin, Michigan, Kansas, Oklahoma, Pennsylvania, New York, Louisiana, Texas, and New Hampshire.

Moreover, Mr. Braziel was lead attorney for the unpaid overtime litigation under the Fair Labor Standards Act brought against GEICO in a case styled *Amie Owens, Individually and on Behalf of Herself and Other Similarly Situated v. Government Employees Insurance Company a/k/a GEICO.* Over 1900 people have returned their consents to opt-in this litigation.

Mr. Braziel was lead attorney in an FLSA collective action brought against SM&P Utility Resources, Inc. in which over 950 utility line locators were paid for their unpaid overtime wages.

Mr. Braziel was on the plaintiff's national steering committee for the nationwide overtime lawsuit brought against Progressive Insurance, Inc. in which over 1300 litigants were awarded their unpaid overtime wages.

In addition to these cases, Mr. Braziel has successfully litigated collective actions on behalf of paramedics, repairmen, body guards, mortgage brokers, computer technicians, police officers, and lab technicians. Before forming Lee & Braziel, Mr. Braziel worked for Edwards, Burns & Braziel, LLP for three years and worked for six years for the nation's largest labor and employment law firm where he focused his practice on wage and hour issues. In 2003, 2004, 2005, and 2006 Mr. Braziel was selected as a Texas Superlawyer by *Texas Monthly.* In 2004, he was also selected as one of *D Magazine's* top 40 lawyers under 40. In 2005, he was selected by *D Magazine* as one of the Best Lawyers in Dallas.

## EDUCATION

J.D. University of Virginia School of Law, 1995

B.B.A., Marketing and Quantitative Business Analysis, Baylor University, *magna cum laude,* 1992

Resume of J. Derek Braziel
Page 2

## CERTIFICATIONS AND CLERKSHIPS

Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization, 2002

Judicial Law Clerk to the Honorable Howell Cobb, 1995-96, United States District Court for the Eastern District of Texas.

## BAR MEMBERSHIP

State Bar of Texas (Since November 1995)

United States District Courts for Northern, Southern, Eastern, and Western Districts of Texas

United States Court of Appeal for the Fifth Circuit

## LITIGATION EXPERIENCE
*(partial listing)*

Kent Dunwiddie c. Central Locating Service, Inc., Civil Case No.: 5:04CV315-OC-10GRJ (M.D. Fla) (Co-counsel; nationwide FLSA collective action by more than 450 locators for unpaid overtime based on at-home computer time and travel time).

David Pritchard v. SM&P Utility Resources, Inc., Civil Action No. 2-03CV-057 (E.D. Tex.) (Co-Counsel; nationwide FLSA collective action by 966 locators for unpaid overtime based on at-home computer time and travel time).

Kelly Marie Camp v. The Progressive Corporation, et al., Civil Action No. 01-2680 (E.D. La.) (Co-Counsel on Steering Committee for class of over 1300 members; nationwide collective action filed by adjusters for unpaid overtime).

Richard Lynn Kettler v. Presstek, Inc., Civil Action No. 1:03-CV-345-B (District Court, New Hampshire) (Lead Counsel; FLSA collective action by printing press repairmen for unpaid overtime).

Amie Owens v. Government Employees Insurance Company a/k/a GEICO, Civil Action No. 3-03CV0620-M (N.D. Tex.) (Lead counsel for class of over 1900 telephone dedicated employees; nationwide FLSA collective action; notice ordered May 20, 2003).

Kimii Valentine and Robert Casey v. Harris County, et al., Civil Action No. H-02-4910 (S.D. Tex.) (Lead Counsel; FLSA collective action for unpaid overtime; notice ordered August 25, 2003).

Bruce Hafemeister, et al. v. PDP Group Texas, et al., Civil Action No. 3-03CV-1534-M (N.D. Tex.) (Lead Counsel; FLSA collective action by consultants seeking unpaid overtime and compensation for earned but unused vacation, compensatory time, and sick time).

Claire Senglin, et al. v. Cypress Creek Emergency Medical Services, et al., Civil Action No. H-01-3900 (S.D. Tex.) (Co-Counsel; FLSA collective action for class of Emergency Medical Technicians for unpaid overtime).

<u>Colleen Oxley v. First Choice Lenders LP, et al.</u>, Civil Action No. A-02CA-081-JN (W.D. Tex.) (Lead Counsel; FLSA collective action for mortgage brokers/loan officers for unpaid overtime; notice ordered January 9, 2003).

<u>Stephanie Goetz, et al. v. Synthesys Technologies, Inc., et al.</u>, Civil Action No. A-02-CA-081 (W.D. Tex.) (Lead Counsel; FLSA collective action for class members seeking unpaid wages; notice ordered January 29, 2003).

## PROFESSIONAL ASSOCIATIONS

Dallas Bar Association (DBA), Labor and Employment Section, (Executive Committee)

>    Treasurer – 2005

>    Secretary – 2006

Labor and Employment Section – State Bar of Texas

National Employment Lawyers Association (NELA) – Wage and Hour Committee

ABA – Fair Labor Standards Committee

## PUBLICATIONS

2004, Contributor – Supplement to Fair Labor Standards Act treatise authored by Ellen Kearns

2005, Contributing Editor – Supplement to Fair Labor Standards Act treatise authored by Ellen Kearns.

