1   James M. Finberg (SBN 114850)
    Eve H. Cervantez (SBN 164709)
2   Rebekah B. Evenson (SBN 207825)
    ALTSHULER BERZON LLP
3   177 Post Street, Suite 300
    San Francisco, CA  94108
4   (415) 421-7151
    jfinberg@altshulerberzon.com
5   ecervantez@altshulerberzon.com
    revenson@altshulerberzon.com
6   *Class Counsel*
    *[additional counsel on signature page]*
7

8   Matthew W. Lampe
    JONES DAY
9   325 John H. McConnell Blvd, Ste 600
    Columbus, OH 43215
10  (614) 469-3939
    mwlampe@jonesday.com
11

12  *Attorney for Defendant IBM*

                    UNITED STATES DISTRICT COURT
13                  NORTHERN DISTRICT OF CALIFORNIA
                    SAN FRANCISCO / OAKLAND DIVISION
14

15  THOMAS ROSENBURG *et al.*, on behalf         Case No.  06-0430 PJH
    of themselves and classes of those similarly
16  situated,
                                                  **JOINT NOTICE OF MOTION AND**
17                Plaintiffs,                      **MOTION FOR FINAL SETTLEMENT**
                                                  **APPROVAL AND FOR FINAL CLASS**
18        v.                                       **CERTIFICATION; MEMORANDUM OF**
                                                  **POINTS AND AUTHORITIES**
19  INTERNATIONAL BUSINESS
    MACHINES CORPORATION,
20                                                Date:      July 11, 2007
                  Defendant.                      Time:      9:00 a.m.
21                                                Courtroom: 3, 17th Floor
                                                  Judge:     Honorable Phyllis J. Hamilton

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................ii

NOTICE OF MOTION AND MOTION ..................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................2

    INTRODUCTION ...........................................................................................................2

    THE CLASS ACTION SETTLEMENT AGREEMENT ...............................................3

    1.  Settlement Fund .......................................................................................................3

    2.  Plan of Allocation ....................................................................................................4

        A.  Job Position and Band Factors .........................................................................5

        B.  State Factor .......................................................................................................6

    3.  Release of Claims ....................................................................................................7

    ARGUMENT ..................................................................................................................9

I.      THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AND ENTER JUDGMENT IN ACCORDANCE WITH THE SETTLEMENT AGREEMENT .................................................................................................................9

    A.    The Terms of the Settlement Are Fair, Adequate and Reasonable. ....................10

    B.    The Reaction of the Class Supports Approval of the Settlement. .........................11

    C.    The Parties Conducted Extensive Investigation and Analysis and the Settlement Was Reached Through Arms-Length Negotiations. ..........................15

    D.    Litigating this Action Would Be Complex, Expensive and Time Consuming, and Would Delay Recovery. ..............................................................18

    E.    The Recommendations of Experienced Counsel Favor Approval of the Settlement. ...........................................................................................................18

II.    THE COURT SHOULD GRANT FINAL CLASS CERTIFICATION AND COLLECTIVE ACTION DESIGNATION .....................................................................19

III.   THE COURT SHOULD ALLOW CERTAIN ADDITIONAL CLASS MEMBERS TO PARTICIPATE IN THE SETTLEMENT.............................................19

CONCLUSION .....................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Alliance to End Repression v. City of Chicago,*
561 F. Supp. 537 (N.D.Ill. 1982) .................................................................. 15

*Boyd v. Bechtel Corp.,*
485 F. Supp. 610 (N.D. Cal. 1979) ...................................................... 10, 18, 19

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992)........................................................... 2, 10, 13

*Ellis v. Naval Air Rework Facility,*
87 F.R.D. 15, 18 (N.D. Cal. 1980 ....................................................... 8, 10, 18

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998)................................................................ 10, 18

*In re California Micro Devices Corp. Securities Litigation,*
2001 WL. 765146 (N.D.Cal. 2001).............................................................. 15

*Jenson v. Continental Finance Corp.,*
591 F.2d 477 (8th Cir. 1979).................................................................... 11

*Lorillard v. Pons,*
434 U.S. 575 (1978)............................................................................ 13

*Lynn's Food Stores, Inc. v. U.S.,*
679 F.2d 1350 (11th Cir. 1982).................................................................. 10

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
671 F. Supp. 819 (D. Mass 1987) ........................................................... 10, 18

*Mangone v. First USA Bank,*
206 F.R.D. 222 (S.D.Ill. 2001)................................................................. 15

*Matsushita Electric Industrial Co., Ltd. v. Epstein,*
516 U.S. 367 (1996) ............................................................................. 9

*Mayfield v. Barr,*
985 F.2d 1090 (D.C.Cir. 1993) ................................................................. 11

*Officers for Justice v. Civil Serv. Commission,*
688 F.2d 615 (9th Cir. 1982).................................................................. 9, 10

*In re Prudential Sec. Inc. Ltd Partnerships Litigation,*
163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................... 10

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003)................................................................ 2, 10

*Utility Reform Project v. Bonneville Power Admin.,*
869 F.2d 437 (9th Cir. 1989).................................................................... 9

1

# FEDERAL STATUTES AND REGULATIONS

2   Fed. R. Civ. P 23(a) .......................................................................................................... 1

3   Fed. R. Civ. P 23(e) .................................................................................................. 1, 2, 10

4   Fed. R. Civ. P. 23(e)(4)(A) ............................................................................................. 11

5   Fed. R. Civ. P. 30(b)(6) .................................................................................................. 17

6   29 C.F.R. §778.114 ........................................................................................................... 7

7   29 U.S.C.A. §212(b) ....................................................................................................... 13

8

# STATE STATUTES AND REGULATIONS

9
Cal. Bus. & Prof. Code § 17200 ........................................................................................ 8
10
Cal. Labor Code § 201 ....................................................................................................... 8
11
12  Cal. Labor Code § 202 ....................................................................................................... 8

13  Cal. Labor Code § 203 ....................................................................................................... 8

14  Cal. Labor Code § 218 ....................................................................................................... 8

15  Cal. Labor Code § 218.5 .................................................................................................... 8

16  Cal. Labor Code § 226 ....................................................................................................... 8

17  Cal. Labor Code § 226.7 .................................................................................................... 7

18  Cal. Lab. Code § 515(c) ..................................................................................................... 7

19  Cal. Lab. Code § 515(d) ..................................................................................................... 7

20  Cal. Labor Code § 510 ....................................................................................................... 8

21  Cal. Labor Code § 512 ....................................................................................................... 8

22  Cal. Labor Code § 1174 ..................................................................................................... 8

23  Cal. Labor Code § 1174.5 .................................................................................................. 8

24  Cal. Wage Order No. 4 ....................................................................................................... 8

25  Colorado Minimum Wage Act, C.R.S. § 8-6-101 ............................................................. 8

26  Colorado Minimum Wage Act, C.R.S. § 8-6-106 ............................................................. 8

27  Colorado Minimum Wage Order No. 22 ........................................................................... 8

28  Conn. Gen. Stats. § 31-58 .................................................................................................. 8

