David Borgen (SBN 099354)
Roberta L. Steele (SBN 188198)
Heather Mills (SBN 215293)
GOLDSTEIN, DEMCHAK, BALLER,
      BORGEN & DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
Telephone:  (510) 763-9800
Facsimile:  (510) 835-1417

*Class Counsel*
*[additional counsel on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| THOMAS ROSENBURG et al., on behalf of themselves and classes of those similarly situated,<br><br>          Plaintiffs,<br><br>    vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>          Defendant. | Case No. CV 06-00430 PJH<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:         July 11, 2007<br>Time:        9:00 a.m.<br>Courtroom:   3, 17th Floor<br>Hon. Phyllis J. Hamilton |

1

## **TABLE OF CONTENTS**

2                                                                                        **PAGE**

3    NOTICE OF MOTION AND MOTION...................................................................... 1

4    MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 2

5    INTRODUCTION .............................................................................................. 2

6    STATEMENT OF FACTS ................................................................................. 3

7          A.      Background and Procedural Posture ............................................ 3

8          B.      The Settlement Fund.................................................................... 4

9          C.      Efforts of Class Counsel .............................................................. 6

10                 1.      Informal Discovery............................................................ 6

11                 2.      Formal Discovery .............................................................. 7

12                 3.      Legal Research ................................................................. 8

13                 4.      Mediation.......................................................................... 9

14                 5.      Post-Mediation Work ...................................................... 10

15   ARGUMENT ................................................................................................. 11

16         A.      The Equitable Common Fund Doctrine Applies to This Case Because Class
                   Counsel's Efforts Resulted in the Creation of a Common Fund that Significantly
17                 Benefits the Class. ..................................................................... 12

18         B.      The Fee Award Should be Calculated as a Percentage of the Common Fund. ............... 13

19         C.      The Requested Fee Award is Consistent with the Ninth Circuit's Established
                   25% Benchmark in Common Fund Cases...................................................... 14
20
           D.      The Requested Fee Award is Fair and Reasonable and No Circumstances
21                 Warrant a Downward Departure from the Ninth Circuit Benchmark. .......................... 15

22         E.      Class Counsel Should be Reimbursed for Actual Expenses. ......................................... 19

23   CONCLUSION ............................................................................................... 21

24

25

26

27

28

# TABLE OF AUTHORITIES

**PAGE**

## FEDERAL CASES

*Behrens v. Wometco Enterprises, Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988) ................................................................................. 18

*Blum v. Stenson*,
    465 U.S. 886 (1984) ........................................................................................... 2, 12

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .............................................................................................. 12

*Chem. Bank v. City of Seattle*
    *(In re Washington Pub. Power Supply Sys. Sec. Litig.)*,
    19 F.3d 1291 (9th Cir. 1994) ................................................................................... 2

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................................ 18

*Deposit Guar. Nat'l. Bank v. Roper*,
    445 U.S. 326 (1980) .............................................................................................. 14

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) .................................................................................... 20

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989)....................................................................... 14

*In re Cendant Corp. v. PRIDES Litigation*,
    243 F.3d 722 (3rd Cir. 2001) ................................................................................. 15

*In re Combustion, Inc.*,
    968 F. Supp. 1116 (W.D. La 1997) ........................................................................ 15

*In Re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005)................................................... 15, 18

*In re HPL Technologies, Inc.*,
    366 F. Supp. 2d 912 (N. D. Cal. 2005)................................................................... 15

*In Re McKesson HBOC, Inc. Erisa Litig.*,
    391 F. Supp. 2d 844 (N.D. Cal. 2005)..................................................................... 19

*In Re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .............................................................................. 13, 14

*In re Rite Aide Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001)...................................................................... 15, 18

*In Re Sorbates Direct Purchaser Antitrust Litig.*,
   2002 WL 31655191 (N.D. Cal. 2002) ........................................................................ 15

*In re Washington Pub. Power*,
   19 F.3d 1291 (9th Cir. 1994) ..................................................................................... 2, 17

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ........................................................................ 18

*Kurzweil v. Philip Morris Co.*,
   1999 WL 1076105 (S.D.N.Y. 1999) ........................................................................... 15

*Leonard, et al. v. Baumer*
   (*In Re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*),
   1989 WL 73211 (C.D. Cal. Mar. 9, 1989) ................................................................. 20

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...................................................................................... 18

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ...................................................................... 2, 12, 13, 14

*Ramah Navajo Chapter v. Babbitt*,
   50 F. Supp.2d 1091 (D.N.M. 1999) ........................................................................... 13

*Six Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) .......................................................................... 2, 13, 14

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..................................................................................... 11, 12

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993) ..................................................................................... 13, 14

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ............................................................................. 13, 14, 16

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) ..................................................................................... 12

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .......................................................................... *passim*

*Wal-Mart Stores, Inc. v. Visa, U.S.A., Inc. and MasterCard Int'l. Inc.*,
   396 F.3d 96 (2nd Cir. 2005) ...................................................................................... 13

*Williams v. MGM-Pathe Communications Co.*,
   129 F.3d 1026 (9th Cir. 1997) ................................................................................... 14

**FEDERAL STATUTES**

29 U.S.C. § 216(b)................................................................................................ 4
Federal Rule of Civil Procedure
    23 ...................................................................................................................... 4, 16
    23(h) ................................................................................................................. 2
    26(f) .................................................................................................................. 7
    30(b)(6) ............................................................................................................ 8

**STATE STATUTES**

Local Civil Rule 54-6 ......................................................................................... 2

**MISCELLANEOUS**

4 Conte & Newberg, *Newberg on Class Actions*,
    § 14.6, p. 550 (4th Ed. 2002)........................................................................ 13, 14

*Manual for Complex Litigation*,
    §14.121, p. 244 (4th Ed. 2006)...................................................................... 14

**DOCKETED CASES**

*Bakan v. Citigroup, Inc.*,
    Case No. C 03-04748 MMC (N.D. Cal. Oct. 6, 2006) ................................ 19

*Gerlach v. Wells Fargo*,
    2007 WL 163189 (N.D. Cal. Jan. 19, 2007)................................................. 19

*Mousai v. E-Loan, Inc.*,
    Case No. C-06-01993-SI (N.D. Cal. May 30, 2007) ................................... 19

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF
COSTS; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. CV 06-00430 PJH

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 11, 2007, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the United States District Court of the Northern District of California, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Plaintiffs Thomas Rosenburg, James Baxter, Robert Carlo, Alan Erece, Marcia Howie, Fnu Kennedy, Vincent Letizio, Sherry Mattson, Steve Park, Michelle Peel, Denise Rambsel, Exaldo Topacio, Laurence Tosi III, Robin Daniels, Rebecca Taylor, and Frank Vasterling ("Plaintiffs") will move, and hereby do move, this Court for an order awarding to Class Counsel reasonable attorneys' fees of $16.25 million, which is 25% of the $65 million common settlement fund, without interest, and reimbursement of litigation costs and expenses of $250,000.