2006, Contributing Editor and Editorial Board Member - Supplement to Fair Labor Standards Act treatise

2004, Contributor – State Wage and Hour Laws – published by ABA

2005, Contributor - State Wage and Hour Laws – published by ABA

## RECOGNITION

2003 – 2006  Recognized by *Texas Monthly* as a Texas SuperLawyer

2004 – Named as one of the Top Lawyers Under 40 by *D Magazine*

2005 – Named as on of the Top Lawyers in Dallas by *D Magazine*

# RICHARD J. (REX) BURCH

## BRUCKNER BURCH PLLC

1000 LOUISIANA, SUITE 1300
HOUSTON, TEXAS 770002
(713) 877-8788 - Telephone
(713) 877-8065 - Facsimile
rburch@brucknerburch.com

Richard J. (Rex) Burch is a shareholder in the firm of Bruckner Burch PLLC. Bruckner Burch PLLC is A-V rated by Martindale-Hubble in the field of Labor & Employment law. At the firm, Mr. Burch's practice is focused on the litigation of wage and hour class and collective actions. Mr. Burch is a member of the National Employment Lawyers Association - where he currently serves as a member of the Wage and Hour Committee. Mr. Burch has also served as an adjunct professor at the University of Houston Law Center, teaching a course in civil trial advocacy.

Mr. Burch's cases have been featured in the American Bar Journal, National Law Journal, and various newspapers across the country. He is a published author on the subject of the Fair Labor Standards Act and lectures extensively on the topic of wage and hour class and collective actions. Mr. Burch has been named a "Rising Star" of the Texas Labor & Employment bar, an honor bestowed on less than 3% of similarly situated lawyers. Similarly, the *Texas Lawyer* magazine named Mr. Burch as one of its "Super Lawyers." In addition, Mr. Burch is listed in Woodard/White's "Best Lawyers in America."

## LITIGATION EXPERIENCE

Mr. Burch has served as lead counsel or co-lead counsel, in dozens of class and/or collective actions seeking to recover unpaid wages. Among Mr. Burch's reported decisions dealing with the litigation of wage and hour class/collective actions include:

- *Belt v. Emcare, Inc.*, 444 F.3d 403 (5th Cir. 2006)(affirming summary judgment in favor of nationwide class of medical professionals);
- *Clarke v. Convergys Customer Management Group, Inc.*, 370 F.Supp.2d 601 (S.D.Tex. 2005)(certifying collective action of call center workers);
- *Salinas v. O'Reilly Automotive, Inc.*, 358 F.Supp.2d 569 (N.D.Tex. 2005) (denying defendant's motion to transfer venue in a collective action lawsuit);
- *Belt v. Emcare, Inc.*, 299 F.Supp.2d 664 (E.D.Tex. 2003)(order granting protective order and sanctioning defense counsel for improper contact with potential class members); and
- *Villatoro v. Kim Son Restaurant, L.P.*, 286 F.Supp.2d 807 (S.D.Tex. 2003)(certifying company-wide collective action of restaurant workers).

## RECENT PUBLICATIONS AND PRESENTATIONS

| ARTICLE / PRESENTATION | PUBLISHER/VENUE | DATE |
|---|---|---|
| Evaluating Wage and Hour Claims: A Plaintiff's Lawyer Perspective *Advanced Employment Law for Employers and Employment Lawyers* | University of Houston Law Center *Houston & Dallas Texas* | November 2006 |
| Pursuing and Defending FLSA Collective Actions *Advanced Employment Law Seminar* | University of Texas Law School *Austin, Texas* | May 2006 |
| FLSA Overtime Litigation: Plaintiff's and Defendant's Perspectives | University of Houston Law Center *Houston & Dallas, Texas* | April 2006 |
| Litigating Collective Action Under the FLSA *Multi-State Labor & Employment Law Program* | American Board of Trial Advocates *Tucson, Arizona* | May 2006 |
| Overtime Litigation: The Plaintiff's Perspective *Advanced Employment Law Seminar* | University of Houston Law Center *Houston & Dallas, Texas* | March 2005 |
| Class Actions Under the Fair Labor Standards Act: A Plaintiff Lawyer's View | Texas General Counsel's Forum *Dallas, Texas* | February 2005 |
| Representative Actions under the Fair Labor Standards Act - Perspectives From Both Sides of the Bar | Houston Bar Association: Labor & Employment Section *Houston, Texas* | June 2004 |
| Protecting Employee Rights under the FLSA, FMLA & Equal Pay Act (Contributing Author) | National Employment Lawyers Association *San Francisco, California* | March 2003 |
| A Practitioner's Guide to Joint Employer Liability Under the FLSA | Houston Business and Tax Law Journal | December 2002 |
| Mastering the Trial Notebook in Texas (Contributing Author) | NBI, Inc. *Houston, Texas* | March 2002 |

## PROFESSIONAL ASSOCIATIONS

National Employment Lawyers Association - Wage & Hour Committee

American Bar Association – Litigation Section

Houston Bar Association - Labor & Employment Law Section

Houston Young Lawyers Association

**EDUCATION**

    J.D., University of Houston Law Center, 1997

    B.S., University of North Texas, 1994

**BAR MEMBERSHIP**

    State Bar of Texas
    United States Court of Appeals for the Fifth Circuit
    United States District Court for the Eastern District of Texas
    United States District Court for the Northern District of Texas
    United States District Court for the Southern District of Texas
    United States District Court for the Western District of Texas