1    Conn. Gen. Stats. § 31-13a ........................................................................ 8

2    Conn. Gen. Stats. § 31-60 .......................................................................... 8

3    Conn. Gen. Stats. § 31-66 .......................................................................... 8

4    Conn. Gen. Stats. § 31-68 .......................................................................... 8

5    Conn. Gen. Stats. § 31-76c ........................................................................ 8

6    Ill. Admin. Code § 210.100 ........................................................................ 8

7    Ill. Comp. Stat. § 105/4a ........................................................................... 8

8    Ill. Comp. Stat. § 115/1 ............................................................................. 8

9    Kentucky Wage and Hour Laws, KRS § 337.010 ...................................... 8

10   Kentucky Wage and Hour Laws, KRS § 337.020 ...................................... 8

11   Kentucky Wage and Hour Laws, KRS § 337.055 ...................................... 8

12   Kentucky Wage and Hour Laws, KRS § 337.060 ...................................... 8

13   Kentucky Wage and Hour Laws, KRS § 337.070 ...................................... 8

14   Kentucky Wage and Hour Laws, KRS § 337.285 ...................................... 8

15   Kentucky Wage and Hour Laws, KRS § 337.320 ...................................... 8

16   Mass. Gen. Laws ch. 151 §§ 1A ............................................................... 8

17   Md. Code Ann. Labor & Employment Art. § 3-401 .................................. 8

18   Md. Code Ann. Labor & Employment Art. § 3-415 .................................. 8

19   Md. Code Ann. Labor & Employment Art. § 3-420 .................................. 8

20   Md. Code Ann. Labor & Employment Art. § 3-424 .................................. 8

21   Minn. Stat § 541.07(5) .............................................................................. 8

22   Minn. Stat. § 177.21 .................................................................................. 8

23   Minn. Stat. § 177.25(1) .............................................................................. 8

24   Minn. Stat. § 177.30 .................................................................................. 8

25   Minn. Rev. Stat. § 661 .............................................................................. 8

26   Minn. Rules 5200 ...................................................................................... 8

27   N.C. Admin. Code § 12.0801-12.0807 ..................................................... 8

28   N.C. Gen. Stat. § 95-25.1 .......................................................................... 8

1   N.C. Gen. Stat. 95-25.6 ................................................................................ 8

2   N.C. Gen. Stat. 95-25.7 ................................................................................ 8

3   N.C. Gen. Stat. 95-25.7A .............................................................................. 8

4   N.C. Gen. Stat. 95-25.8 ................................................................................ 8

5   N.C. Gen. Stat. 95-25.13 .............................................................................. 8

6   N.C. Gen. Stat. 95-25.15 .............................................................................. 8

7   New Jersey Wage and Hour Law, N.J.S.A. § 34:11-2 .................................. 8

8   New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56a ............................... 8

9   New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56a4 ............................. 8

10  Ohio Rev. Code Ann. § 4111.01 ................................................................... 8

11  Ohio Rev. Code Ann. § 4111.03 ................................................................... 8

12  Ohio Rev. Code Ann. § 4111.08 ................................................................... 8

13  Ohio Rev. Code Ann. § 4111.10 ................................................................... 8

14  Ohio Rev. Code Ann. § 4113.15 ................................................................... 8

15  Pa. Stat. § 333.103 ....................................................................................... 8

16  Pa. Stat. § 333.104(c) ................................................................................... 8

17  Pa. Stat. § 333.108 ....................................................................................... 8

18  Pa. Stat. §333.113 ........................................................................................ 8

19  Wis. Stat. § 103.001 ..................................................................................... 8

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE that on July 11, 2007, at 9:00 a.m., or as soon thereafter as the

3  matter may be heard, in Courtroom 3 of the United States District Court of the Northern District

4  of California, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California,

5  Plaintiffs Thomas Rosenburg, James Baxter, Robert Carlo, Alan Erece, Marcia Howie, Fnu

6  Kennedy, Vincent Letizio, Sherry Mattson, Steve Park, Michelle Peel, Denise Rambsel, Exaldo

7  Topacio, Laurence Tosi III, Robin Daniels, Rebecca Taylor, and Frank Vasterling ("Plaintiffs")

8  and Defendant International Business Machines Corporation ("IBM" or "the Company") will, and

9  hereby do, move this Court (1) to grant, pursuant to Federal Rule of Civil Procedure 23(e), final

10  approval of the Settlement Agreement, attached as Exhibit 1 to this Court's January 11, 2007

11  order granting preliminary approval, and entry of judgment in accordance with the Settlement

12  Agreement; and (2) to grant, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) and

13  FLSA Section 16(b), final class certification and collective action designation of the nationwide

14  settlement Class and the Subclasses conditionally certified in this Court's January 11, 2007 order.

15      The Motion is based on this Notice of Motion and Motion, the attached Memorandum of

16  Points and Authorities, the Settlement Agreement, the declarations of James M. Finberg, Steven

17  Zieff, Dan Rosenthal, Mark Patton, Eric Bishop and Abigail Schwartz, the pleadings and papers

18  filed in this case, and any oral argument this Court permits.

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs and Defendant International Business Machines Corporation ("IBM") jointly request that this Court grant final approval of the parties' settlement of Plaintiffs' claims for overtime compensation, related wage and hour claims, and ERISA claims. This settlement, in the amount of $65 million plus interest, is "fair, reasonable, and adequate" within the meaning of Federal Rule of Civil Procedure 23(e). The class has responded favorably, with nearly 30% of the class submitting claim forms and only de minimis objections and opt outs; Class Counsel has conducted sufficient discovery to enable them (who are among the most highly experienced attorneys in the country handling overtime class actions) to evaluate the claims and defenses in the action; and the settlement is in line with the strength of the Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation. *See Staton v. Boeing Co.*, 327 F.3d 938. 960 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

In connection with requesting final settlement approval, the parties also request that the Court confirm as final (1) the certification of the Class and Subclasses conditionally certified in its January 11, 2007 preliminary approval order; (2) the designation of the case as a collective action under the FLSA as preliminarily designated in this Court's January 11, 2007 order; and (3) the appointment of Plaintiffs as class representatives and of Plaintiffs' counsel as class counsel as initially ordered in this Court's January 11, 2007 order. [1]

---

[1] By two separate motions, Class Counsel will, consistent with the terms of the Settlement Agreement, apply for attorneys fees and costs and seek service awards for representative plaintiffs. IBM joins in the instant motion for final approval of the settlement and entry of judgment. IBM does not join, but does not oppose, Class Counsel's application for attorneys fees or the motion for service payments.

JOINT MOT FOR FINAL SETTLEMENT APPROVAL
AND FOR FINAL CLASS CERTIFICATION
  CASE NO. 06-00430 PJH                                    - 2 -

1

**THE CLASS ACTION SETTLEMENT AGREEMENT**

2    On January 11, 2007, the Court granted Plaintiffs' motion for an order conditionally

3    certifying settlement classes, preliminarily approving the class action settlement, directing

4    distribution to the Class of the notice of settlement, and setting a hearing for final approval.  The

5    Court determined that the settlement falls "within the ranges of possible Settlement approval,"

6    was "negotiated at arms length and was not collusive," and that "class counsel were fully

7    informed about the strengths and weaknesses of the Class' case when they entered into the

8    Settlement Agreement."  The Court further found that the plan of allocation "is rationally related

9    to the relative strengths and weaknesses of the respective claims asserted" and "is within the

10   range of possible approval."

11   **1. Settlement Fund**

12   The Settlement Agreement preliminarily approved by the Court provides for the creation

13   of a settlement fund of $65 million, plus interest, to compensate class members, to pay reasonable

14   attorneys' fees and costs, to pay costs of administration and investment of the settlement, and to

15   pay service payments to the named plaintiffs.