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities; the Joint Stipulation of Settlement and Release of All Claims ("Settlement Agreement")[1] preliminarily approved by the Court; the Order (1) Conditionally Certifying Settlement Classes and Collective Action, (2) Granting Preliminary Approval to Proposed Class Action Settlement and Plan of Allocation, (3) Directing Dissemination of Notice and Claim Form to the Class, (4) Approving Releases, and (5) Setting Date for Fairness Hearing and Related Dates dated January 11, 2007 ("Preliminary Approval Order," Docket Entry No. 98); the declarations of David Borgen, James M. Finberg, Steven G. Zieff, Todd F. Jackson, Adam T. Klein, Ira Spiro, Richard J. (Rex) Burch, J. Derek Braziel, and Kelly M. Dermody submitted herewith; the pleadings and papers filed in this case; and any oral argument this Court permits.

---

[1] The executed Settlement Agreement is attached as Exhibit 1 to the Preliminary Approval Order.

1

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. CV 06-00430 PJH

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Class Counsel has negotiated and secured a $65 million, plus interest, common settlement fund for the benefit of Plaintiffs and more than 37,000 class members to resolve their claims for overtime compensation, related wage and hour violations, under federal and various state laws, and ERISA violations.  Plaintiffs submit this unopposed motion, pursuant to Federal Rule of Civil Procedure 23(h) and Local Civil Rule 54-6, for an award of attorneys' fees and costs to Class Counsel for services performed (and to be performed) in obtaining and distributing a substantial settlement fund to the class members.  Plaintiffs request that the Court approve an award of reasonable attorneys' fees of $16.25 million under the common fund doctrine at the Ninth Circuit benchmark of 25% of the $65 million common settlement fund, without interest.[2]  Plaintiffs also request reimbursement of costs of $250,000.

This Court should grant Plaintiffs' request for an award of 25% of the $65 million common settlement fund, without interest, as attorneys' fees.  First, the requested fees are fair, reasonable, and appropriate under the common fund doctrine.[3]  Second, the requested award is consistent with Ninth Circuit precedent establishing a benchmark of 25% of the common fund.[4]  Third, there are no circumstances warranting a departure from the 25% benchmark.[5]  Fourth, Class Counsel achieved an exceptional result by successfully obtaining a common settlement fund for the class in the amount of $65 million, plus interest.  Fifth, Defendant does not oppose this motion and none of the 37,642 putative class members specifically objected to the amount of attorneys' fees sought.[6]

---

[2] Although the Settlement Agreement (paragraphs 1.19 and 3.2(A)) would permit Class Counsel to apply for 25% of the interest that will accrue on the $16.25 million fund, which amounts to approximately $400,000, net after taxes, they have chosen not to do so, and the class will receive that interest.

[3] *See Blum v. Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

[4] *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-1048 (9th Cir. 2002); *Chem. Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.)*, 19 F.3d 1291, 1297 (9th Cir. 1994); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); and *Paul, Johnson, Alston & Hunt v. v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

[5] *See Vizcaino*, 290 F.3d at 1047-50.

[6] Two persons, one of whom opted out, stated that the litigation was a "suit to gain compensation for the attorneys representing the class action."  This statement is belied by the fact that approximately 75% of the fund, and all of interest will go to the class.

2

Finally, this Court should also approve reimbursement of costs expended by Class Counsel because they were reasonably and necessarily incurred to prosecute this case and execute the settlement and are of the type normally charged to fee paying clients.

## STATEMENT OF FACTS

**A.     <u>Background and Procedural Posture</u>**

Class Counsel are the law firms of Altshuler Berzon LLP; Lieff, Cabraser, Heimann & Bernstein, LLP; Outten & Golden; Rudy, Exelrod & Zieff, LLP; Lewis, Feinberg, Lee, Renaker & Jackson, P.C.; Lee & Braziel, LLP; Spiro Moss Barness, LLP; Goldstein, Demchak, Baller, Borgen & Dardarian; and Bruckner Burch, PLLC.[7]  The Court appointed Class Counsel on January 11, 2007, at the same time that it preliminarily approved the terms of the settlement and ordered that notice be sent to the class members.  Preliminary Approval Order, Docket Entry No. 98.  Class Counsel's efforts on behalf of the class of more than 37,000 current and former workers in several different job classifications employed by International Business Machines Corp. ("IBM") throughout the country resulted in a $65 million, plus interest, common settlement fund for the benefit of the class.  Plaintiffs alleged in this action that IBM misclassified these employees as exempt from overtime pay requirements and asserted claims for overtime pay under the Fair Labor Standards Act ("FLSA") and multiple state wage laws, claims for related state wage law violations, and claims for benefit credits under Employee Retirement Income Security Act ("ERISA").

On January 24, 2006, Class Counsel filed a Complaint on behalf of three Plaintiffs, and others similarly situated, alleging violations of ERISA, the FLSA, and California and New York wage laws.  Complaint, Docket Entry No. 1.  On March 13, 2006, a First Amended Complaint was filed, adding four additional Plaintiffs and state law wage claims under the laws of Colorado, Illinois, Minnesota, and New Jersey.  First Amended Complaint, Docket Entry No. 14.  Thereafter, Class Counsel continued to investigate the claims in the case, and filed a Second Amended Complaint adding ten

---

[7] Class Counsel are among the most highly experienced attorneys in the country handling overtime and ERISA class actions.  These lawyers from small plaintiffs' firms were assembled strategically in order to prosecute this large scale action against IBM.  The results speak for themselves.  Moreover, Class Counsel were organized so as to minimize unnecessary duplication of effort.

1    more Plaintiffs and new claims under the wage laws of Connecticut, Kentucky, Massachusetts,

2    Maryland, North Carolina, Ohio, Pennsylvania, Washington, and Wisconsin.  Second Amended

3    Complaint, Docket Entry No. 74.  In these complaints, Plaintiffs indicated their intent to seek

4    certification of (1) a nationwide FLSA collective action class pursuant to 29 U.S.C. § 216(b); (2) a

5    nationwide ERISA class pursuant to Fed.R.Civ.P. 23; and (3) fifteen (15) state law wage subclasses

6    pursuant to Fed.R.Civ.P. 23.