16   The $65 million fund will accrue interest from December 1, 2006 until IBM transfers the

17   settlement funds to the Claims Administrator, at an interest rate of 5.28125% per annum.  That

18   interest (net of taxes and any reasonable investment fees), which the parties estimate to be

19   approximately $1,600,000, will be added to the settlement fund for distribution to Qualified Class

20   Members.

21   Distributions to Qualified Class Members from the settlement fund will be made after

22   deductions for court-approved attorneys' fees and costs, court-approved service payments to the

23   named plaintiffs, a reserve for the reasonable costs of settlement administration,[2] any fees

24   associated with investing and liquidating the settlement fund, and any taxes incurred by IBM as a

25   

26   [2] The settlement administration activity undertaken by the Claims Administrator and the agreed-
upon cap for fees and expenses applicable to this work are detailed in the declaration of Eric W.
27   Bishop.  This cap forms the basis for the reserve for reasonable costs of settlement administration.
(*See* Settlement Agreement ¶ 1.20.)

28

1   result of investing the settlement fund.  (Settlement Agreement, ¶ 1.20.) [3]  All settlement proceeds

2   not paid out to satisfy the foregoing and not distributed to Class Members (*i.e.*, any uncashed

3   checks and unused reserves for claims administration) will be paid to a charitable organization.

4   (*Id.,* ¶ 3.1.)

5        In addition to the $65 million settlement fund, IBM will pay the employer's share of all

6   state and federal payroll taxes imposed by applicable law, including the employer's share of the

7   FICA tax and any federal and state unemployment tax due with respect to the amounts treated as

8   wages.  (*Id.*, ¶ 3.5.)

9        **2.  Plan of Allocation**

10       The Settlement Agreement includes a plan of allocation, based on a formula carefully

11  designed to fairly compensate Qualified Class Members.  Each Class Member who submitted a

12  timely Claim Form will receive a proportionate share of the Net Settlement Payment.  (Settlement

13  Agreement, ¶ 3.4.)  The calculation of each Qualified Class Member's share of the net settlement

14  payment will be based on the Class Member's weekly base earnings during the claims period and

15  adjusted for a "Job Factor" and "State Factor."  (*Id*.)

16       To calculate the employee's share, the Claims Administrator will start with a Class

17  Member's Base Earnings ("BE").  (Settlement Agreement, ¶ 3.4.)  The BE is the base salary for a

18  Pay Period or the sum of the daily payments for each day worked during each Pay Period during

19  the Recovery Period, based on the employee's bimonthly base salary.  (*Id.*)  For each Pay Period

20  in which the Class Member held a Covered Position during the Recovery Period, the BE for that

21  Pay Period is multiplied by two numeric factors:  (1) a factor for the Class Member's position

22  code and job band, and (2) a factor for whether or not the Class Member was employed in

23  California.  (*Id.*)  The result of this calculation is called the "Individual Class Member

24

25  _____

26  [3]  The settlement is not a claims-made settlement; IBM will not receive a reversion as to any part
    of the $65 million, plus interest.  Instead, those Class Members who timely submitted a Claim

27  Form will divide, according to the allocation formula, the whole $65 million, plus interest, less
    the deductions identified above.

28

Numerator."[4]  (*Id.*)  The Individual Class Member Numerator for each approved claim will be divided by the sum of Individual Class Member Numerators for all approved claims to determine the Resulting Decimal for each approved claim.  (*Id.*)  The Resulting Decimal for each approved claim will be multiplied by the amount of the Net Settlement Payment to determine the amount of the Net Settlement Payment to be awarded to each approved claim.  (*Id.*)  Class Members who have an Individual Class Member Numerator of zero but who still release claims under the Settlement Agreement will receive a minimum payment of $50.  (*Id.*)

**A. Job Position and Band Factors**

The multipliers are as follows for each of the job position and band factors used to calculate the proportionate share that is due to Class Members.

| Position Code & Job Band Factors: | Multiplier |
|---|---|
| Technical Services Professional (job codes 499A, 498Q, 498R, 498S, 498T or 498U), Band 6 | 20 |
| Technical Services Professional (job codes 499A, 498Q, 498R, 498S, 498T or 498U), Band 7 | 15 |
| Technical Services Professional (job codes 499A, 498Q, 498R, 498S, 498T or 498U), Band 8 | 6 |
| IT Specialist (job codes 594J or 5338), Band 6 | 6 |
| IT Specialist (job codes 594J or 5343), Band 7 | 2 |
| IT Specialist (job codes 594J or 4325), Band 8 | 1 |

These factors mean, for example, that if a Technical Services Professional/Band 6 and an IT Specialist/Band 7 were equivalent in all other regards and worked the same number of weeks

---

[4] If a Class Member worked in more than one type of Class Position during the Class Period – for example, the Class Member worked as an IT Specialist, Band 6 in California for one year during the Class Period, and worked as an IT Specialist, Band 6 in a different state for another year during the Class Period – the Class Member's share will be calculated for each type of Class Position and added together.

1    during the Class Period, the IT Specialist/Band 7 would receive only 1/10th of the amount of the

2    Net Settlement Payment that the Technical Services Professional/Band 6 would receive.

3           As explained above, the Position Code and Job Band factors are based on compromises

4    negotiated by the parties regarding the relative strengths and weaknesses of the claims of different

5    Class Members.  For example, the employees whom Class Counsel believe to have the strongest

6    legal arguments are the lowest banded employees in the Technical Services Professional position

7    codes.  Employees in higher job bands and in the IT Specialist job position codes have, in the

8    assessment of Class Counsel, arguably weaker claims.  This is because the job duties of those in

9    higher job bands and IT Specialist positions arguably involve more discretion and independent

10   judgment and are therefore more likely to be found to fall within the "administrative" exemption

11   to the overtime laws. (Finberg Decl., ¶ 43.)

12          Based on Class Counsel's thorough analysis of the legal and factual record, and the

13   parties' good faith negotiations over reasonable settlement allocations, the Job Position/Job Code

14   Factors above represent a fair and equitable apportionment of the Net Settlement Fund.  (*Id.*)

15          **B.  State Factor**

16          The following are the multipliers for the state-of-work factor used to calculate

17   proportionate shares.

18   **State Where Class Member Worked:**          **Multiplier**

19   California                                          **3**
20   All Other States                                    **1**

21          This factor takes into account Class Counsel's assertion that California law is much more

22   favorable to employees than the laws of other states, in a number of respects: (1) additional

23   claims; (2) more favorable method of calculating damages; and (3) more favorable legal standard.

24          For example, in California an employer is liable for waiting time penalties when it severs

25   an employee from employment and does not timely pay wages that have been earned, including

26   overtime wages.  Cal. Lab. Code §§ 201-203.  In addition, employers violating California's meal-

27

28

  
break requirements are further liable for an additional hour of wages at the regular rate for each day in which meal periods were not provided.  Cal. Lab. Code § 226.7.

Perhaps most importantly, the method by which overtime compensation is calculated in California differs from the calculation under federal law and other state laws.  California has rejected the "fluctuating work week" model of calculating overtime, which applies under federal law and other states' laws.  Under the "fluctuating work week" model of calculating overtime, a salaried employee's "regular rate of pay" is calculated by dividing the weekly salary by the actual hours worked in a week.  The overtime due under this model is .5 of the hourly rate for each hour worked in excess of 40 hours per week.  *See* 29 C.F.R. §778.114.  In California, a salaried employee's "regular rate of pay" is calculated by dividing the weekly salary by 40 hours (or an annual salary by 2080 hours).  Cal. Labor Code §515(c)-(d); *see also* DLSE Opinion Letter 1997-12-03-2.  The overtime due to a California employee is 1.5 times the hourly rate for each hour worked in excess of 8 hours per day or 40 hours per week.[5]

The Settlement Agreement reflects this very real difference in state law by applying a state factor of 3 for California employees.