7            On March 29, 2006, IBM filed a Motion to Dismiss in Part and Strike In Part the Plaintiffs'

8    First Amended Complaint.  IBM sought, in part, dismissal of Plaintiffs' ERISA allegations for failure

9    to state a claim.  Motion to Dismiss, Docket Entry No. 19.  The Court denied the motion to dismiss the

10   ERISA claims and certain claims for injunctive relief, but granted the motion to strike punitive

11   damages under Illinois law.  Order Denying Defendant's Motion to Dismiss and Granting in Part and

12   Denying in Part Defendant's Motion to Strike, Docket Entry No. 59.

13           Thereafter Class Counsel conducted substantial discovery (*see* pp. 6-8) and then proceeded to

14   mediation, which resulted in the settlement of this action.  On January 11, 2007, this Court issued an

15   order (1) conditionally certifying settlement classes and collective action, (2) granting preliminary

16   approval to the proposed class settlement and plan of allocation, (3) approving the form and manner of

17   distribution of the class notice, opt-out statement and claim form to the class, (4) appointing Plaintiffs'

18   counsel as Class Counsel, and (5) setting a schedule for the final approval process.  Preliminary

19   Approval Order, Docket Entry No. 98.

20   **B.**      **The Settlement Fund**

21           Class Counsel's diligent work resulted in the creation of a significant settlement fund for the

22   benefit of Plaintiffs and the class.  A settlement fund of $65 million, plus interest,[8] will be used to

23   compensate class members, pay reasonable attorneys' fees and costs, pay costs of administration of the

24   settlement, and pay service payments to the named plaintiffs.  Declaration of David Borgen in Support

25   _____

26   [8] The $65 million fund will accrue interest from December 1, 2006 until IBM transfers the settlement
     funds to the Claims Administrator, at an interest rate equal to 5.28125% per annum, and that interest

27   (net of taxes and any reasonable investment fees) will be added to the settlement fund for distribution
     to class members.  One year's interest on the $65 million fund is approximately $3,432,812.50.

28   Borgen Decl., ¶ 23.

of Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Costs[9] at ¶ 23.  All settlement proceeds not paid out to satisfy the foregoing and not distributed to class members (*i.e.*, any uncashed checks and unused reserves for claims administration) will be paid to a charitable organization.  *Id.*  Under no circumstances will any of the settlement fund revert to IBM pursuant to the terms of the Settlement Agreement.  *Id.*  In addition to the $65 million settlement fund, IBM will pay the employer's share of all state and federal payroll taxes imposed by applicable law, including the employer's share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages.  *Id.*

Notice of the settlement was sent by the claims administrator to 37,642 class members on February 23, 2007.  The notice advised the class members that "Class Counsel will apply to the Court for attorneys' fees in the amount of 25% of the settlement fund, which amounts to $16.25 million" and "an amount not to exceed $250,000 to reimburse Class Counsel for actual out-of-pocket expenses paid by Class Counsel to litigate this case."  Borgen Decl., ¶ 24.  The notice further advised that any class member, who did not opt out, had the right to object to the terms of the settlement, including the payment of attorneys' fees and costs, and explained how to object.  *Id.*  In order to receive their share of the settlement funds, class members simply had to timely submit a claim form.  Over 11,000 class members, or approximately 30% of the class, have filed claim forms.  Each class member's settlement amount will vary according to the formula set forth in the Settlement Agreement.  *Id.* at ¶ 25.  Significantly, less than .1% (327 individuals) opted out of the settlement,[10] and less than .02% (6) class members properly submitted objections.[11]  *Id.*

---

[9] The declarations of James M. Finberg, Steven G. Zieff, Todd F. Jackson, Adam T. Klein, Richard J. (Rex) Burch, J. Derek Braziel, Ira Spiro, and Kelly Dermody in support of this motion are attached as exhibits 1-8 to Mr. Borgen's declaration.

[10] The number of opt outs fell well short of the 500 required to permit IBM to exercise its right to void the settlement.  Settlement Agreement at ¶ 2.5.

[11] In addition to the six objectors, two individuals who opted out of the settlement also submitted objections.  Paragraph 2.7(B) of the Settlement Agreement provides that only class members who have not opted out can file objections.

Two objectors – Gary Lively[12] and Herbert Yates – commented on the attorneys' fees.  They made the same non-specific comment, both simply stating that this was a "suit to gain compensation for the attorneys representing the class action."  *Id.*

## C.   Efforts of Class Counsel

Class Counsel performed substantial work to prosecute this action in a thorough, professional, and efficient manner on behalf of Plaintiffs and the class.[13]  Class Counsel engaged in extensive fact-gathering, informal and formal discovery, and motion practice prior to negotiating the Settlement Agreement in two lengthy mediation sessions.  Borgen Decl., ¶¶ 26-47.  Class Counsel filed the initial Complaint on January 24, 2006 and then two amended Complaints, adding multiple additional Plaintiffs and state law claims.  *Id.* at ¶ 29.  IBM filed a motion to dismiss in part and strike Plaintiffs' ERISA claims and certain claims for injunctive relief.  Class Counsel collaboratively researched and briefed the issues raised by the motion, appeared at oral argument and successfully defended against dismissal of these claims.  On April 19, 2006, the Court denied IBM's motion to dismiss the ERISA and claims for injunctive relief, but granted the motion to strike a claim for punitive damages under Illinois law.  Motion to Dismiss Order, Docket No. 59.  Class Counsel spent thousands of hours conducting informal and formal discovery prior to mediation.

### 1.   Informal Discovery

Prior to commencement of formal discovery, Class Counsel reviewed all available documents relating to IBM and expended many hours interviewing the Plaintiffs and hundreds of potential class

---

[12] Mr. Lively also submitted an opt out form.  His objection is thus not proper.  *See* n.11.

[13] A team of law firms, which has now been appointed as Class Counsel, was assembled to represent the Plaintiffs and putative class.  Class Counsel included lawyers throughout the country who have substantial experience litigating class actions generally, wage and hour class actions and employment law class actions in particular, and, most specifically, prosecuting "hybrid" class actions that allege a combination of federal overtime law claims, numerous state overtime law claims and ERISA claims.  Given that the proposed class consisted of tens of thousands of former and current IBM employees and that IBM would vigorously defend against these claims, a team of class action law firms with the collective experience, expertise and resources was necessary to prosecute this case.  Prior to the filing of the original Complaint and throughout the litigation and settlement process, Class Counsel have regularly communicated through email and periodic telephone conferences to coordinate the work performed and divide up assignments to ensure that work was done efficiently and without unnecessary duplication.  Borgen Decl., ¶¶ 27-28.

members and witnesses regarding their employment at IBM, including their job duties and those of

their co-workers, IBM's job classifications and business units, hours worked, supervision, and job

responsibility and authority.  Class Counsel spent many hours compiling and analyzing this

information and then discussing the various legal and factual issues relating to class certification and

the merits of the claims.  Borgen Decl., ¶ 34.  Class Counsel also invested numerous hours analyzing

the information obtained from class member interviews and documents regarding IBM's classification

and exemption classification schemes to define the proper scope of the class to be certified.  This was

an important and considerable undertaking given the size of the class and the numerous job families,

job positions, job position codes and job bands in which IBM classified the class members who

worked in multiple business units.  Class Counsel also provided information to witnesses about the

lawsuit, answered their questions, and tracked their interest and willingness to participate in the case

either as declarants or deponents.  Much of this work was done before the initial Complaint was filed,

but continued to a great degree throughout the litigation.  *Id.*

## 2. **Formal Discovery**

Formal discovery began immediately following the parties' April 19, 2006 Rule 26(f)

conference.  Plaintiffs sought written and testimonial information regarding IBM's employment

practices.  Borgen Decl., ¶¶ 35-44.  In total, IBM responded to 67 requests for production of

documents, and produced tens of thousands of pages of documents, including job descriptions and

other documents related to job duties and responsibilities, job posting data, orientation materials,

pension plan documents, human resource policies and procedures, compensation policies and

procedures, and documents related to IBM's classification decisions.  *Id*. at ¶¶ 35, 37.  IBM also

produced extensive data from its payroll and human resources databases regarding the work histories,

work hours, and compensation of more than 40,000 potential class members.  *Id*. at ¶ 44.  IBM

conducted written discovery regarding, among other things, the Plaintiffs' individual and class liability,

damages claims, and Plaintiffs' contentions regarding class and collective action certification.  *Id.*

Class Counsel spent many hours responding to IBM's numerous interrogatories and requests for

production of documents on behalf of six named Plaintiffs, and produced thousands of pages of

1  documents.  *Id*. at ¶ 38.  Class Counsel collaborated to organize, index, review, and issue code tens of

2  thousands of pages of documents produced by IBM and Plaintiffs.  *Id*. at ¶ 36.