### 3.  Release of Claims

The release in the Settlement Agreement provides as follows:

(A)     By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement, Plaintiffs and each individual Class Member who does not timely opt out pursuant to Section 2.4 forever and fully release Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan

---

[5] To demonstrate the difference between these models of calculation, below are two calculations of the amount of overtime due to a person who earns $60,000 per year, works 52 full weeks each year, and works 4 hours of overtime per week (2080 hours of straight time, 208 hours of overtime per year).

Fluctuating work week: Regular rate of pay = $60,000 divided by 2288 =  $26.22/hour. For each of the 208 overtime hours worked, this employee is entitled to an extra $13.11, for a total of $2,726.88.

California:  Regular rate of pay = $60,000 divided by 2080 =  $28.85/hour.  For each of the 208 overtime hours worked, this employee is entitled to $43.27, for a total of $9,000.16, i.e., over three times as much.

fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Litigation (collectively, the "Releasees") from any and all past and present matters, claims, demands, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal or state law, which any such Class Member has or might have, known or unknown, of any kind whatsoever, that are based upon, arise out of, or in any way relate to the facts, acts, transactions, occurrences, events or omissions underlying the Litigation and that arose prior to the entry of Judgment in this Litigation ("Released Claims").  The Released Claims include without limitation claims under state or federal law governing overtime pay, compensation, exempt status, classification, premium pay, penalty pay, meal periods, rest breaks, failure to pay wages upon termination, failure to provide benefit credits, failure to keep records of hours worked or compensation due, or any other alleged failure to provide compensation for time worked or provide benefit credits based on overtime or other compensation, including without limitation claims under the Employee Retirement Income Security Act ("ERISA"), the Fair Labor Standards Act ("FLSA"), the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, the California Labor Code and related regulations, Cal. Labor Code §§ 201, 202, 203, 218, 218.5, 226, 510, 512, 1174, 1174.5, and 1194, Cal. Wage Order No. 4, the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101, 8-6-106, and 8-6-118, the Colorado Minimum Wage Order No. 22, the Connecticut Minimum Wage Act, Conn. Gen. Stats. §§ 31-58 *et seq.*, 31-13a, 31-60, 31-66, 31-68, and 31-76c, the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 115/1 *et seq.* and the regulations promulgated thereunder, 820 Ill. Comp. Stat. §§ 105/4a and 105/12a, Ill. Admin. Code §§ 210.100 *et seq.* and 210.770, the Kentucky Wage and Hour Laws, KRS §§ 337.010 *et seq.*, 337.020, 337.055, 337.060, 337.070, 337.285, 337.320, and 337.385(1), Md. Code Ann. Labor & Employment Art. §§ 3-401 *et seq.*, 3-415, 3-420, and 3-424, 21 Mass. Gen. Laws ch. 151 §§ 1A *et seq.*, 1B and 15, Minn. Stat 541.07(5), Minn. Stat. §§ 177.21 *et seq.*, 177.25(1), 177.30, and 181.01 *et seq.*, Minn. Rules 5200 *et seq.*, 26 Minn. Rev. Stat. § 661 *et seq.*, the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-2 *et seq.*, 34:11-56a *et seq.*, 34:11-56a4, and 34:11-56a20, the New York Minimum Wage Act, New York Labor Law §§ 650 *et seq.* and 663(1), the New York Wage Payment Act, New York Labor Law § 190 *et seq.*, New York State Department of Labor regulations, 12 N.Y.C.R.R. part 142, N.C. Gen. Stat. §§ 95-25.1 *et seq.*, 95-25.6, 95-25.7, 95-25.7A, 95-25.8, 95-25.13, 95-25.15 and 95-25.22, 13 N.C. Admin. Code §§ 12.0801-12.0807, Ohio Rev. Code Ann. §§ 4111.01 *et seq.*, 4111.08, 4111.03, 4111.10, 4113.15, 43 Pa. Stat. §§ 333.103 *et seq.*, 333.104(c), 333.108 and 333.113, Wis. Stat. §§ 103.001 *et seq.* and 103.13, and Wis. Admin. Code §§ DWD 274.01 *et seq.*, DWD 274.06 and

DWD 274.07, and Was. Rev. Code Sec. 49.46.090, 49.46.100, 49.46.130, and 49.46.070, and the statutes and regulations of all other states relating to payment of wages and overtime.

(B)      Each Class Member who does not timely opt out is deemed to have acknowledged that this Agreement is intended to include in its effect all claims arising from or related to this lawsuit or the facts alleged therein, including both asserted and unasserted claims, and including those claims that each or any Class Member does not know or suspect to exist in his or her favor against Defendant. The Plaintiffs and each Class Member who does not timely opt out of this Agreement waive all rights and benefits afforded by section 1542 of the Civil Code of the State of California, understanding the significance of that waiver. Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

(Settlement Agreement, ¶ 4.1.)[6]  This release is incorporated into each individual Claim Form.  In addition to this release, Class Counsel and the named plaintiffs release claims for attorneys' fees and costs in excess of any amount approved by the Court (*Id.,* ¶ 4.2); and the named plaintiffs generally release individual claims, with limited exceptions, in exchange for service payments (*Id.,* ¶ 3.3, Exh. E).

## ARGUMENT

### I.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AND ENTER JUDGMENT IN ACCORDANCE WITH THE SETTLEMENT AGREEMENT

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome and the typical length of the litigation.  As a result, courts should exercise their discretion to approve settlements "in recognition of the policy

---

[6] There have been no objections to the scope of the release.  The release, which is applicable to all Class Members who did not timely opt out, appropriately covers class claims asserted in the litigation and related claims that could have been asserted arising out of the facts alleged.  *See Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367 (1996) (affording preclusive affect to class action settlement agreement by which class members who neither opted out nor submitted claim forms nonetheless released claims broader than claims asserted in that suit).

1  encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd Partnerships Litig.*,

2  163 F.R.D. 200, 209 (S.D.N.Y. 1995).

3  To approve a proposed settlement of a class action under Fed. R.Civ. P. 23(e), the Court

4  must find that the proposed settlement is "fair, adequate and reasonable," recognizing that "'it is

5  the settlement taken as a whole, rather than the individual component parts, that must be

6  examined for overall fairness.'" *Staton,* 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150

7  F.3d 1011, 1026 (9th Cir. 1998)).  Similarly, under the FLSA, a settlement that results in waiver of

8  FLSA claims should be approved where it is "entered as part of a stipulated judgment approved

9  by the court after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679

10  F.2d 1350, 1352-53 (11th Cir. 1982).

11  When determining whether to grant final approval, "the court's intrusion upon what is

12  otherwise a private consensual agreement negotiated between the parties to a lawsuit must be

13  limited to the extent necessary to reach a reasoned judgment that the agreement is not the product

14  of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement,

15  taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d

16  at 625.  The Court should balance "the strength of plaintiffs' case; the risk, expense, complexity,

17  and likely duration of further litigation; the risk of maintaining class action status throughout the

18  trial; the amount offered in settlement; the extent of discovery completed, and the state of the

19  proceedings; the experience and views of counsel . . . and the reaction of the class to the proposed

20  settlement." *Class Plaintiffs,* 955 F.2d at 1291.  "The recommendations of plaintiffs' counsel

21  should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622

22  (N.D. Cal. 1979); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass

23  1987); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("the fact that

24  experienced counsel involved in the case approved the settlement after hard-fought negotiations is

25  entitled to considerable weight").