3  Numerous depositions were taken in this case.  IBM deposed Plaintiffs Rosenburg, Baxter,

4  Mattson, Park, Kennedy, and Topacio, all of which were defended by Class Counsel.  Borgen Decl.,

5  ¶ 40.  Class Counsel spent many hours preparing for these depositions by reviewing relevant

6  documents and data and meeting with the Plaintiffs.  Class Counsel also deposed five IBM witnesses,

7  designated pursuant to Fed. R. Civ. P. 30(b)(6), regarding topics such as IBM's policies and

8  procedures for classifying positions, IBM's organizational structure, and the job duties, responsibilities

9  and hours worked of the putative class members.  *Id*. at ¶ 39.  These depositions required significant

10  preparation on which several law firms worked collaboratively and efficiently to ensure that

11  documents were timely produced and analyzed prior to the depositions.  Class Counsel summarized all

12  of this deposition testimony for inclusion in Plaintiffs' mediation brief and prepared more extensive

13  summaries for future use in the litigation.  *Id*.

14  Finally, Plaintiffs requested, and IBM produced, the last known contact information for more

15  than 40,000 putative class members.  Class Counsel mailed letters to all of these individuals, advising

16  them about the pending lawsuit and requesting that they contact Class Counsel if they wanted to

17  provide information to assist in the litigation.  Borgen Decl., ¶ 42.  As a result of this letter, Class

18  Counsel interviewed and gathered information relevant to class certification, liability and damages

19  issues in the lawsuit from hundreds of putative class members who contacted them.  *Id*.  Class Counsel

20  obtained seventy (70) signed declarations prior to the conclusion of mediation, and had numerous

21  additional draft declarations pending for signature.  *Id*. at ¶ 43.  The interview and declaration project

22  was coordinated carefully so that assignments were made among Plaintiffs' attorneys' and law firm

23  paralegals to ensure efficiency and to avoid duplication of effort.  *Id*.

24  **3.    <u>Legal Research</u>**

25  Prior to the filing of this lawsuit and throughout the litigation and mediation, Class Counsel

26  expended substantial amounts of time conducting legal research on myriad procedural and substantive

27  issues involved in this case, many of which were novel and complex.  The issues researched included

28

8

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF
COSTS; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. CV 06-00430 PJH

those related to the exercise of supplemental jurisdiction and whether collective action claims and Rule 23 claims could be certified and maintained in the same action; the application of the administrative exemption to workers in the computer industry; the interpretation of the new Department of Labor regulations effective as of August 2004; the interpretation of computer professional exemptions under applicable federal and state laws; and the wage and hour laws and remedial schemes of many different states. Additionally, Class Counsel had to research and brief novel and complex issues raised by IBM in the motion to dismiss, including those related to the ERISA claim. Class Counsel extensively researched all of these issues in a coordinated manner so as not to duplicate efforts. Borgen Decl., ¶ 47.

### 4. Mediation

After entry of the Court's order regarding the Motion to Dismiss and the completion of formal discovery, Class Counsel and IBM agreed to engage in private mediation with the San Francisco firm of Gregorio, Haldeman, Piazza, Rotman & Matityahu. Borgen Decl., ¶ 41. In order to prepare for mediation, Class Counsel, with extensive assistance from a consulting expert statistician, analyzed compensation and work hours data provided by IBM for all of the putative class members and computed damages. This effort required numerous communications with IBM's counsel regarding the sufficiency and interpretation of the data and the need for additional data. One law firm served as the principal contact with the statisticians and IBM's counsel regarding the data and its analysis. *Id*. at ¶ 44. Class Counsel also researched and drafted a detailed and comprehensive mediation brief that included their assessment of both the procedural issues relating to certification of a hybrid action and substantive law issues regarding liability and damages. The mediation brief included appendices containing several hundred pages of supporting documentation and evidentiary materials, which was provided to both the mediator and IBM. *Id.* at ¶ 45.

An initial day long mediation session was held on September 13, 2006, after which the parties agreed to reconvene for a second mediation session on October 19, 2006. Borgen Decl., ¶ 49. During the month that elapsed between the mediation sessions, the parties had extensive discussions responding to each others' respective positions and areas of disagreement. *Id.* at ¶ 46. Class Counsel

1   worked with its expert statisticians to calculate and recalculate damages, based on different legal

2   theories.  Class Counsel also continued to interview witnesses and draft additional witness declarations

3   during this time.  *Id*.  On October 19, 2006, a second mediation session was held.  At the conclusion of

4   the second mediation session, after arms-length negotiations, the parties reached a settlement and

5   signed a memorandum of understanding memorializing the principal terms of the settlement.  *Id*. at

6   ¶ 49.  Throughout the litigation and mediation, Class Counsel kept the Plaintiffs apprised of the status

7   of the case and settlement negotiations.  *Id.* at ¶ 48.

8          **5.    Post-Mediation Work**

9          After the mediation, Class Counsel continued their arms-length negotiations with IBM

10   regarding the details and specific language of the terms of the settlement, expending many hours

11   drafting and ultimately finalizing the Settlement Agreement on November 22, 2006.  Borgen Decl.,

12   ¶ 49.  Class Counsel also drafted and filed with the Court, on November 22, 2006, Plaintiff's motion

13   for preliminary approval of the settlement.  *Id*. at ¶ 50.  Class Counsel represented Plaintiffs and the

14   class at the preliminary approval hearing held by the Court on January 3, 2007.  *Id*. at ¶ 51.  After the

15   Court preliminarily approved the settlement on January 11, 2007 and the subsequent mailing of the

16   class notice, Class Counsel directed the work of the settlement administrator, monitored the claim

17   filing process, communicated with class members who have contacted them with questions in response

18   to the class notice and who filed opt out notices, and drafted the motion for final approval, the motion

19   for approval of service payments to the Plaintiffs, and this motion for an award of attorneys' fees and

20   costs.  *Id*.