26  **A.**   **The Terms of the Settlement Are Fair, Adequate and Reasonable.**

27  The settlement creates a common fund of $65 million, plus interest, plus the employer's

28  share of payroll taxes.

1    Class Members will receive settlement payments without waiting years for payment, and

2    without facing the substantial risk of non-recovery.  To participate in the settlement, Class

3    Members needed only complete a two-page Claim Form with their social security number and

4    sign and date an affirmation that they worked at least some overtime and that they want to

5    participate in the settlement and release claims therein.

6        Each Class Member's recovery is to be based upon that plaintiff's actual salary, the actual

7    number of Pay Periods worked during the Covered Period, and the job actually worked.  It will

8    also reflect the statute of limitations in the state where such Class Member worked (unless there is

9    no such applicable state law or the state statute of limitations is shorter than the FLSA's statute of

10   limitations, in which case the FLSA will govern).  No Class Member will have to prove the pay

11   periods that he or she actually worked or his or her regular rate of pay.  Instead, IBM has

12   provided that information from its payroll records.  (Settlement Agreement, ¶ 5(A).)

13       **B.    The Reaction of the Class Supports Approval of the Settlement.**

14       Notice was sent to 37,642 Class Members on February 23, 2007.  (Bishop Dec., ¶ 3.)

15   Over 11,000 class members, or approximately 30% of the class, have filed Claim Forms.  (*Id.* ¶

16   6.)  In contrast, approximately 1% (327 individuals) opted out of the settlement, and fewer than

17   .02% (6 individuals) submitted objections.[7]  (*Id.* ¶¶ 13, 14.)  This indicates overwhelming support

18   for the settlement and strongly favors its approval.

19       Moreover, none of the objections provides grounds upon which to reject the settlement.

20       1.  <u>Accounting for actual hours worked</u>: Michael Kordus objected that the settlement

21   should account for actual hours worked.  John Ajani objected to the settlement because he claims

22   _____

23   [7]  In addition to the six objectors, two individuals (Mr. Lively and Mr. Kordus) opted out of the
     settlement and also submitted objections.  Paragraph 2.7(B) of the Settlement Agreement
24   provides that only Class Members who have not opted out can file objections.  *See also*
     Fed.R.Civ.P. 23(e)(4)(A) (providing "[a]ny class member may object to a proposed settlement");
25   *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C.Cir. 1993) (holding "[t]hose who are not class
     members, because they are outside the definition of the class or have opted out" lack standing to
26   object to class settlement); *Jenson v. Continental Finance Corp.*, 591 F.2d 477, 482 n. 7 (8th Cir.
     1979) ("Opt-outs ... are not members of the class and hence are not entitled to the protection of
27   Rule 23(e).").  While their objections are not technically valid, we nonetheless address their
     arguments in this brief.

28

1   to have worked more overtime hours than he will be compensated for under the settlement.

2   Because IBM classified Class Members as exempt, it did not keep records of hours worked by all

3   Class Members.  IBM has no records of actual hours worked for Class Members (Finberg Decl., ¶

4   42), and a number of Class Members claimed that they worked more hours than they recorded

5   (*Id.*).  Providing a method for each of the 37,642 Class Members to attempt to *prove* actual hours

6   worked – such as through hearings or declarations – would be time consuming and expensive.

7   (See Patton Decl., ¶ 4, Rosenthal Decl., ¶ 5.)

8          Each individual's recovery, therefore, will be based not on actual hours worked, but upon

9   a formula that takes into account the number of Pay Periods worked during the Covered Period.

10  Courts regularly approve class action overtime settlements that compensate class members based

11  on weeks or pay periods worked where, as here, payments cannot be based on actual hours

12  recorded.  *See, e.g., Gerlach v. Wells Fargo &Co.*, Case No. 05-CV-0058-CW (N.D. Cal. Jan. 19,

13  2007) (Finberg Decl., Exh. A); *Gianetto v. Computer Sciences Corp.*, Case No. 03-CV-8201 GPS

14  (C.D. Cal. July 15, 2005) (Finberg Decl., Exh. B); *Zuckman v. Allied Group, Inc.*, Case No. C 02-

15  05800 SI (N.D. Cal. Sept. 7, 2004) (Finberg Decl., Exh. C); *Thomas v. California State*

16  *Automobile Ass'n*, case No. CH 217752-0 (Alameda Co. Super. Ct., May 7, 2002) (Finberg Decl.,

17  Exh. D); *see also* Finberg Decl., ¶ 42; Zieff Decl., ¶¶ 12-13; Patton Decl., ¶ 3; Rosenthal Decl., ¶

18  3.

19         Any Class Member who believes that he or she is entitled to more back pay than the

20  settlement provides had the option of opting out of the settlement.

21         2.  Reclassification:  Gary Lively, Herbert Yates and Michael Kordus objected that the

22  Settlement Agreement does not require IBM to reclassify its employees as non-exempt going

23  forward, and does not require IBM to begin keeping records and pay overtime going forward.  As

24  a preliminary matter, the FLSA does not provide a private cause of action for injunctive relief.

25  *See* 29 U.S.C.A. §212(b); *Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("in construing the

26  enforcement sections of the FLSA, the courts had consistently declared that injunctive relief was

27  not available in suits by private individuals but only in suits by the Secretary").  Although

28  Plaintiffs did seek injunctive relief on behalf of some Class Members in particular states (*See*

1    Second Amended Complaint), they did not seek injunctive relief for all Class Members, and,

2    specifically, did not seek such relief for the states where Mr. Lively and Mr. Yates live (Florida

3    and Alabama).[8]

4          Moreover, the class release in the Settlement Agreement does not release any rights

5    accruing after the date of final settlement approval.  (Settlement Agreement, ¶ 4.1(A).)  Thus, no

6    Class Member is harmed by the absence of injunctive relief in the settlement.

7          3. Likelihood of success:  William Smith and Chad Ross objected that the plan of

8    distribution should not take into account the likelihood of success on the merits or the laws of the

9    states where Class Members worked.  But the Ninth Circuit has expressly acknowledged that the

10   strength of a claim is an appropriate factor to consider in approving a class settlement.  *See Class*

11   *Plaintiffs,* 955 F.2d at 1291.  Moreover, as explained above, it is entirely appropriate to factor into

12   the allocation scheme the applicable law of the state in which the Class Member worked,

13   especially where, as here, a particular state (i.e., California) affords rights and protections not

14   recognized in other states.  Among other things, employees wrongfully denied overtime pay in

15   California can recover approximately three times as much in back wages as employees in other

16   states because of the method of calculating damages under California law, and California

17   provides for recovery for missed meal or rest breaks, provides waiting time penalties, and has

18   narrower exemptions from its overtime law compared to certain states.  *See supra* at 6-7.

19         4. Miscellaneous:  Gary Lively and Herbert Yates complained that the settlement will be

20   inequitably distributed.  They did not point to any aspect that they claim is inequitable.  As

21   explained above, the distribution formula is appropriate because it is based upon the factors

22   employed under federal and state law to determine the amount of overtime compensation due,

23   taking into consideration the risk of nonsuccess.