21          In addition to the legal work performed to date, Class Counsel anticipates that further legal

22   work will necessarily be performed over the next several months to finalize the settlement.  Borgen

23   Decl., ¶ 52.  This work will include:  preparation for and attendance at oral argument regarding the

24   motions, supervision of the continuing work of the settlement administrator, monitoring of settlement

25   award distribution to the class members and any residual funds to a charitable organization, and further

26   communications with class members and defense counsel throughout this process.  *Id*.  Typically, even

27   after the distribution of the class settlement proceeds, Class Counsel will continue to respond to

28

1   inquiries from class members for another one to two years.  That is particularly likely in this case, given

2   the size of class.  *Id.*

3         In sum, Class Counsel spent thousands of hours vigorously investigating, prosecuting, and

4   settling the class claims asserted against IBM in this action.  Specifically, Class Counsel have

5   expended 11,586.3 hours in these efforts through May 25, 2007, including paralegal and law clerk

6   time, for a total lodestar of $4,055,649.[14]  Borgen Decl., ¶ 72.  Class Counsel estimates that the

7   additional work needed to be performed prior to obtaining final approval, concluding the distribution

8   of the settlement fund, reporting on the distribution, and communicating with class members over the

9   course of one to two years will increase the final loadstar by $120,000.  *Id.*

10        Additionally, Class Counsel have expended a total of $273,850.38 in costs and expenses

11  through May 25, 2007.[15]  These costs include expert statistican consultation services; mediators'

12  services; travel expenses to and from depositions, meetings, mediation sessions, and hearings; outside

13  document management services; deposition-related expenses; photocopying and mailing expenses; and

14  other reasonable litigation-related costs.  *Id.* at ¶ 73 and Ex. 1-8, 12.

15                                         **ARGUMENT**

16        Class Counsel are entitled to an award of attorneys' fees of $16.25 million, which is 25% of

17  the $65 million common settlement fund, without interest, that they obtained in this case for the benefit

18  of the class.  This Court has discretion to determine reasonable attorneys' fees at the conclusion of

19  class action litigation.  *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050-1051 (9th Cir. 2002).

20  "Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the

21  benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund

22  as a whole.'"  *Staton v. Boeing Co.,* 327 F.3d 938, 967 (9th Cir. 2003).  The traditional method of

---

25  [14] Class Counsel has provided summary time charts from each firm indicating name of timekeeper,
26  hourly rate, hours worked and lodestar.  Borgen Decl., ¶¶ 61, 64-71, Ex. 1-8, 12.  We can provide the
    Court with detailed billing records should the Court desire to review such records.

27  [15] There is currently a balance of $8,819.35 remaining in the Plaintiffs' Litigation Cost Fund.  This
    amount will be used to cover any additional expenses incurred through final resolution of this matter.
28  Any remaining funds will be returned to the contributing firms.

1    calculating a fee award in a common fund case is to award counsel a percentage of the total fund.  *See*

2    *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

3         The compensation sought by Class Counsel is reasonable and consistent with Ninth Circuit

4    authority establishing a benchmark of 25% of the total fund to determine what constitutes a fair and

5    reasonable common fund attorneys' fee award.  *See e.g. Vizcaino,* 290 F.3d at 1047.  There are no

6    circumstances present that warrant a departure from this benchmark.  *Id.* at 1047-50.  In addition,

7    reimbursement of reasonable and necessary litigation costs in the amount of $250,000, incurred in

8    pursuing this matter is appropriate and proper.

9    **A.    The Equitable Common Fund Doctrine Applies to This Case Because Class Counsel's**

10   **Efforts Resulted in the Creation of a Common Fund that Significantly Benefits the Class.**

11        Courts have long recognized that private plaintiffs or their attorneys whose efforts result in the

12   creation of a common fund that benefits others are entitled to recover attorneys' fees and costs from

13   that fund.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Vincent v. Hughes Air West, Inc*.,

14   557 F.2d 759, 769 (9th Cir. 1977).  The common fund doctrine

15        rests on the perception that persons who obtain the benefit of a lawsuit without
         contributing to its cost are unjustly enriched at the successful litigant's expense.

16       Jurisdiction over the fund involved in the litigation allows a court to prevent this
         inequity by assessing attorney's fees against the entire fund, thus spreading fees

17       proportionately among those benefited by the suit.

18   *Boeing Co.,* 444 U.S. at 478 (citation omitted).  Federal courts recognize that when counsel's litigation

19   efforts result in a common fund that benefits class members, counsel has an equitable right to be

20   compensated from that fund for her work in creating the fund.  *See e.g. Boeing Co.*, 444 U.S. at 478;

21   *Staton*, 327 F.3d at 967.

22        This litigation resulted in a $65 million, plus interest, common settlement fund created for the

23   benefit of more than 37,000 class members.  None of these individuals have paid Class Counsel for

24   their work on this case; thus equity requires that Class Counsel be paid for their efforts out of the

25   common fund created by this litigation.  *See Boeing Co*., 444 U.S. at 479-81; *Staton*, 327 F.3d at 967;

26   *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) (the purpose of the

27   "common fund doctrine is to spread the burden of a party's litigation expenses among those who are

28   benefited").

**B.     The Fee Award Should be Calculated as a Percentage of the Common Fund.**

In a common fund case like this one, the Ninth Circuit has approved the use of the percentage-of-the-fund method for calculating fee awards.  *See e.g. In Re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt*, 886 F.2d at 271.  The percentage of the fund method is fair and reasonable because it most closely replicates the economics of contingency fee litigation practice.  Given the risks and uncertainties inherent in litigation, a contingency fee is result-oriented and is not dependent on how much time an attorney actually spends litigating a case, but instead on the results the attorney achieved.  *See Paul, Johnson, Alston & Hunt*, 886 F.2d at 272 ("it is well settled that a lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit"); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the victory is often the true measure of [counsel's] success, and therefore it is most efficient that it influence the fee award"); *see also* 4 Conte & Newberg, *Newberg on Class Actions*, § 14.6, p. 550 (4th Ed. 2002) ("The fund itself represents the benchmark from which reasonableness is measured.").

Because common fund cases are generally cases that plaintiff's counsel takes on a contingency fee basis, as was the case here, the percentage method ensures that the fee award mimics the marketplace.  *See Ramah Navajo Chapter v. Babbitt*, 50 F. Supp.2d 1091, 1096 (D.N.M. 1999).  Since the percentage approach mimics the market, it provides highly qualified attorneys the necessary incentive to bring large, complex class actions given that class counsel will never be able to negotiate their fees upfront with their clients. *Swedish Hosp. Corp.*, 1 F.3d at 1269.  The percentage method also "aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."  *Wal-Mart Stores, Inc. v. Visa, U.S.A., Inc. and MasterCard Int'l. Inc.,* 396 F.3d 96, 121 (2nd Cir. 2005) (internal quotation marks omitted). Moreover, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring that competent counsel continues to be willing to undertake risky,

13

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. CV 06-00430 PJH

complex, and novel litigation." *Manual for Complex Litigation*, §14.121, p. 244 (4th Ed. 2006) (citing *Deposit Guar. Nat'l. Bank v. Roper*, 445 U.S. 326, 338-39 (1980)).