24

25

26   [8] Mr. Kordus lives in Pennsylvania (a state for which injunctive relief was sought), but he opted
     out of the class and was not entitled to file an objection.

27

28

1    John Ajani objected that the $65 million settlement fund is inadequate.  However, his

2    objection fails to explain why this amount is not sufficient in the context of a negotiated

3    settlement.  Any evaluation of the settlement amount must consider the costs associated with

4    litigating this matter through trial and the risk of nonsuccess both at the class certification stage

5    and on the merits.  Had the case proceeded in litigation, IBM would have vigorously opposed

6    Plaintiffs' motions for collective action designation and class certification.  IBM also vigorously

7    maintained that all of the class members are exempt from the overtime laws pursuant to the

8    "computer professional" and "administrative" exemptions from the overtime laws, and that the

9    plain language of the ERISA plans defeat the ERISA claims.  The parties negotiated the $65

10   million settlement fund through extensive arms-length negotiations by discounting the potential

11   recovery for the risk that Plaintiffs would not succeed in certifying some, or any, of the proposed

12   classes, or that Plaintiffs would lose some or all of their claims on the merits.  (*See* Finberg Decl.,

13   ¶ 40.)  Moreover, any individual who believed that he or she could obtain more money by filing a

14   separate suit was free to opt out.

15   Frederick Smith objected that by classifying employees as exempt, IBM avoided payroll

16   taxes.  Under the Settlement Agreement, IBM will pay appropriate payroll taxes on the back-

17   wages portion of each Class Member's settlement recovery.  (Settlement Agreement, ¶ 3.5(C).)

18   Mr. Smith also complained that the Covered Period is too short, and claims it should go back to

19   1994.  As explained above, the Covered Period is calculated based upon the applicable state or

20   federal statute of limitations.  (Settlement Agreement, ¶ 1.4.)

21   Frederick Smith and Michael Kordus objected that IBM agreed to settle this case without

22   admitting liability.  This is not a reason to reject the settlement.  Defendants typically settle

23   claims without admitting liability, and courts regularly approve those settlements.  *See, e.g.,*

24   *Mangone v. First USA Bank,* 206 F.R.D. 222, 230 (S.D.Ill. 2001) ("the absence of an admission

25   of liability" does not "make the Settlement unfair."); *Alliance to End Repression v. City of*

26   *Chicago,* 561 F.Supp. 537, 554 (N.D.Ill. 1982) ("It would defeat an important purpose of [a class

27   action] settlement, and therefore render settlements less attractive to the parties, if the settlement

28   agreement were required to include admissions of wrongdoing by defendants, or if the court itself

JOINT MOT FOR FINAL SETTLEMENT APPROVAL
AND FOR FINAL CLASS CERTIFICATION
CASE NO. 06-00430 PJH                                    - 14 -

made such findings in connection with a proposed [class action] settlement."); *In re California Micro Devices Corp. Securities Litigation,* 2001 WL 765146, *2 (N.D.Cal. 2001) (approving class action settlement where defendant did not admit liability); *see also* Finberg Decl., ¶ 44. Class Members suffer no concrete prejudice from Defendant's non-admission of liability.[9]

Brenda Wynne objected to the settlement on the grounds that she does not believe Plaintiffs are entitled to any money.  Such an objection highlights the risk that Class Members would have faced in presenting this case to a jury.[10]

C.    **The Parties Conducted Extensive Investigation and Analysis and the Settlement Was Reached Through Arms-Length Negotiations.**

The parties and their counsel engaged in extensive fact-gathering, informal and formal discovery, and motion practice before reaching the Settlement Agreement.

Plaintiffs' Counsel conducted significant investigation of this matter prior to filing the initial complaint.  (Finberg Decl., ¶¶ 14-16.)  On January 24, 2006, Plaintiffs Rosenburg Topacio and John Shelly[11] filed the initial Complaint, alleging violations of ERISA, the FLSA, and California and New York wage laws.  (Complaint, Docket Entry No. 1.)  On March 13, 2006, a First Amended Complaint was filed, adding Plaintiffs Baxter, Mattson, Park, and Kennedy and new claims under the wage laws of Colorado, Illinois, Minnesota, and New Jersey.  (First Amended Complaint, Docket Entry No. 14.)  Thereafter, Plaintiffs' Counsel continued to investigate the claims in the case, and on November 22, 2006 filed a Second Amended Complaint to add additional plaintiffs and state-law claims.  (Second Amended Complaint, Docket Entry No. 75.)[12]

---

[9] Gary Lively and Herbert Yates objected that this is a case to "gain compensation for the attorneys."  Plaintiffs' request for attorneys fees – which is for no more than the 25% "benchmark" established by Ninth Circuit authorities – is addressed separately in Plaintiffs' Motion for Attorneys' fees, filed concurrently with this motion.

[10] Under Rule 23(c), the Court is the guardian of Class Interests, not of IBM's interests.  IBM is represented by experienced counsel.  IBM has entered into this Settlement Agreement voluntarily.

[11] John Shelly was dismissed without prejudice on June 7, 2006.  (*See* Docket Entry No. 58.)

[12] The Second Amended Complaint added Plaintiffs Erece, Letizio, Vasterling, Moreland, Carlo, Tosi, Peel, Rambsel, Dibbs, and Howie and new claims under the wage laws of Connecticut, Kentucky, Massachusetts, Maryland, North Carolina, Ohio, Pennsylvania, Washington, and

(…continued).

On March 29, 2006, IBM filed a Motion to Dismiss in Part and Strike In Part the Plaintiffs' First Amended Complaint.  (Docket Entry No. 19.)  Among other things, the Company asked this Court to dismiss Plaintiffs' ERISA allegations for failure to state a claim and to strike Plaintiffs' claim for punitive damages under Illinois law.  (*Id.*)  The parties fully briefed the issues raised in the motion.  (Docket Entry Nos. 19, 25, 45, 48.)  The Court denied the motion as to Plaintiffs' ERISA claim, but granted the motion as to Plaintiffs' request for punitive damages under Illinois law.  (Docket Entry No. 59.)

The parties also engaged in extensive discovery.  They commenced formal discovery immediately following their April 19, 2006 Rule 26(f) conference.  (Finberg Decl., ¶ 25.)  Initially, Plaintiffs sought written and testimonial information regarding IBM's employment practices.  (*Id.* at ¶¶ 25-28.)  IBM conducted written and testimonial discovery regarding, among other things, the Plaintiffs' individual and class liability and damages claims and Plaintiffs' contentions regarding class and collective action certification.  (*Id.* at ¶¶ 30-31.)  IBM provided responses to 67 requests for production of documents and produced tens of thousands of pages of documents, including data from IBM's payroll and human resources databases, job descriptions and other documents related to job duties and responsibilities, job posting data, orientation materials, pension plan documents, human resource policies and procedures, compensation policies and procedures, and documents related to Company classification decisions.  (Finberg Decl., ¶¶ 25-27.)  Similarly, Plaintiffs provided written responses to numerous interrogatories and requests for production of documents, and produced thousands of pages of documents.  (Finberg Decl., ¶¶ 30-31.)