Finally, the percentage method is efficient because it is easy for courts to calculate, therefore less demanding on judicial resources and less likely to result in a delay of payment to the class than any alternative method. *See Swedish Hosp. Corp.*, 1 F.3d at 1269; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).

In light of these benefits, courts have approved the percentage of the fund method for calculating a reasonable fee award in common fund cases. Thus, in this case, the award of common fund fees to Class Counsel should be assessed as a percentage of the total fund that will be distributed to the class.

## C.   The Requested Fee Award is Consistent with the Ninth Circuit's Established 25% Benchmark in Common Fund Cases.

Plaintiffs' request for reasonable attorneys' fees of 25% of the base common settlement fund is set at the Ninth Circuit's benchmark for what constitutes a fair and reasonable percentage for purposes of calculating a common fund fee. *See Vizcaino,* 290 F.3d at 1047; *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (noting that the benchmark is 25%); *In Re Pac. Enter. Sec. Litig.,* 47 F.3d 373, 379 (9th Cir. 1995) (noting that the benchmark is 25%, and affirming 33% fee award); *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993) (observing that 25% of common fund allocated to attorneys' fees is a benchmark in the Ninth Circuit); *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990) (same); *Paul, Johnson, Alston & Hunt*, 886 F.2d at 271 (citing with approval benchmark of 25% and noting that common fund fee awards generally range from 20% to 30%); *In Re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (noting that benchmark is 25%, but also noting that fee awards in common fund cases "almost always hover[ ] around 30% of the fund created by the settlement"); *see also* 4 Conte & Newberg, *Newberg on Class Actions* § 14:6, p. 551 (4th Ed. 2002) ("fee awards in class actions average around one-third of the recovery").

The size of the common fund created by this settlement does not mandate a decrease from the 25% benchmark. In cases, such as this one, where the common fund would not be considered a

---

14

1 | "megafund,"[16] courts have approved fees awards greater than 25%.[17]  As Plaintiff's request is
2 | consistent with the Ninth Circuit's benchmark percentage for a common fund fee award and, as
3 | discussed below, there are no circumstances requiring application of a different percentage, it should
4 | be approved.

5 | **D.    The Requested Fee Award is Fair and Reasonable and No Circumstances Warrant a
   | Downward Departure from the Ninth Circuit Benchmark.**

6 |
7 |      The requested fee award of 25% of the base common settlement fund is fair and reasonable and
   | there are no exceptional circumstances here warranting a departure from the Ninth Circuit's 25%
8 | benchmark.  *See Vizcaino*, 290 F.3d at 1048-50.  In determining whether the requested percentage of
9 | the common fund fee award is fair and reasonable, the Court should consider factors such as (1)
10 | whether Class Counsel achieved an exceptional result; (2) whether Class Counsel's performance
11 | generated benefits to the class; (3) the legal and financial risks undertaken by Class Counsel in
12 | litigating this matter, including whether Class Counsel had to forego other work; and (4) whether the
13 | requested percentage is consistent with the market rate for contingency fee litigation.  *See id*.  In
14 | addition, this Court should consider Class Counsel's high quality of work, the lack of objections by
15 | class members to Class Counsel's requested fee, and the fact that the requested fee is in line with
16 | recent common fund fee awards in complex class actions in the Northern District of California.
17 |
18 |
19 |
   | _____
20 | [16] Generally, "megafund" cases are those with common funds in excess of $100 million.  *See In re
   | Cendant Corp. v. PRIDES Litigation,* 243 F.3d 722, 736-737 (3rd Cir. 2001); *In re HPL Technologies,
21 | Inc.,* 366 F. Supp. 2d 912, 925 (N. D. Cal. 2005).  In approving an award of 28% of the $96,885,000
   | settlement fund in 2002, the *Vizcaino* court surveyed attorneys' fees awards in common fund
22 | settlements of $50-200 million, which were found in the Westlaw ALLCASES database and Class
   | Action Reports' attorneys' fees section between Jan. 1, 1996 and Dec. 31, 2001.  *Vizcaino,* 290 F.3d at
23 | 1046 n.1, & Appendix.  Even where the common funds fell into the range of $50-$100 million the
   | *Vizcaino* court noted that a majority of fee awards were "clustered in the 20-30 percent range."  *Id*. at
   | 1050 n.4, & Appendix.
24 |
   | [17]Courts in the Ninth Circuit and other circuits have found awards of 25% or more to be reasonable
25 | even where the common fund was large.  *See e.g. In re Heritage Bond Litig.*, 2005 WL 1594403 at *19
   | (C.D. Cal. 2005) (finding 33.3% of $27.7 million common fund settlement reasonable); *In Re Sorbates
26 | Direct Purchaser Antitrust Litig.*, 2002 WL 31655191 at *3 (N.D. Cal. 2002) (deeming 25%
   | reasonable in $82 million recovery); *In re Rite Aide Corp. Sec. Litig.,* 146 F. Supp. 2d 706, 736 (E.D.
27 | Pa. 2001) (finding 25% of $193 million reasonable); *Kurzweil v. Philip Morris Co.,* 1999 WL 1076105
   | at *3 (S.D.N.Y. 1999) (finding 30% of $124 million reasonable); *In re Combustion, Inc.,* 968 F. Supp.
28 | 1116, 1131-1132 (W.D. La 1997) (finding 36% of $127 million reasonable).

1    First, Class Counsel achieved an exceptional result and generated a significant benefit for the

2    class. *See Vizcaino*, 290 F.3d at 1048 (noting that the achievement of an exceptional result supported a

3    28% common fund fee award.)  Their work resulted in the creation of a common fund of $65 million,

4    plus interest, for the benefit of a class of more than 37,000 members.  Settlement class members

5    needed only to file a valid and timely claim form to receive their share of the settlement fund.  Borgen

6    Decl., ¶ 25.  Class Counsel obtained this result despite the risks of litigating the certification of a

7    hybrid class and the multiple risks faced on the merits of the claims.  Additionally, the settlement

8    confers a benefit beyond the creation of the settlement fund.  IBM is paying the employer's share of

9    payroll taxes on each class member's award.  *Id.* at ¶ 23.

10    Second, this case was risky both legally and financially for Class Counsel.  *See Vizcaino*, 290

11    F.3d at 1048-49 (noting that the legal and financial risk supported the fair and reasonable 28%

12    common fund award).  This was an extremely complicated case.  There were many challenges, both

13    procedurally and substantively, to bringing multiple state and federal law claims in a single class

14    action.  Given the hybrid nature of the class certification sought, there was risk that Class Counsel

15    might not achieve and sustain certification of a FLSA collective action and the ERISA and state law

16    claims under Rule 23.  There were also multiple risks relating to both the federal and state substantive

17    law claims, particularly regarding the ERISA claim and the various exemptions as applied to the

18    numerous job positions at issue, which IBM had asserted as affirmative defenses.  Borgen Decl., ¶¶ 47,

19    53.  The computer professional exemption, in particular, raised a number of novel issues that remained

20    unresolved at the time this case was litigated.  *Id.*, at ¶ 53.  Additionally, the law relating to certain of

21    the claims made under the wage laws of some states was unsettled, such as North Carolina and

22    Colorado for example.  Yet, Class Counsel assumed those risks and agreed to litigate the case

23    nonetheless.