IBM also provided Plaintiffs with a list of putative class members, and Plaintiffs' counsel sent a pre-class certification letter to the putative class members, providing information about the suit.  (*Id.*, ¶¶ 20-21.).  As a result of this letter, Plaintiffs counsel received hundreds of calls from potential class members, catalogued their claims and evidence, and drafted more than seventy

---

(…continued).
Wisconsin.

1    declarations.  (*Id.*, ¶ 26.)  All of the firms representing the Plaintiffs participated in this effort,

2    devoting substantial time and resources to communicating with plaintiffs and gathering

3    declarations. (*Id.*, ¶¶ 22-24.)

4         The parties also conducted numerous depositions.  IBM deposed Plaintiffs Rosenburg,

5    Baxter, Mattson, Park, Kennedy, and Topacio.  (*Id.*, ¶ 31.)  Plaintiffs deposed five Company

6    witnesses pursuant to Fed. R. Civ. P. 30(b)(6), exploring topics such as IBM's policies and

7    procedures for classifying positions, the Company's organizational structure, and the job duties

8    and responsibilities of potential Class Members.  (*Id.*, ¶ 28.)

9         Plaintiffs' counsel also engaged statistical experts Drogin, Kakigi & Associates to analyze

10   the data produced by IBM, and to calculate the potential damages in the case.  (*Id.*, ¶ 34.)

11        After the initial rounds of discovery had been completed, the parties agreed to conduct a

12   private mediation with the San Francisco firm of Gregorio, Haldeman, Piazza, Rotman &

13   Matityahu.  (*Id.*, ¶ 33.)  Prior to this mediation, both parties prepared detailed mediation briefs

14   that included their respective assessments of the case and appendices containing several hundred

15   pages of supporting documentation and evidentiary materials.  (*Id.*, ¶ 35.)  The parties began an

16   initial mediation session on September 13, 2006, after which they agreed to a brief stay of the

17   proceedings and to a second mediation session to occur on October 19, 2006.  (*Id.*, ¶¶ 36-37.)

18   Between the mediation sessions, the parties exchanged several communications responding to

19   each others' respective positions and points of disagreement. (*Id.*, ¶ 36.)  On October 19, 2006,

20   the parties held their second mediation session, at the conclusion of which the parties reached a

21   settlement in principle.  (*Id.*, ¶ 37.) Thereafter, the parties continued their arms-length

22   negotiations, and ultimately finalized the Settlement Agreement on November 22, 2006.  (*Id.*, ¶¶

23   37-38.)

24        The Settlement Agreement is the product of extensive factual and legal analysis

25   performed on both sides, and arms-length negotiations by counsel with significant experience and

26   expertise in employment class action litigation.  Plaintiffs' counsel were in a position to evaluate

27   the reasonableness of the settlement as a result of their extensive investigation in this action and

28   their experience in other similar wage and hour actions.  (*Id.*, ¶¶ 4-11, 39.)

**D.    Litigating this Action Would Be Complex, Expensive and Time Consuming, and Would Delay Recovery.**

As the Settlement Agreement demonstrates, this action involved numerous categories of overtime claims under several state statutory schemes plus FLSA and ERISA.  Litigating these claims, which arose over a period of more than seven years (between January 24, 2000 (New York) and the present), would require substantial and expensive discovery and pre-trial motions, as well as the consideration, preparation and presentation of voluminous documentary evidence and the preparation and analysis of expert reports.  Trial itself would require the use of a number of expert witnesses at the damages phase, and would involve numerous legal and factual issues, some of them complex.  As is typical with any case, but especially so with class actions, appeals would most probably follow with the result that any payments to Class Members would likely occur only after significant and substantial delay.

In contrast, the settlement will yield a prompt, certain, and very substantial recovery for the Class.  Such a result will benefit the parties and the court system.

**E.    The Recommendations of Experienced Counsel Favor Approval of the Settlement.**

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Boyd*, 485 F.Supp. at 622; *Hanlon,* 150 F.3d at 1026; *M. Berenson Co.*, 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18.  Here, counsel for both parties endorse the settlement as fair, adequate, and reasonable.

In addition, the recommendation of class counsel should be given a presumption of reasonableness. *See, e.g.*, *Boyd*, 485 F. Supp. at 622.  Class Counsel have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one.  (Finberg Decl., ¶¶ 4-11; declarations and resumes of Class Counsel, attached as Exhibits 1-9 to Borgen Decl. in Support of Motion for an Award of Attorneys' Fees and Reimbursement of Costs.)  Class Counsel have conducted extensive investigation of this case, including by reviewing tens of thousands of documents produced by IBM, deposing five IBM corporate representatives, reviewing data on potential class members, and interviewing more than one thousand putative class members regarding their job duties and overtime hours.  (Finberg Decl., ¶¶ 14-36.)  The fact that qualified

and well-informed counsel endorse the settlement as being fair, reasonable, and adequate heavily

favors this Court's approval of the settlement.

## II.   THE COURT SHOULD GRANT FINAL CLASS CERTIFICATION AND COLLECTIVE ACTION DESIGNATION

The Court's January 11, 2007 order conditionally certified the settlement Class and

Subclasses pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and

conditionally designated the case as an FLSA collective action.  The Court ruled that, for

purposes of settlement, the Class and Subclasses sufficiently meet all the Rule 23 requirements as

well as the FLSA collective action requirements.  The Court also appointed the named plaintiffs

as class representatives and Plaintiffs' counsel as counsel for the Class.  No member of the Class

objects to class certification, collective action designation, or the appointment of the class

representatives or class counsel.  For these reasons, and the reasons set forth in Plaintiffs' Motion

for Preliminary Settlement Approval, the Court should grant final certification and collective

action designation for purposes of settlement of this matter and should confirm the appointment

of the class representatives and class counsel.

## III.   THE COURT SHOULD ALLOW CERTAIN ADDITIONAL CLASS MEMBERS TO PARTICIPATE IN THE SETTLEMENT

The parties jointly request that the Court deem timely and appropriately submitted the

Claim Forms and Releases submitted by the following Class Members, notwithstanding the

failure to meet certain technical requirements of the Settlement Agreement or the need for further

information to confirm eligibility for settlement payments:

1. Thirteen Class Members (Arthur Anderson, Elizabeth Briones, Jeanine Chaplik, Joseph

Evans, Munish Gupta, Christopher Holden, Russell Martin, Michael McKinney, Jeffrey Metzger,

Dennis Miller, Michael Onofrietto, Deryl Tezap, and Jim Zettlemoyer) submitted Claim Forms

and Releases by means other than first class U.S. Mail.  (Bishop Decl., ¶ 7.).  Those Claim Forms

and releases were complete and were received by the Claims Administrator by the May 4, 2007

deadline for claims submission.  *Id.*  The parties jointly petition the Court to deem these Claim

Forms and Releases timely and appropriately submitted under the Settlement Agreement.