24    In addition, the financial risks undertaken by Class Counsel in this litigation also justify the

25    requested fee award.  Class Counsel accepted this class action on a entirely contingency fee basis.

26    There was no guarantee that Class Counsel would recoup any of their fees or costs.  *Id.*  Class Counsel

27    has not received any payment for their time or expenses, which they began incurring in 2005, and for

28    which they will not be paid until after the settlement and this request for fees receives final approval

16

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF
COSTS; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. CV 06-00430 PJH

1   from the Court.  *See Torrisi*, 8 F.3d at 1377 (stating that class counsel who take a case on a

2   contingency basis bear a "double contingency; first, they must prevail on the class claims, and then

3   they must find some way to collect what they win").  Moreover, Class Counsel had to forego other

4   work in order to prosecute this case.  Borgen Decl., ¶ 53.

5        Third, 25% is below the market rate for contingency fee litigation.  *See Vizcaino*, 290 F.3d at

6   1049 (noting that the district court found a 28% rate was below the market rate of 30% for contingency

7   fee cases).  Counsel in contingency fee cases generally receive at least one-third of plaintiff's recovery,

8   but here Class Counsel merely seeks 25% of the common fund.  Moreover, Class Counsel reasonably

9   expected when they undertook this case to recover as attorney's fees of 25% of any common fund they

10  obtained in this case.  Borgen Decl., ¶ 57.  This expectation was based on the size and complexity of

11  this case and the range of fee awards in comparable cases.  *Id.*

12       Fourth, the fairness of the fee award is supported by the amount and high quality of work

13  performed by Class Counsel.  Class Counsel diligently, efficiently, and creatively pursued this case to

14  a successful conclusion for the benefit of the entire class.  Borgen Decl., ¶¶ 26-48.  Class Counsel

15  avoided protracted litigation by conducting significant investigation of the class claims before and after

16  filing the original Complaint, and efficiently conducted discovery such that the parties could

17  successfully mediate the case prior to a motion for class certification.  Class Counsel should not be

18  penalized because they obtained relatively swift relief for the class.  *See Vizcaino,* 290 F.3d at 1050,

19  n.5 (stating that "[w]e do not mean to imply that class counsel should necessarily receive a lesser fee

20  for settling a case quickly").  The efforts expended by Class Counsel in this case are described above

21  in detail and substantiated in the declarations submitted by Class Counsel.  Class Counsel have

22  expended 11,586.3 hours investigating, prosecuting, and settling this litigation through May 25, 2007,

23  including paralegal and law clerk time, for a collective lodestar of $4,055,649.  *Id.* at ¶ 72.

24  Additionally, Class Counsel anticipate that they will incur at least another $120,000 in attorneys' fees

25

26

27

28

1   through final approval, distribution of the settlement fund to class members and any charity, reporting

2   on the distribution, and to communicate with class members over the next one to two years.[18]  *Id.*

3        Fifth, the absence of any meaningful objections supports the appropriateness and

4   reasonableness of the fee award.  *See In Re Heritage Bond Litig.*, 2005 WL 1594403, at *21 (C.D. Cal.

5   June 10, 2005) ("The absence of objections or disapproval by class members to Class Counsel's fee

6   request further supports finding the fee request reasonable."); s*ee also Class Plaintiffs v. City of*

7   *Seattle*, 955 F.2d 1268 (9th Cir. 1992) (affirming district court's order approving settlement agreement

8   and allocation plan over objections by several groups of bondholders); *Officers for Justice v. Civil*

9   *Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) (affirming district court's order approving consent decree

10  over objections by a class representative).  Here, only two objectors at most (one of which is not a

11  proper objection at all) made non-specific comments regarding attorney compensation.  Borgen Decl.,

12  ¶ 24.  The class notice explicitly advised class members that Class Counsel would seek recovery of

13  25% of the settlement fund, which amounted to $16.25 million, as attorneys' fees and explained how

14  to object to any part of the settlement.  *Id.*  Out of the more than 37,000 class members who were

15  mailed this notice, only two commented, one of whom also opted out, in their letters of objection, that

16

17  _____

18  [18]  In those common fund cases where the lodestar method is used to determine the fee award, courts
    will frequently apply a multiplier to the lodestar to compensate class counsel for the risk of non-
    payment.  *See In re Washington Pub. Power*, 19 F.3d 1291 (9th Cir. 1994).).  Class Counsel's actual

19  and expected lodestar here is $4,175,649, to which a 3.89 multiplier would be applied to reach the
    common fund award of $16.25 million.  Multipliers in this range are not uncommon when the lodestar

20  method is applied.  *See Vizcaino*, 290 F.3d at 1051, n.6.  In *Vizcaino*, the court found the 3.65
    multiplier reasonable, even where the common fund was $96,885,000, because of the complexity of

21  case and risks involved, among other factors.  *See id.* at 1051.  In analyzing the cross-check multiplier,
    the court also considered Class Counsel's representations that they would not have taken this case on

22  other than a contingency fee basis; they perform little work on an hourly basis and the rates submitted
    to the court were market rates i.e. not rates with an expectation of excellent results.  *See id.*  The

23  *Vizcaino* court also provided an index of common fund cases between 1996 and 2001 that settled for
    $50 to $200 million which included multipliers ranging from 0.6 to 19.6 of lodestar.  *See Vizcaino*, 290

24  F.3d at 1051 n.6 and Appendix.

25  Courts in other circuits have also found that a cross-check multiplier of at least four times lodestar is
    reasonable.  *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) (finding

26  common fund award reasonable in $3.558 billion settlement that was equivalent to multiplier of 4
    times lodestar); *In re Rite Aide Corp. Sec. Litig.*146 F. Supp.2d 706 (confirming common fund award

27  as reasonable that would have resulted in multiplier of approximately 4.5-8.5); *Behrens v. Wometco
    Enterprises, Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988) (stating that "[t]he range of lodestar multiples

28  in large and complicated class actions runs from a low of 2.26 … to a high of 4.5.") (citation omitted).

1   this was a "suit to gain compensation for the attorneys." *Id.*  Neither individual specifically objected to

2   the amount of attorneys' fees or the percentage of the common fund that would be sought by Class

3   Counsel.  These "objections" are without merit, because the suit provided a significant recovery for the

4   class and the request for an attorneys' fees award to Class Counsel of 25% of the common fund is fair

5   and reasonable and consistent with authority in this Circuit.

6        Finally, the requested fee award is in line with common fund fee awards in other recent similar

7   complex class actions in the Northern District of California.  *See e.g. Mousai v. E-Loan, Inc.*, Case No.