2.   Thirty-five Class Members (Lester Alford, Steven Baldridge, Jawahar Barua, Janet Baugus, Jeffrey Benn, Larry Bishop, Michael Bohr, Prahlada Chinthalapuri, Faisal Faruque, Paul Gervais, Barrie Grozier, Sudheer Guduru, Bernadette Heiser, Bryan Hill, George Hollister, Sonia Khosla, Timothy King, Edgar Licis, Heath Matthias, Kevin McDermott, Stacia McFadden, Danika Miller, Bernard Newton, Heena Patel, Diomedes Perez, P Marie Rapp-Fuller, Anthony Sangiorgi, Anand Satyadev, William Schilhab, Stephen Thomas, Gerald Urling, Eleanor Volynsky, Timothy Watson, Anthony Wilcox, and James Yurko) submitted incomplete Claim Forms and Releases that were received by the Claims Administrator in advance of the May 4, 2007 deadline for submission of claims.  (Bishop Decl., ¶ 8.)  With the parties' approval, the Claims Administrator sent those individuals "cure letters" enabling them to provide completed information after the May 4, 2007 deadline, so long as the completed information was received by the Claims Administrator on or before June 21, 2007 and thus timely enough to avoid delays in seeking settlement approval or calculating or distributing settlement proceeds.  (*Id.,* Exh. B.)  The parties jointly petition the Court to deem these Claim Forms and Releases timely so long as the completed information was received by the Claims Administrator on or before June 21, 2007.

3.   Representatives of five deceased Class Members (Janis Babyak, Paul Lazarus, Daniel Larson, Christophe McGarry and David Pendley) submitted Claim Forms and Releases that were received by the Claims Administrator in advance of the May 4, 2007 deadline for submission of claims, but that required additional information to enable the Claims Administrator to assess eligibility for settlement payments.  (Bishop Decl., ¶ 16.)  With the parties' approval, the Claims Administrator sent those individuals letters explaining that the estates of the deceased Class Members could participate in the settlement, so long as the additional information was received by the Claims Administrator on or before June 21, 2007 and thus timely enough to avoid delays in seeking settlement approval or calculating or distributing settlement proceeds.  (*Id.,* Exh. M.) The parties jointly petition the Court to deem these Claim Forms and Releases timely and appropriately submitted so long as the additional information was received by the Claims Administrator on or before June 21, 2007.

1      4.  One Class Member, David A. Gallagher, was not able to submit a Claim Form and

2  Release within the deadline because he was deployed in the military during the claims period.

3  (Bishop Decl., ¶ 9, Exh. C.)  This individual submitted his Claim Form and Release, along with a

4  written explanation for the delay, within 14 days of the deadline and, thus, within such time as not

5  to delay the process of seeking final approval of the settlement or calculating or distributing

6  settlement proceeds.  (*Id.*)  The parties jointly petition the Court to deem this Claim Form and

7  Release timely submitted.

8      5.  Three Class Members (Ansuya Patel, John Stouffer and Paul Costanza) were not able

9  to submit Claim Forms and Releases within the deadline because, through no fault of their own,

10  their receipt of the class notice was delayed.  (Bishop Decl., ¶ 10, Exhs. D, E, F.)  These

11  individuals submitted their Claim Forms and Releases, along with a written explanation for the

12  delay, within 14 days of the deadline and, thus, within such time as not to delay the process of

13  seeking final approval of the settlement or calculating or distributing settlement proceeds.  (*Id.*)

14  The parties jointly petition the Court to deem these Claim Forms and Releases timely submitted.

15                                    **CONCLUSION**

16      For the reasons stated, the parties respectfully request that this Court grant their Joint

17  Motion for Final Settlement Approval and for Final Class Certification.

18

19

20  DATED:          June 6, 2007                    Respectfully submitted:

21                                              _____/s/ James M. Finberg_____

22                                                  James M. Finberg

23                                              James M. Finberg
                                                Eve Cervantez
24                                              Rebekah B. Evenson
                                                Altshuler Berzon LLP
25                                              177 Post Street, Ste. 300
                                                San Francisco, CA 94108
26                                              Telephone:  (415) 421-7151
                                                Facsimile:  (415) 362-8064
27                                              Email:  jfinberg@altshulerberzon.com
                                                Email:  ecervantez@altshulerberzon.com
28                                              Email:  revenson@altshulerberzon.com

1    Kelly M. Dermody
     Jahan C. Sagafi
2    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
     275 Battery Street, 30th Floor
3    San Francisco, CA 94111
     Telephone: (415) 956-1000
4    Facsimile: (415) 956-1008
     Email: kdermody@lchb.com
5    Email: jsagafi@lchb.com

6    Adam T. Klein
     Justin M. Swartz
7    Piper Hoffman
     OUTTEN & GOLDEN
8    3 Park Ave., 29th Floor
     New York, NY 10016
9    Telephone: (212) 245-1000
     Facsimile: (212) 977-4005
10   Email: atk@outtengolden.com
     Email: jms@outtengolden.com
11   Email: ph@outtengolden.com

12   Steven G. Zieff
     David A. Lowe
13   Kenneth J. Sugarman
     RUDY, EXELROD & ZIEFF, LLP
14   351 California Street, Suite 700
     San Francisco, CA 94104
15   Telephone: (415) 434-9800
     Facsimile: (415) 434-0513
16   Email: szieff@reztlaw.com
     Email: dal@reztlaw.com
17   Email: kjs@reztlaw.com

18   Todd F. Jackson
     Claire Kennedy-Wilkins
19   Lindsay E. Nako
     LEWIS FEINBERG LEE
20   RENAKER & JACKSON, P.C.
     1330 Broadway, Suite 1800
21   Oakland, CA 94612
     Telephone: (510) 839-6824
22   Facsimile: (510) 839-7839
     Email: tjackson@lewisfeinberg.com
23   Email: ckwilkins@lewisfeinberg.com
     Email: lnako@lewisfeinberg.com

24
     J. Derek Braziel
25   LEE & BRAZIEL, LLP
     208 N. Market Street
26   Dallas, TX 75202
     Telephone: (214) 749-1400
27   Facsimile: (214) 749-1010
     Email: jdbraziel@l-b-law.com

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ira Spiro
Gregory N. Karasik
SPIRO MOSS BARNESS LLP
11377 W. Olympic Blvd., Fl. 5
Los Angeles, CA 90064-1625
Telephone:  (310) 235-2468
Facsimile:  (310) 235-2456
Email:  ispiro@smbhblaw.com
Email:  rsobie@smbhblaw.com

David Borgen
Roberta Steele
GOLDSTEIN, DEMCHAK, BALLER, BORGEN &
DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Telephone:  (510) 763-9800
Facsimile:  (510) 835-1417
Email:  borgen@gdblegal.com
Email:  steele@gdblegal.com

Richard Burch (24001807 [TX])
BRUCKNER BURCH, PLLC
1000 Louisiana, Suite 1300
Houston, Texas 77002
Telephone:  (713) 877-8788
Facsimile:  (713) 877-8065
Email:  rburch@brucknerburch.com

*Class Counsel*

DATED:      June 6, 2007                     /s/ Matthew W. Lampe
                                             Matthew W. Lampe

Glen D. Nager
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
Email:  gdnager@jonesday.com

Donna M. Mezias
JONES DAY
555 California Street, 26th Fl.
San Francisco, CA  94104
Telephone:  (415) 626-3939
Facsimile:  (415) 875-5700
Email:  dmezias@jonesday.com

1
2
3
4

Matthew W. Lampe
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, OH  43215
Telephone:  (614) 469-3939
Facsimile:  (614) 461-4198
Email:  mwlampe@jonesday.com

5

*Attorneys for Defendant IBM*

6

7

ECF CERTIFICATION

8

      Pursuant to General Order No. 45.X.B., the filing attorney attests that he has obtained

9

concurrence regarding the filing of this document from each of the signatories to the document.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOINT MOT FOR FINAL SETTLEMENT APPROVAL
AND FOR FINAL CLASS CERTIFICATION
 CASE NO. 06-00430 PJH

- 24 -