8   C-06-01993-SI Order Regarding Final Approval of Class/Collective Action Settlement, Including

9   Payment of Class Counsel's Attorneys' Fees, Expenses and Costs, Service Award, and Tolling Awards

10  (N.D. Cal. May 30, 2007) (approving common fund fee award request of 25% in wage and hour class

11  action under the FLSA and state law); *Gerlach v. Wells Fargo,* 2007 WL 163189 Order Granting Class

12  Counsel's Motion for Attorneys' Fees and Reimbursement of Costs and Expenses (N.D. Cal. Jan. 19,

13  2007) (approving common fund fee award "based on this Circuit's benchmark of 25 percent" in

14  ERISA and wage and hour class action); *Bakan v. Citigroup, Inc.*, Case No. C-03-04748-MMC

15  Judgment and Order Re Final Approval of Class Action Settlement and Dismissal with Prejudice (N.D.

16  Cal. Oct. 6, 2006) (approving counsel's request and Special Master's recommendation for 25%

17  common fund fee award in wage and hour class action);[19] *In Re McKesson HBOC, Inc. Erisa Litig.*,

18  391 F. Supp. 2d 844, 851 (N.D. Cal. 2005) (approving 25% common fund fee award in ERISA class

19  action).

20       This Court should thus find that Plaintiff's request for the benchmark of 25% of the common

21  fund as attorneys' fees is fair and reasonable under the Ninth Circuit's standards and the circumstances

22  present here.

23  **E.    Class Counsel Should be Reimbursed for Actual Expenses.**

24       Class Counsel requests reimbursement from the common fund for out-of-pocket expenses

25  incurred during this litigation.  Class Counsel is entitled to recover "those out-of-pocket expenses that

26  'would normally be charged to a fee paying client.'"  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.

27  _____

28  [19] Copies of the unpublished Orders cited are included in the Appendix of Unpublished Authority.

19

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF
COSTS; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. CV 06-00430 PJH

1   1994).  It is appropriate to reimburse Class Counsel for such expenses from the common fund.  *See e.g.*

2   *Leonard, et al. v. Baumer* (*In Re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec.*

3   *Litig.*), Case No. CV87-3962KN(GX), CV86-3538KN(GX), 1989 WL 73211, at *6 (C.D. Cal. Mar. 9,

4   1989).

5          Through May 25, 2007, Class Counsel have incurred more than $273,850.96 in litigation costs

6   and expenses.  Borgen Decl., ¶ 73.  These costs include expert statistician consultation services;

7   mediators' services; travel expenses to and from depositions, meetings, mediation sessions, and

8   hearings; outside document management services; deposition-related expenses; photocopying and

9   mailing expenses; and other reasonable litigation-related costs.  *Id.*  It is well established that Class

10  Counsel are entitled to be compensated for the reasonable costs incurred in litigation from the common

11  fund.  All costs incurred here were necessary to the prosecution of this litigation and would normally

12  have been billed to a client paying for counsel's services on a regular basis.  These costs are quite

13  reasonable for a case of this complexity and should be compensated in full.  However, because the

14  notice to the class indicated that Class Counsel would seek to recover expenses not to exceed

15  $250,000, Class Counsel requests that the Court award it $250,000 for litigation costs and expenses.

16  *Id.*

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27

28

**CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court issue an order determining and approving payment of $16.25 million of the $65 million common fund, without interest, at the Ninth Circuit benchmark of 25% as a reasonable fee award and the payment of reasonable costs of $250,000 to Class Counsel.

Dated:  June 6, 2007                                 Respectfully submitted,

By:     _____/s/_____
                Roberta L. Steele

David Borgen (SBN 099354)
Roberta L. Steele (SBN 188198)
Heather Mills (SBN 215293)
GOLDSTEIN, DEMCHAK, BALLER,
        BORGEN & DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
Telephone:  (510) 763-9800
Facsimile:  (510) 835-1417
Email:  dborgen@gdblegal.com
Email:  rsteele@gdblegal.com
Email:  hmills@gdblegal.com

James M. Finberg (SBN 114850)
Eve H. Cervantez (SBN 164709)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile:  (415) 362-8064
jfinberg@altshulerberzon.com
ecervantez@altshulerberzon.com

Kelly M. Dermody (SBN 171716)
Jahan C. Sagafi (SBN 224887)
LIEFF, CABRASER, HEIMANN &
        BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email:  kdermody@lchb.com
Email:  jsagafi@lchb.com

1 Adam T. Klein (AK 3293 [NY])
 Justin M. Swartz (JS 7989 [NY])

2 Piper Hoffman (PH 4990 [NY])
 OUTTEN & GOLDEN

3 3 Park Avenue, 29th Floor
 New York, NY  10016

4 Telephone:  (212) 245-1000
 Facsimile:  (212) 977-4005

5 Email:  atk@outtengolden.com
 Email:  jms@outtengolden.com

6 Email:  ph@outtengolden.com

7 Steven G. Zieff (SBN 84222)
 David A. Lowe (SBN 178811)

8 Kenneth J. Sugarman (SBN 195059)
 RUDY, EXELROD & ZIEFF LLP

9 351 California Street, Suite 700
 San Francisco, CA  94104

10 Telephone:  (415) 434-9800
 Facsimile:  (415) 434-0513

11 Email:  szieff@reztlaw.com
 Email:  dal@reztlaw.com

12 Email:  kjs@reztlaw.com

13 Todd F. Jackson (SBN 202598)
 Claire Kennedy-Wilkins (SBN 231897)

14 Lindsay E. Nako (239090)
 LEWIS FEINBERG LEE

15   RENAKER & JACKSON, P.C.
 1330 Broadway, Suite 1800

16 Oakland, CA  94612
 Telephone:  (510) 839-6824

17 Facsimile:  (510) 839-7839
 Email:  tjackson@lewisfeinberg.com

18 Email:  ckwilkins@lewisfeinberg.com
 Email:  lnako@lewisfeinberg.com

19

20 J. Derek Braziel (00793380 [TX])
 LEE & BRAZIEL, LLP

21 208 N. Market Street
 Dallas, TX  75202

22 Telephone:  (214) 749-1400
 Facsimile:  (214) 749-1010

23 Email:  jdbraziel@l-b-law.com

24 Ira Spiro (SBN 67641)
 Gregory N. Karasik (SBN 115834)

25 SPIRO MOSS BARNESS, LLP
 11377 W. Olympic Blvd., Floor 5

26 Los Angeles, CA  90064-1625
 Telephone:  (310) 235-2468

27 Facsimile:  (310) 235-2456
 Email:  ispiro@smbhblaw.com

28 Email:  gkarasik@smbhblaw.com

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF
COSTS; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. CV 06-00430 PJH

1

Richard Burch (24001807 [TX])
BRUCKNER BURCH, PLLC
5847 San Felipe, Suite 3900
Houston, TX  77057
Telephone:  (713) 877-8788
Facsimile:  (713) 877-8065
Email:  rburch@brucknerburch.com

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF
COSTS; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. CV 06-00430 PJH